9

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 9 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUVENAL ESPARZA RICO AND ARCELIA CONTRERAS ORTEGA, INDIVIDUALLY AND AS THE SOLE SURVIVING HEIRS OF THE ESTATE OF THEIR SON, OMAR ESPARZA CONTRERAS; MARIA INES MUNOZ BRIONES, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN, INGRI MARVELLA REYES MUNOZ AND CLARISA YAJAIRA REYES MUNOZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, JUAN ENRIQUE REYES MEZA; JUAN ANTONIO REYES AGUILAR, INDIVIDUALLY; IRENE GODINEZ CARDONA, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR SON, ROBERTO ESPARZA GODINEZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, ROBERTO ESPARZA RICO; CLEMENTINA SANCHEZ, INDIVIDUALLY; EVA CRISTINA SANCHEZ SIERRA, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN, KARLA LIZETH AMADOR SANCHEZ, NANCY MARISOL AMADOR SANCHEZ, MARVIN ALEXANDER AMADOR SANCHEZ AND FRANCIS ESTEFANIA AMADOR SANCHEZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, PEDRO AMADOR LOPEZ; MANUEL DE JESUS DOBLADO AVILA, INDIVIDUALLY, DELMIRA SOLER DOBLADO, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN NELIS AVILA SOLER, EVER AVILA SOLER, AND ELMER ROBERTO AVILA SOLER, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND ISIDRO AVILA BUESO; LUDIS YESENIA AVILA SOLER, INDIVIDUALLY; OBDULIA FERRUFINO BURGOS; INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR GRANDCHILDREN JONATHAN JOEL GUTIERREZ FERRUFINO, LELY AMPARO CANALES FERRUFINO, IVY ROXANA CANALES FERRUFINO, OSCAR ALFREDO FERRUFINO, JAIRO MAURICIO FERRUFINO, KATHERINE NINOSKA CANALES FERRUFINO, JENNIFER GUADALUPE FERRUFINO, AND ELMER NOE FERRUFINO, AND AS A SURVIVING HEIR OF THE ESTATES OF HER DAUGHTERS, ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO, AND HER GRANDDAUGHTER LESLY ESMERALDA FERRUFINO, ROSA DELIA HERNANDEZ DE ARDON, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN HAROLD MAURICIO ARDON HERNANDEZ, MARELYN IVETTE | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-04-117 |

1

| ARDON HERNANDEZ, AND AS A SURVIVING | § |
| HEIR OF THE ESTATE OF HER HUSBAND, | § |
| DOMINGO ARDON SIBRIAN; SIXTO ACEVEDO | § |
| AND MARIA EMILIA PEREZ, INDIVIDUALLY | § |
| AND AS THE SOLE SURVIVING HEIRS OF | § |
| THE ESTATE OF THEIR SON, BRYON ADNER | § |
| ACEVEDO PEREZ | § |
| | § |
| VS. | § |
| | § |
| ARNULFO FLORES, JR., NORMA ARRIAGA | § |
| TREVINO a/k/a NORMA BOCANEGRA, UNION | § |
| PACIFIC CORPORATION, UNION PACIFIC | § |
| RAILROAD COMPANY, A T & L RAILROAD | § |
| COMPANY, INC. AND ARCHER DANIELS | § |
| MIDLAND COMPANY | § |
|     Defendants | § |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OPPOSED MOTION TO REMAND

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.

Mitchell C. Chaney
Attorney-in-Charge
State Bar No. 04107500
Southern District Admissions No. 1918
Joseph A "Tony" Rodriguez
State Bar No. 17146600
Southern District Admissions No. 10107
R. Patrick Rodriguez
State Bar No. 24002861
Southern District Admissions No. 22949

ATTORNEYS FOR DEFENDANTS,
UNION PACIFIC RAILROAD COMPANY
AND UNION PACIFIC CORPORATION

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................3

TABLE OF CITATIONS...........................................................4

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING.......5

STATEMENT OF THE ISSUES TO BE RULED UPON BY
BY THE COURT....................................................................5

SUMMARY OF THE ARGUMENT.............................................5

INTRODUCTION....................................................................6

ARGUMENT AND AUTHORITIES.............................................6

    I. THE ADMITTED AND INCONTROVERTIBLE FACTS
       SUPPORT REMOVAL.................................................6

    II. DEFENDANTS REMOVAL AND
       PLAINTIFFS' ASSERTED GROUNDS FOR REMAND........8

    III. CONSENT OF FRAUDULENTLY JOINED PARTIES
       NOT NECESSARY...................................................9

    IV. THE "NO LOCAL DEFENDANT" RULE DOES NOT
       APPLY WHERE LOCAL DEFENDANTS HAVE BEEN
       FRAUDULENTLY JOINED.......................................10

    V. PLAINTIFFS ASSERTED GROUNDS FOR DENYING
       FRAUDULENT JOINDER ARE WITHOUT MERIT AS
       A MATTER OF LAW...............................................10

        [A]    The Unlawful Acts Rule Applies in Wrongful
              Death Cases:..................................................10

        [B]    The Evidence of Record Incontrovertibly Proves
              That The Decedents Were Engaged in Illegal
              Conduct at the Time of Their Death......................12

              *[1] The Admitted Conduct of the Decedents
              Was Undeniably Unlawful.................................. 12*

              *[2] Proof of Decedents' Unlawful Conduct
              Is Essential to Establish The Elements
              of Plaintiffs' Claims Against Defendants Flores
              And Trevino:... ... ... ... ... ... ... ... ... ... ... ... ... ... 13*
    VI.    CONCLUSION AND PRAYER..........................15

CERTIFICATE OF SERVICE.........................................................17

# TABLE OF CITATIONS

Title  8, U.S.C. § 1324 (a)(1)(A)(ii)...............................................7, 8, 13, 15

Title  8, U.S.C. § 1324 (a)(1)(A)(v)(I).........................................7, 8, 13, 15

Title  8, U.S.C. § 1325 (1).........................................................7, 12, 13, 14

Title  8, U.S.C. § 1325 (2)...........................................................7, 12, 13, 15

Title  28, U.S.C. § 1332 (A)...........................................................5, 8

Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815-16 (5th Cir. 1993),
cert denied 114 S.Ct. 192, 510 U.S. 868, 126 L.Ed 2d 150 ...................9

Martineau v. ARCO Chemical Co., 25 F.Supp. 2d 762 (S.D. Tex.
1998), aff'd, 203 F.3d 904.......................................................9

Carriere  v. Sears Roebuck & Co., 893 F.2d 98 (5th Cir. 1990)..............10

Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995).......10

Arzehgar v. Dixon, 150 FRD 92, 94 (S.D. Tex. 1993).......................10

TEX. CIV. PRAC. REM. CODE § 93.001......... ...........................5, 11, 12

TEX. CIV. PRAC. REM. CODE § 93.001(a)(1) .............................10, 11, 12

TEX. CIV. PRAC. REM. CODE § 93.001(c) ...................................10, 11, 12

Duncan Land and Exploration v. Littlepage, 984 S.W.2d 318,
328-331 (Tex. App. –Fort Worth 1998, pet. den'd)............................11

Rodriguez v. Love, 860 S.W.2d 541, 544 (Tex. App.—El Paso
1993, no writ) .......................................................................11

Ward v. Emmett, 37 S.W.3d 500, 502-03 (Tex. App. –
Texarkana  2001, no pet. h. )......................................................15

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

On June 3, 2204, Plaintiffs filed this wrongful death lawsuit Union Pacific Corporation, Union Pacific Railroad Company, Arnulfo Flores, Jr., Norma Arriaga Trevino, AT & L Railroad Company, Inc. and Archer Daniels Midland Company for damages and injuries allegedly sustained by Plaintiffs as a result of the deaths of eleven undocumented aliens in 2002. Pursuant to 28 U.S.C. § 1332 (a), the non-fraudulently joined Defendants, Union Pacific Corporation, Union Pacific Railroad Company, AT&L Railroad Company and Archer Daniels Midland Company timely removed this action on July 9, 2004. On the same day, the Court issued an order setting this matter for initial pretrial conference on November 12, 2004, at 10:30 a.m. On July 30, 2004, Plaintiffs filed their Opposed Motion for Remand.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

1. Must removing Defendants obtain consent from fraudulently joined, local defendants prior to filing their notice of removal?

2. Even though Plaintiffs admit that TEX. CIV. PRAC. & REM. CODE § 93.001 *et. seq* does not apply to this case, does this statue preempt the application of the unlawful acts rule to all wrongful death actions; and

3. Can Plaintiffs prove their case of negligence against defendants Flores and Trevino without having to prove any alleged illegal act on the part of the Decedents?

### SUMMARY OF THE ARGUMENT

The Court should deny the motion to remand because each of assertions relied upon by Plaintiffs in support of their motion is incorrect as a matter of law. Plaintiffs initially allege that Defendants' notice of removal was defective because neither Flores nor Trevino consented to the removal. This contention is simply contrary to established case law that holds that a removing defendant is not required to obtain the consent of fraudulently joined parties.

Plaintiffs next contend that the unlawful acts doctrine has been preempted in wrongful death cases by TEX. CIV. PRAC. & REM. CODE § 93.001 *et. seq*    This assertion is equally without support. Initially, Plaintiffs' reliance on the statute's alleged preemptive effect is

completely undermined by Plaintiffs' admission that the statute does not apply in this case. Next, Plaintiffs fail to identify and / or provide any legal authority to support their argument that the unlawful acts doctrine does not apply to wrongful death cases.

Lastly, movants argue that the unlawful acts doctrine should not apply in this case because Plaintiffs claim that they will be able to establish each element of a negligence cause of action against Flores and Trevino without being obliged to prove any alleged illegal act on the part of the decedents. Despite this contention, however, Plaintiffs cannot establish the existence of a duty owed or breach of a duty by either Flores or Trevino without proving the fact and reason for Decedents' concealment in the railroad car as it passed the government checkpoint. As such, the facts and manner of Decedents' violation of federal law and participation in a conspiracy to violate federal law is essential to establishing Plaintiffs' negligence claims against Flores and / or Trevino.

## INTRODUCTION

TO THE HONORABLE COURT:

NOW COME Defendants Union Pacific Corporation and Union Pacific Railroad Company (hereinafter "Union Pacific"), and submit this, their Response to Plaintiffs' Opposed Motion to Remand, and in support thereof would respectfully show the Court as follows:

## ARGUMENT AND AUTHORITIES

### I. THE ADMITTED AND INCONTROVERTIBLE FACTS SUPPORT REMOVAL

The admitted and incontrovertible facts show that the Decedents were in the railroad grain hopper car in question for the very purpose of attempting to avoid detection while being transported past the Sarita Immigration checkpoint after entering this country illegally. *See,*

Plaintiffs' First Amended Original Petition ¶ ¶ III and IV, attached hereto as Exhibit "A"[1];

Criminal Information Count One in <u>United States of America v. Arnulfo Flores, Jr.</u>, Criminal

Cause No. M-03-661, attached hereto as Exhibit "B"[2]; August 1, 2003 Rearraignment Hearing

in <u>United States of America v. Arnulfo Flores, Jr.</u>, Criminal Cause No. M-03-661, attached

hereto as Exhibit "C."[3] The Decedents' admitted illegal entry into the United States and evasion

of Sarita checkpoint authorities via the hopper car (Petition ¶¶ III and IV, at pp. 13 and 14)

constituted clear and unquestionable violations of 8 U.S.C. § 1325(1) and (2).[4] Further,

---

[1]  ¶ III: "Venue is proper in Cameron County, Texas...because...Defendant Flores and his co-conspirators *helped the Decedents cross into the United States in Cameron County, Texas, they hid them in Cameron County, Texas* and they also loaded the Decedents in the Union Pacific grain hopper in Cameron County, Texas...." ¶ IV: "*Defendants Flores and Trevino were members of a conspiracy to transport undocumented immigrants from Mexico to the United States....* Defendant Flores *accepted a monetary fee from the Decedents in return for Defendant Flores' allowing Decedents to ride on the Union Pacific grain hopper...to a location just beyond the Sarita, Texas Border Patrol checkpoint.*" (Emphasis supplied).

[2]  "Arnulfo Flores, Jr. in knowing and reckless disregard of the fact that...persons...*who have been confirmed by the United States attorney through certified copies of birth certificates and other means to have been undocumented aliens and citizens of foreign countries--were aliens who had come to, entered, and remained in the United States in violation of law*, did knowingly and intentionally...conspire...to transport...*said aliens* by means of a freight train...*in furtherance of such violation of law*...for the purpose of commercial advantage and for private gain.... All in violation of Title 8 United States Code, §§ 1324(a)(1)(A)(ii) [and] 1324(a)(1)(A)(v)(I).... (Emphasis supplied).

[3]  "THE COURT:...to this criminal information, how do you plead...? DEFENDANT FLORES: Guilty." *Id*, at p. 17; "MR. LEONARD:...the smugglers transported the aliens aboard Union Pacific railroad cars *in an effort to evade the United States Border Patrol checkpoint in Sarita, Texas....* (emphasis supplied). *Id*, at pp. 31, 33; "THE COURT: Is there any part of what the US attorney said that you would like to correct at this time? DEFENDANT FLORES: No, Your Honor. THE COURT: Okay. It's the finding of the Court in the case of ...the <u>United States of America v. Arnulfo Flores, Jr.</u>, Criminal Cause No. M-03-661...that each of these guilty pleas is...*supported by an independent basis in fact containing each of the essential elements of the offense...The Court adjudges both of these defendants guilty of the offense, and a judgment of guilty is entered.*" (Emphasis supplied). *Id*, at pp. 33, 34.

[4]  "Any alien who (1) *enters the United States at any time or place other than as designated by immigration officers,* or (2) *eludes examination or inspection by immigration officers*...shall, for the first commission of any such offense, be guilty of a misdemeanor...and for a subsequent commission of any such offense shall be guilty of a felony...."

according to Plaintiffs' own allegations, the Decedents' conduct in paying Arnulfo Flores, Jr. to transport them from Harlingen "to a location just beyond the Sarita, Texas Border Patrol checkpoint" made them co-conspirators with Flores in the alien-transportation conspiracy in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(I)[5], felony charges, to which Flores pled and was adjudged guilty in Criminal Cause No. M-03-661. *See*, Exhibits "B" and "C."

## II. DEFENDANTS' REMOVAL ANDPLAINTIFFS' ASSERTED GROUNDS FOR REMAND

Removal in the instant case was on grounds of complete diversity pursuant to 28 U.S.C. Section 1332(a). Notice of Removal ¶ 21. The basis for removal was that Flores and Trevino--the only Texas residents named as defendants in this case--were fraudulently joined because their complained-of conduct was undertaken for the purpose of helping the Decedents to avoid detection by Immigration authorities in violation of United States Immigration laws. Pursuant to the "unlawful acts rule," the Decedents and their beneficiaries therefore may not as a matter of law maintain viable claims against such Defendants. *See*, Notice of Removal, ¶¶ 19-21. The asserted grounds for plaintiffs' Motion to Remand are:

(1) Union Pacific's removal of this case was defective because the Defendants alleged to be fraudulently joined did not consent to the removal (Motion to Remand ¶ III, at pp. 6 and 7);

(2) the "no local defendant" rule precludes removal because the allegedly fraudulently-joined Defendants are citizens of Texas (Motion to Remand ¶ IV, at p. 7); and

(3) that fraudulent joinder cannot be proved here because

    a) the unlawful acts rule used to establish same does not apply in wrongful death actions and;

---

[5]    "Any person who...(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise in furtherance of such violation of law; ...or (v)(I) engaged in any conspiracy to commit any of the preceding acts...shall be punished as provided in subparagraph (B)."

8

      b) such rule does not apply here because "Plaintiffs can prove their case of negligence against defendants Flores and Trevino without having to prove any alleged illegal act on the part of Decedents." Motion, ¶ V.

As shown below, all such assertions are incorrect as a matter of law.

## III. CONSENT OF FRAUDULENTLY-JOINED PARTIES NOT NECESSARY

Only those defendants who have been *properly* joined need join in a Petition for Removal. Defendants who have been fraudulently joined need not join in such Petition, nor must a removing defendant explain in his Petition for Removal why such persons have not joined in same. Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815-16 (5th Cir. 1993), *cert. denied* 114 S.Ct. 192, 510 U.S. 868, 126 L.Ed 2d 150;[6] Martineau v. ARCO Chemical Co., 25 F.Supp.2d 762 (S.D.Tex. 1998), *aff'd*, 203 F.3d 904. As Union Pacific made clear in its Notice of Removal and makes abundantly clear below, the only two non-joining defendants--Arnulfo Flores, Jr. and Norma Arriaga Trevino a/k/a Norma Bocanegra--were fraudulently joined because Plaintiffs can assert no viable claims against them. Joinder of such Defendants in Union Pacific's Notice of Removal was therefore not necessary.

---

[6]      "In cases involving alleged improper or fraudulent joinder of parties...application of [the joinder] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists.

      Neither can we agree with Jernigan's contention that Ashland Oil's failure to explain the absence of its co-defendants' consent is fatal. Ashland Oil's notice to remove makes clear that it takes the position that no other proper defendant exists. Certainly, if there is no need to obtain the consent of the improperly or fraudulently joined defendants, it follows that the defendant need not explain the absence of consent." *Id*, at 815.

## IV. THE "NO LOCAL DEFENDANT" RULE DOES NOT APPLY
## WHERE LOCAL DEFENDANTS HAVE BEEN FRAUDULENTLY JOINED

Plaintiffs' reliance upon the "no local defendant" rule is also misplaced. That rule has no application where, as here, the only citizens of the state in which the action was brought were fraudulently joined. *See, Carriere v. Sears Roebuck & Co.*, 893 F.2d 98 (5th Cir. 1990) (citizenship of fraudulently-joined defendants should not be considered in determining propriety of removal); Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995) (same); Arzehgar v. Dixon, 150 FRD 92, 94 (S.D.Tex. 1993) (same). No court has held that the "no local defendant" rule applies to a fraudulently-joined defendant. Because Defendants Flores and Trevino were fraudulently rather than properly joined, their alleged Texas citizenship does not defeat removal.

## V. PLAINTIFFS ASSERTED GROUNDS FOR DENYING FRAUDULENT JOINDER
## ARE WITHOUT MERIT AS A MATTER OF LAW

### [A]     The Unlawful Acts Rule Applies in Wrongful Death Cases:

Plaintiffs assert that the unlawful acts rule does not apply in wrongful death cases because, according to Plaintiffs, actions for deaths which occur in the commission of a crime are governed solely by Tex. Civ. Prac. & Rem. Code § 93.001(a)(1), which makes commission of a felony for which the plaintiff has been finally convicted an affirmative defense to a civil action for damages for the personal injury or death of the plaintiff where the commission of the felony was the sole cause of the damages sustained by the plaintiff. Motion to Remand, at pp. 8 and 9. *See*, § 93.001(a).[7]  As support for this assertion Plaintiffs cite CPRC § 93.001(c). That subsection, however, instead provides that "[i]n an action *to which this section applies*, this

---

[7]     It is Plaintiffs' position that § 93.001(a) does *not* apply to this case because, *inter alia*, the Decedents were not charged with or convicted of a felony. *See*, Petition ¶ V.1., at p. 9.

section shall prevail over any other law." (Emphasis supplied). Plaintiffs' assertion that § 93.001(c) preempts the unlawful acts rule is thus directly contradicted by the plain wording of § 93.001(c), which expressly provides that the action must be one "to which this section *applies*" *before* the section will be considered to "prevail over any other law...." *See*, § 93.001(c). If, as Plaintiffs insist, the instant case is *not* one to which § 93.001 applies, then § 93.001 manifestly does *not* "control over" the unlawful acts rule or prevent its application to this case. *Id.*

Plaintiffs have not articulated any reason for disregarding the plain wording of § 93.001(c). Many reasons exist, on the other hand, for *not* holding that the unlawful acts rule is preempted or "controlled" by § 93.001 in cases where § 93.001 does *not* apply. For example, CPRC § 93.001 and the unlawful acts rule apply to different kinds of conduct (the statute applies only to felonies whereas the rule applies to *any* illegal conduct). *See, e.g.*, Duncan Land and Exploration v. Littlepage, 984 S.W.2d 318, 328-331 (Tex. App.--Fort Worth 1998, pet den'd) (unlawful acts rule acknowledged to apply to violations of Texas Railroad Commission orders but held to not preclude recovery under "the extraordinary circumstances of this case"). Furthermore, the degree of proof required to establish the illegality of the conduct is different (the statute requires proof of a conviction for a felony whereas the rule applies whenever conduct has been admitted or shown to be unlawful). *See, e.g.*, Rodriguez v. Love, 860 S.W.2d 541, 544 (Tex. App.--El Paso 1993, no writ) (violation of statutory provision against driving after license had been suspended *held* established by the evidence without conviction being shown).[8]  As

---

[8] Given that the unlawful acts rule does *not* require proof of having been charged or convicted of a felony it would in fact appear to have *greater* application to wrongful death cases than CPRC § 93.001(a), since it is difficult to conceive of a situation in which a dead person would be charged with, prosecuted for and convicted of a felony in connection with the incident causing his own death.

cases such as <u>Rodriguez</u> demonstrate, the *non*-applicability of CPRC § 93.001 to a given case does not render the "unlawful acts rule" inapplicable to that case.

Plaintiffs further assert that the allegedly-preemptive effect of CPRC § 93.001(c) is also proved by the fact that no Texas court has yet applied the unlawful acts rule "in any reported Texas case involving claims for wrongful death." Motion to Remand, at pp. 9 and 10. Such assertion, however, completely overlooks the fact that neither has any Texas court *refused* to apply the unlawful acts rule in a reported wrongful death case for the simple reason that the rule does not yet appear to have been *invoked* in such a case, nor, *a fortiori*, has any Court held that CPRC § 93.001(a) preempts or "controls over" actions to which § 93.001 does *not* apply. There may be *many* contexts in which the unlawful acts rule applies but has not yet been invoked, and the mere fact that it has not yet *been* invoked in those contexts is no indication that it *cannot* be invoked absent a relevant distinction between wrongful death and other cases which would *justify* its non-application in wrongful death cases. Other than their interpretation of CPRC § 93.001(c) in a manner contradicted by the express wording of that section, however, plaintiffs have articulated no such distinction, relevant or otherwise.

### [B]    The Evidence of Record Incontrovertibly Proves That The Decedents Were Engaged in Illegal Conduct at the Time of Their Death.

Plaintiffs also object to the application of the unlawful acts rule on the ground that the Decedents never admitted to violating the law and that Plaintiffs "do not have to prove any illegal act on the part of Decedents to prove their negligence claims against Defendants Flores and Trevino." Motion for Remand, ¶ V.2, at pp. 10-12. Such assertions are, again, incorrect.

*[1]    The Admitted Conduct of the Decedents Was Undeniably Unlawful:*

As pointed out, *supra*, Plaintiffs' own live pleadings effectively admit that the Decedents were in violation of 8 U.S.C. § 1325(1) and (2) and engaged in a conspiracy with Arnulfo Flores,

Jr. in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I) by admitting that they crossed into the United States illegally, that their very presence in the railroad hopper car was for the purpose of avoiding detection by Immigration authorities at the Sarita checkpoint, and that the manner in which they obtained that access was by *agreeing with* and *paying* Flores to transport them via the hopper car from Harlingen "to a location just beyond the Sarita, Texas Border Patrol checkpoint. ("Defendant Flores *accepted a monetary fee from the Decedents in return for* Defendant Flores' *allowing Decedents to ride on the Union Pacific grain hopper...to a location just beyond the Sarita, Texas Border Patrol checkpoint*" (emphasis applied)). Given the fact that the Decedents admittedly entered into the United States in violation of 8 U.S.C. § 1325(1) and were then by agreement with Flores transported past the Sarita checkpoint in the hopper car in violation of 8 U.S.C. § 1325(2) and 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I), the Decedents' conduct was unquestionably unlawful.

> [2]    *Proof of Decedents' Unlawful Conduct Is Essential to Establish The Elements of Plaintiffs' Claims Against Defendants Flores And Trevino:*

Plaintiffs also incorrectly assert that they "...do not have to prove any illegal act on the part of Decedents to prove their negligence claims against Defendants Flores and Trevino." Motion to Remand, at p. 12. *First*, however, as Plaintiffs fully recognized in pleading their claims, in order to establish the jurisdiction of the courts of the State of Texas as well as their entitlement to apply the laws of the State of Texas to their claims, it was and is necessary that Plaintiffs plead and prove that the Decedents were in the State and that the conduct of which they have complained occurred here. *See, e.g.*, Petition III (VENUE AND JURISDICTION) ("Venue is proper in Cameron County, Texas...because...Defendant Flores and other defendants occurred in Cameron County, Texas. Defendant Flores and his co-conspirators *helped the Decedents cross into the United States in Cameron County, Texas, they hid them in Cameron County, Texas, and*

13

they also loaded the Decedents in the Union Pacific grain hopper in Cameron County, Texas....
Plaintiffs seek damages under the Common and Statutory Laws of the State of Texas..."). Given
that the Decedents were admittedly undocumented aliens, their entry into the United States
constituted unlawful conduct in violation of 8 U.S.C. § 1325(1).[9]

Second, in order to establish that the Defendants Flores and Trevino owed the Decedents a
legal duty and negligently breached that duty under the circumstances of this case, Plaintiffs must
prove the very fact of and reason for the Decedents' concealment in the railroad hopper car as it
passed the Sarita checkpoint. See, Petition, ¶ IV, at p. 14 ("Defendants Flores, Trevino and their
co-conspirators promised Decedents that they would give them safe passage on the Union Pacific
railcar to a location just beyond the Sarita, Texas Border Patrol checkpoint. They also assured
Decedents that they would be let out of the railcar at some location beyond the Sarita, Texas
Border Patrol checkpoint. Defendants Flores and Trevino negligently failed to let Decedents get
out of the railcar after the train got past the Sarita, Texas Border Patrol checkpoint." (Emphasis
supplied)).

According to Plaintiffs' own pleadings, the duty which Defendants Flores and Trevino
allegedly owed the Decedents arose out of Flores' agreements and assurances--given in exchange
for payment by the Decedents--"that they would give them safe passage on the Union Pacific
railcar to a location just beyond the Sarita, Texas Border Patrol checkpoint" and that "they would
be let out of the railcar at some location beyond the Sarita, Texas Border Patrol checkpoint."
See, Petition ¶ IV, at p. 14. Plaintiffs' negligence allegations against Flores and Trevino

_____

[9]     "Any alien who (1) enters the United States at any time or place other than as designated
by Immigration Officers...shall, for the first commission of any such offense, be guilty of a
misdemeanor...and for a subsequent commission of any such offense be guilty of a felony...."  8
U.S.C. § 1325.

accordingly set forth the various way in which these paid-for tasks and assurances were negligently breached--*i.e.*, that Flores and Trevino negligently loaded Decedents onto a railcar they would be unable to escape from, locked the railcar from the outside making it impossible for the Decedents to escape, failed to warn the Decedents of their inability to unlock the railcar, failed to let the Decedents out of the railcar in a timely manner, and failed to inform the police and other authorities that the Decedents were locked in the railcar. (*See*, Petition, ¶ VI, at p. 16).

The fact and manner of the Decedents' violation of 8 U.S.C. § 1325(2) and conspiracy in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I) was therefore not merely incidental to the Plaintiffs' negligence claims against Flores and Trevino, but are essential to establishing those claims. *See, e.g.*, Ward v. Emmett, 37 S.W.3d 500, 502-03 (Tex. App.--Texarkana 2001, no pet. h.) ("Where it is shown that at the time of the injury the plaintiff was engaged in [an] illegal act, the rule is [that] *if the illegal act contributed to the injury* he cannot recover") (emphasis supplied). Here, the Decedents' illegal conduct in agreeing and conspiring with Defendants Flores and Trevino, for the payment of money, to transport them past the Sarita Immigration checkpoint in violation of 8 U.S.C. § 1325(2) and 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I) by causing themselves to be placed in the railroad hopper car for the very purpose of avoiding detection at the Sarita Immigration checkpoint unquestionably contributed to the injuries of which the Plaintiffs complain.

## VI. CONCLUSION AND PRAYER

Because proof of the admittedly unlawful conduct of the Decedents was necessary to establish their claims against Flores and Trevino, such claims are barred by the "unlawful acts rule," and Plaintiffs can assert no viable claim against Defendants Flores and Trevino. As a

result, complete diversity of jurisdiction exists, Defendant Union Pacific's removal of this case

was appropriate, and Plaintiffs' Motion to Remand should be, in all things, DENIED.

WHEREFORE, Defendants Union Pacific Corporation and Union Pacific Railroad

Company pray that Plaintiffs' Opposed Motion to Remand be, in all things, DENIED.

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.
1201 East Van Buren
P. O. Box 2155
Brownsville, Texas 78522
(956) 542-7441
(956) 541-2170  (Fax)


By_____
        Mitchell C. Chaney
        Attorney-in-Charge
        State Bar No. 04107500
        Southern District Admissions No. 1918
        Joseph A "Tony" Rodriguez
        State Bar No. 17146600
        Southern District Admissions No. 10107
        R. Patrick Rodriguez
        State Bar No. 24002861
        Southern District Admissions No. 22949


ATTORNEYS FOR DEFENDANTS,
UNION PACIFIC RAILROAD COMPANY
AND UNION PACIFIC CORPORATION

16

## CERTIFICATE OF SERVICE

I hereby certify that on this the __9ᵗʰ__ day of August, 2004, a true and correct copy of the foregoing was served via U.S. Certified Mail, Return Receipt Requested and/or U. S. Regular Mail upon all counsel of record, to wit:

Alberto T. Garcia, III
Law Offices of Alberto T. Garcia III, P.C.
500 West Pecan Boulevard
McAllen, Texas 78501
Attorneys for Plaintiffs

Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, TX 77006
Attorney for Plaintiff

Todd O. Lafferty
P. O. Box 510
Watonga, Oklahoma 73772
Attorneys for Defendants A T & L Railroad Company, Inc. and Archer-Daniels Midland Company

Tom Lockhart
Adams & Graham, LLP
Post Office Drawer 1429
Harlingen, Texas 78551-1429
Attorneys for Defendants A T & L Railroad Company, Inc. and Archer-Daniels Midland Company

Mr. Arnulfo Flores, Jr.
Karnes City Correctional Center
810 Commerce St.
Karnes City, TX 78118
Pro Se

Ms. Norma Arriaga Trevino
Liberty County Institution
IN#04 133 938 H-1
P.O. Box 10069
Liberty, TX 77575
Pro Se

R. Patrick Rodriguez

17

NINOSKA CANALES FERRUFINO,                    §
JENNIFER GUADALUPE FERRUFINO,                 §
AND ELMER NOE FERRUFINO, AND AS A             §
SURVIVING HEIR OF THE ESTATES OF              §
HER DAUGHTERS, ROSIBEL FERRUFINO              §
AND LELY ELIZABETH FERRUFINO, AND             §
HER GRANDDAUGHTER LESLY ESMERALDA§
FERRUFINO; ROSA DELIA HERNANDEZ               §
DE ARDON, INDIVIDUALLY, AS NEXT               §
FRIEND OF HER MINOR CHILDREN                  §
HAROLD MAURICIO ARDON HERNANDEZ,              §
MARELYN IVETTE ARDON HERNANDEZ,               §
AND AS A SURVIVING HEIR OF THE                §
ESTATE OF HER HUSBAND, DOMINGO                §
ARDON SIBRIAN; SIXTO ACEVEDO AND              §
MARIA EMILIA PEREZ, INDIVIDUALLY              §
AND AS THE SOLE SURVIVING HEIRS OF            §
THE ESTATE OF THEIR SON, BYRON                §
ADNER ACEVEDO PEREZ                           §
     Plaintiffs                                   §
                                              §
VS.                                           §    138TH JUDICIAL DISTRICT
                                              §
ARNULFO FLORES, JR., NORMA ARRIAGA            §
TREVINO a/k/a NORMA BOCANEGRA,                §
UNION PACIFIC CORPORATION,                    §
UNION PACIFIC RAILROAD COMPANY,               §
A T & L RAILROAD COMPANY, INC. AND            §
ARCHER DANIELS MIDLAND COMPANY                §
     Defendants                                   §    CAMERON COUNTY, TEXAS



FILED ___2:58___ O'CLOCK ___P___ M
AURORA DE LA GARZA DIST. CLERK
JUN 2 5 2004
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

## PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW PLAINTIFFS JUVENAL ESPARZA RICO AND ARCELIA CONTRERAS ORTEGA, INDIVIDUALLY AND AS THE SOLE SURVIVING HEIRS OF THE ESTATE OF THEIR SON, OMAR ESPARZA CONTRERAS; MARIA INES MUNOZ BRIONES, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN, INGRI MARVELLA REYES MUNOZ AND CLARISA YAJAIRA REYES MUNOZ, AND AS A

SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, JUAN ENRIQUE REYES MEZA;

JUAN ANTONIO REYES AGUILAR, INDIVIDUALLY; IRENE GODINEZ CARDONA,

INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR SON, ROBERTO ESPARZA

GODINEZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND,

ROBERTO ESPARZA RICO, CLEMENTINA SANCHEZ, INDIVIDUALLY; EVA CRISTINA

SANCHEZ SIERRA, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN,

KARLA LIZETH AMADOR SANCHEZ, NANCY MARISOL AMADOR SANCHEZ,

MARVIN ALEXANDER AMADOR SANCHEZ AND FRANCIS ESTEFANIA AMADOR

SANCHEZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, PEDRO

AMADOR LOPEZ; MANUEL DE JESUS DOBLADO AVILA, INDIVIDUALLY; DELMIRA

SOLER DOBLADO, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR CHILDREN

NELIS AVILA SOLER, EVER AVILA SOLER, AND ELMER ROBERTO AVILA SOLER,

AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND ISIDRO AVILA

BUESO; LUDIS YESENIA AVILA SOLER, INDIVIDUALLY; OBDULIA FERRUFINO

BURGOS, INDIVIDUALLY, AS NEXT FRIEND OF HER MINOR GRANDCHILDREN

JONATHAN JOEL GUTIERREZ FERRUFINO, LELY AMPARO CANALES FERRUFINO,

IVY ROXANA CANALES FERRUFINO, OSCAR ALFREDO FERRUFINO, JAIRO

MAURICIO FERRUFINO, KATHERINE NINOSKA CANALES FERRUFINO, JENNIFER

GUADALUPE FERRUFINO, AND ELMER NOE FERRUFINO, AND AS A SURVIVING

HEIR OF THE ESTATES OF HER DAUGHTERS, ROSIBEL FERRUFINO AND LELY

ELIZABETH FERRUFINO AND HER GRANDDAUGHTER LESLY ESMERALDA

FERRUFINO, ROSA DELIA HERNANDEZ DE ARDON, INDIVIDUALLY, AS NEXT

FRIEND OF HER MINOR CHILDREN HAROLD MAURICIO ARDON HERNANDEZ,

MARELYN IVETTE ARDON HERNANDEZ, AND AS A SURVIVING HEIR OF THE ESTATE OF HER HUSBAND, DOMINGO ARDON SIBRIAN; SIXTO ACEVEDO AND MARIA EMILIA PEREZ, INDIVIDUALLY AND AS THE SOLE SURVIVING HEIRS OF THE ESTATE OF THEIR SON, BYRON ADNER ACEVEDO PEREZ and file this their Original Petition and complain of Defendants ARNULFO FLORES, JR., NORMA ARRIAGA TREVINO a/k/a NORMA BOCANEGRA, UNION PACIFIC CORPORATION, UNION PACIFIC RAILROAD COMPANY, A T & L RAILROAD COMPANY, INC. and ARCHER DANIELS MIDLAND COMPANY and for cause of action would show the Court as follows:

## I.

## DISCOVERY PLAN

The discovery control plan applicable to this case is Level 2 because Plaintiffs seek damages in excess of $50,000 and the Court has not ordered a Level 3 discovery plan.

## II.

## PARTIES

PLAINTIFF JUVENAL ESPARZA RICO is an individual residing in Sarasota, Florida. He is the father of OMAR ESPARZA CONTRERAS and brings this lawsuit in his individual capacity for the damages he suffered because of the wrongful death of his son and also as a surviving heir for the survival damages of his son's estate. JUVENAL ESPARZA RICO is qualified as an heir to maintain a survival action for his son's survival damages because there is no administration pending for his son's estate and none is necessary. No estate administration is necessary because OMAR ESPARZA CONTRERAS had fewer than two debts, had no children or spouse, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative

4

qualified to act, no administration is desired by those interested in the estate and his only heirs, his parents JUVENAL ESPARZA RICO and ARCELIA CONTRERAS ORTEGA, are in possession of OMAR ESPARZA CONTRERAS' property.

PLAINTIFF ARCELIA CONTRERAS ORTEGA is an individual residing in Sarasota, Florida. She is the mother of OMAR ESPARZA CONTRERAS and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her son and also as a surviving heir for the survival damages of her son's estate. ARCELIA CONTRERAS ORTEGA is qualified as an heir to maintain a survival action for her son's survival damages because there is no administration pending for her son's estate and none is necessary. No estate administration is necessary because OMAR ESPARZA CONTRERAS had fewer than two debts, had no children or spouse, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his only heirs, his parents JUVENAL ESPARZA RICO and ARCELIA CONTRERAS ORTEGA, are in possession of OMAR ESPARZA CONTRERAS' property.

PLAINTIFF MARIA INES MUNOZ BRIONES is an individual residing in the State of Nuevo Leon in the Republic of Mexico. She is the spouse of JUAN ENRIQUE REYES MEZA and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her husband, as next friend of her minor children, INGRI MARVELLA REYES MUNOZ and CLARISA YAJAIRA REYES MUNOZ for the damages they suffered because of the wrongful death of their father, and also as a surviving heir for the survival damages of her husband's estate. MARIA INES MUNOZ BRIONES is qualified as an heir to maintain a survival action for her husband's survival damages because there is no administration

5

pending for her husband's estate and none is necessary. No estate administration is necessary because JUAN ENRIQUE REYES MEZA had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his spouse and other surviving heirs are in possession of JUAN ENRIQUE REYES MEZA'S property.

JUAN ANTONIO REYES AGUILAR is an individual residing in the State of Nuevo Leon in the Republic of Mexico. He is the father of JUAN ENRIQUE REYES MEZA and brings this lawsuit in his individual capacity for the damages he suffered because of the wrongful death of his son.

PLAINTIFF IRENE GODINEZ CARDONA is an individual residing in the State of Aguascalientes in the Republic of Mexico. She is the spouse of ROBERTO ESPARZA RICO and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her husband, as next friend of her minor son, ROBERTO ESPARZA GODINEZ for the damages he suffered because of the wrongful death of his father, and also as a surviving heir for the survival damages of her husband's estate. IRENE GODINEZ CARDONA is qualified as an heir to maintain a survival action for her husband's survival damages because there is no administration pending for her husband's estate and none is necessary. No estate administration is necessary because ROBERTO ESPARZA RICO had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his spouse and other surviving heirs are in possession of ROBERTO ESPARZA RICO'S property.

6

PLAINTIFF CLEMENTINA SANCHEZ is an individual residing in the Republic of Honduras. She is the mother of PEDRO AMADOR LOPEZ and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her son.

PLAINTIFF EVA CRISTINA SANCHEZ SIERRA is an individual residing in the Republic of Honduras. She is the spouse of PEDRO AMADOR LOPEZ and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her husband, as next friend of her minor children, KARLA LIZETH AMADOR SANCHEZ, NANCY MARISOL AMADOR SANCHEZ, MARVIN ALEXANDER AMADOR SANCHEZ AND FRANCIS ESTEFANIA AMADOR SANCHEZ for the damages they suffered because of the wrongful death of their father, and also as a surviving heir for the survival damages of her husband's estate. EVA CRISTINA SANCHEZ SIERRA is qualified as an heir to maintain a survival action for her husband's survival damages because there is no administration pending for her husband's estate and none is necessary. No estate administration is necessary because PEDRO AMADOR LOPEZ had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his spouse and other surviving heirs are in possession of PEDRO AMADOR LOPEZ'S property.

PLAINTIFF MANUEL DE JESUS DOBLADO AVILA is an individual residing in the Republic of Honduras. He is the father of ISIDRO AVILA BUESO and brings this lawsuit in his individual capacity for the damages he suffered because of the wrongful death of his son.

PLAINTIFF DELMIRA SOLER DOBLADO is an individual residing in the Republic of Honduras. She is the spouse of ISIDRO AVILA BUESO and brings this lawsuit in her

7

individual capacity for the damages she suffered because of the wrongful death of her husband, as next friend of her minor children, NELIS AVILA SOLER, EVER AVILA SOLER AND ELMER ROBERTO AVILA SOLER for the damages they suffered because of the wrongful death of their father, and also as a surviving heir for the survival damages of her husband's estate. DELMIRA SOLER DOBLADO is qualified as an heir to maintain a survival action for her husband's survival damages because there is no administration pending for her husband's estate and none is necessary. No estate administration is necessary because ISIDRO AVILA BUESO had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his spouse and other surviving heirs are in possession of ISIDRO AVILA BUESO'S property.

PLAINTIFF LUDIS YESENIA AVILA SOLER is an individual residing in the Republic of Honduras. She is the daughter of ISIDRO AVILA BUESO and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her father.

PLAINTIFF OBDULIA FERRUFINO BURGOS is an individual residing in the Republic of Honduras. She is the mother of ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her daughters, as next friend of her minor grandchildren, OSCAR ALFREDO FERRUFINO, JAIRO MAURICIO FERRUFINO, KATHERINE NINOSKA CANALES FERRUFINO, JENNIFER GUADALUPE FERRUFINO AND ELMER NOE FERRUFINO, who are the daughters of ROSIBEL FERRUFINO, and JONATHAN JOEL GUTIERREZ FERRUFINO, LELY AMPARO CANALES FERRUFINO AND IVY ROXANA

CANALES FERRUFINO, who are the children of LELY ELIZABETH FERRUFINO, for the damages they suffered because of the wrongful death of their respective mothers, and also as a surviving heir for the survival damages of her two daughters' estates. OBDULIA FERRUFINO BURGOS is qualified as an heir to maintain a survival action for her two daughters' survival damages because there is no administration pending for their estates and none is necessary. No estate administration is necessary because ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and their surviving heirs are in possession of ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO'S property.

PLAINTIFF OBDULIA FERRUFINO BURGOS is also the grandmother of LESLY ESMERALDA FERRUFINO, who died with no surviving spouse, children or parents. PLAINTIFF OBDULIA FERRUFINO BURGOS also brings this lawsuit as a surviving heir for the survival damages of her granddaughter LESLY ESMERALDA FERRUFINO. OBDULIA FERRUFINO BURGOS is qualified as an heir to maintain a survival action for her granddaughter's survival damages because there is no administration pending for her estate and none is necessary. No estate administration is necessary because LESLY ESMERALDA FERRUFINO had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and her surviving heir is in possession of LESLY ESMERALDA FERRUFINO'S property.

9

PLAINTIFF ROSA DELIA HERNANDEZ DE ARDON is an individual residing in the Republic of El Salvador.  She is the spouse of DOMINGO ARDON SIBRIAN and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her husband, as next friend of her minor children, HAROLD MAURICIO ARDON HERNANDEZ and MARELYN IVETTE ARDON HERNANDEZ for the damages they suffered because of the wrongful death of their father, and also as a surviving heir for the survival damages of her husband's estate.  ROSA DELIA HERNANDEZ DE ARDON is qualified as an heir to maintain a survival action for her husband's survival damages because there is no administration pending for her husband's estate and none is necessary.  No estate administration is necessary because DOMINGO ARDON SIBRIAN had fewer than two debts, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his spouse and other surviving heirs are in possession of DOMINGO ARDON SIBRIAN'S property.

PLAINTIFF SIXTO ACEVEDO is an individual residing in the Republic of El Salvador. He is the father of BYRON ADNER ACEVEDO PEREZ and brings this lawsuit in his individual capacity for the damages he suffered because of the wrongful death of his son and also as a surviving heir for the survival damages of his son's estate. SIXTO ACEVEDO is qualified as an heir to maintain a survival action for his son's survival damages because there is no administration pending for his son's estate and none is necessary. No estate administration is necessary because BYRON ADNER ACEVEDO PEREZ had fewer than two debts, had no children or spouse, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no

10

representative qualified to act, no administration is desired by those interested in the estate and his only heirs, his parents JUVENAL ESPARZA RICO and MARIA EMILIA PEREZ, are in possession of BYRON ADNER ACEVEDO PEREZ'S property.

PLAINTIFF MARIA EMILIA PEREZ is an individual residing in the Republic of El Salvador. She is the mother of BYRON ADNER ACEVEDO PEREZ and brings this lawsuit in her individual capacity for the damages she suffered because of the wrongful death of her son and also as a surviving heir for the survival damages of her son's estate. MARIA EMILIA PEREZ is qualified as an heir to maintain a survival action for her son's survival damages because there is no administration pending for her son's estate and none is necessary. No estate administration is necessary because BYRON ADNER ACEVEDO PEREZ had fewer than two debts, had no children or spouse, there is no desire to have a court partition the estate among the distributees, the interest of the estate in filing this lawsuit requires immediate action and there is no representative qualified to act, no administration is desired by those interested in the estate and his only heirs, his parents SIXTO ACEVEDO and MARIA EMILIA PEREZ, are in possession of BYRON ADNER ACEVEDO PEREZ'S property.

DEFENDANT ARNULFO FLORES, JR. is an individual who resided in Kingsville, Kleberg County, Texas at the time the Plaintiffs' cause of action accrued. He has been served with process but he has not filed an answer as of this date.

DEFENDANT NORMA ARRIAGA TREVINO a/k/a NORMA BOCANEGRA is an individual who resided in Harlingen, Cameron County, Texas at the time the Plaintiffs' cause of action accrued. She has been served with process but she has not filed an answer as of this date.

11

DEFENDANT UNION PACIFIC CORPORATION is a foreign corporation doing business within the State of Texas with its principal place of business in Omaha, Nebraska. It has been served with process but it has not filed an answer as of this date.

DEFENDANT UNION PACIFIC RAILROAD COMPANY is a foreign railroad doing business within the State of Texas with its principal place of business in Omaha, Nebraska. UNION PACIFIC RAILROAD COMPANY may be served with process by serving its registered agent for service in the State of Texas, Mr. David P. Young, Asst. General Solicitor, 808 Travis Street, Suite 620, Houston, Texas 77002.

DEFENDANT AT & L RAILROAD COMPANY, INC. is a foreign railroad doing business within the State of Texas with its principal place of business in Watonga, Oklahoma. It has been served with process but it has not filed an answer as of this date.

DEFENDANT ARCHER DANIELS MIDLAND COMPANY is a foreign corporation doing business within the State of Texas with its principal place of business in Decatur, Illinois. It has been served with process but it has not filed an answer as of this date.

### III.

### VENUE AND JURISDICTION

Venue is proper in Cameron County, Texas pursuant to Section 15.002 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because a substantial part of the events or omissions giving rise to the claim against Defendant Flores and the other Defendants occurred in Cameron County, Texas. Defendant Flores and his co-conspirators helped the decedents cross into the United States in Cameron County, Texas, they hid them in Cameron County, Texas and they also loaded the decedents in the Union Pacific grain hopper in Cameron County, Texas. The Union Pacific Defendants were negligent in hiring, training and supervising Defendant Flores in Cameron

County, Texas. All of these acts and/or omissions by the Defendants were a substantial part of the events which gave rise to Plaintiffs' claims and they all occurred in Cameron County, Texas. Furthermore, the misrepresentations that give rise to Plaintiffs' claims against Defendant Flores were made in Cameron County, Texas.

Venue is also proper in Cameron County, Texas pursuant to Section 15.002 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because at the time the cause of action accrued Defendant NORMA ARRIAGA TREVINO a/k/a NORMA BOCANEGRA resided in Harlingen, Cameron County, Texas.

Because venue is proper in Cameron County, Texas as to one or more Defendants, venue is also proper as to all other Defendants pursuant to Section 15.005 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

Plaintiffs seek damages under the common and statutory laws of the State of Texas and the amount in controversy exceeds the jurisdictional minimum of the Court. The Court has jurisdiction over the parties in this case because they conduct a substantial amount of business within the State of Texas.

## IV.

## FACTS

Defendants Flores and Trevino were members of a conspiracy to transport undocumented immigrants from Mexico to the United States. Defendant Flores was employed as a conductor by Defendants Union Pacific Railroad Company and/or Union Pacific Corporation. Defendant Flores used information and his general authority granted to him by Union Pacific Railroad Company and/or Union Pacific Corporation to participate in the conspiracy.

On or about June 16, 2002, in Harlingen, Cameron County, Texas Defendants Flores and

Trevino and their co-conspirators loaded OMAR ESPARZA CONTRERAS, JUAN ENRIQUE REYES MEZA, ROBERTO ESPARZA RICO, PEDRO AMADOR LOPEZ, ISIDRO AVLIA BUESO, ROSIBEL FERRUFINO, LELY ELIZABETH FERRUFINO, LESLY ESMERALDA FERRUFINO, DOMINGO ARDON SIBRIAN and BYRON ADNER ACEVEDO PEREZ (hereinafter, the "Decedents") onto a grain hopper railroad car and locked the entry door from the outside. Defendant Flores accepted a monetary fee from the Decedents in return for Defendant Flores' allowing Decedents to ride on the Union Pacific grain hopper. At all times, the subject railcar was owned, maintained, inspected and/or otherwise under the control of Defendants Union Pacific Railroad Company and Union Pacific Corporation.

Defendants Flores, Trevino and their co-conspirators promised Decedents that they would give them safe passage on the Union Pacific railcar to a location just beyond the Sarita, Texas Border Patrol checkpoint. They also assured Decedents that they would be let out of the railcar at some location beyond the Sarita, Texas Border Patrol checkpoint. Defendants Flores and Trevino negligently failed to let Decedents get out of the railcar after the train got past the Sarita, Texas Border Patrol checkpoint. Decedents were never let out of the Union Pacific railcar and they were unable to free themselves from the railcar. As a result, Decedents died a long, excruciating death because of lack of oxygen, dehydration and extreme overheating.

The railcar carrying Decedents traveled north through Texas and eventually stopped at a Union Pacific and/or AT & L Railroad location in Oklahoma. The railcar remained in the Union Pacific and/or AT & L Railroad location in Oklahoma with Decedents still locked inside. While at this location, Defendants Union Pacific Corporation, Union Pacific Railroad Company and/or AT & L Railroad negligently failed to inspect the railcar and otherwise failed to discover that Decedents were still locked inside the railcar.

14

The railcar, with Decedents still locked inside, was then transported from the Union Pacific and/or AT & L Railroad location in Oklahoma to a grain facility in Denison, Iowa owned and operated by Defendant Archer Daniels Midland Company. While at this location, Defendants Union Pacific Corporation, Union Pacific Railroad Company and Archer Daniels negligently failed to inspect the railcar and otherwise failed to discover that Decedents were still locked inside the railcar. In October 2002, Defendant Archer Daniels decided that it needed several grain railcars for a large shipment of grain. The subject railcar was then opened by a worker at the grain elevator on or about October 14, 2002 to prepare the railcar for use. At that time, he discovered the remains of Decedents inside the grain hopper.

## V.

## CIVIL CONSPIRACY

Defendants Flores and Trevino are liable to Plaintiffs because they were parties to a civil conspiracy that resulted in the deaths of Decedents. From the inception of the conspiracy, Defendants Flores and Trevino were aware of the harm likely to result from their wrongful conduct and/or the wrongful conduct of their co-conspirators. The civil conspiracy is derivative from the acts of negligence committed by Defendants Flores and Trevino and/or their co-conspirators, including but not limited to negligently failing to allow Decedents to get out of the Union Pacific railcar, and/or placing them in a railcar that they would be unable to open from the inside.

## VI.

## NEGLIGENCE OF DEFENDANTS FLORES AND TREVINO

Defendants Flores and Trevino are also liable to Plaintiffs because of their negligence. Each and every one of the following acts and omissions of these Defendants, among other acts

and omissions, taken separately and collectively, constitute negligence and a direct and proximate cause of the deaths of Decedents and Plaintiffs' damages described herein:

    a.    failing to let Decedents out of the Union Pacific railcar in a timely manner;

    b.    loading Decedents onto a railcar that they would be unable to escape from;

    c.    locking the subject railcar from the outside thereby making it impossible for Decedents to open the railcar and escape;

    d.    failing to warn Decedents of their inability to unlock the subject railcar; and

    e.    failing to inform the police, Border Patrol, Union Pacific or other authorities that Decedents were locked in the subject railcar.

## VII.

## LIABILITY OF UNION PACIFIC CORPORATION AND UNION PACIFIC RAILROAD COMPANY

Defendants Union Pacific Corporation and Union Pacific Railroad Company are vicariously liable to Plaintiffs for their damages because Defendant Flores' negligent acts and/or omissions were performed while in the course and scope of his employment as a conductor by Defendants Union Pacific Corporation and Union Pacific Railroad Company.

Defendants Union Pacific Corporation and Union Pacific Railroad Company are also directly liable to Plaintiffs for their own negligent acts and/or omissions. Each and every one of the following acts and omissions of Defendants Union Pacific Corporation and Union Pacific Railroad Company, taken separately and collectively, constitute negligence and a direct and proximate cause of the deaths of Decedents and Plaintiffs' damages described herein:

    a.    failing to let Decedents out of the Union Pacific railcar;

b.    failing to establish and/or enforce policies, procedures and/or safeguards to ensure that its employees would not load persons such as Decedents onto a railcar, particularly a railcar that they would be unable to escape from;

c.    failing to establish and/or enforce security policies, procedures and/or safeguards to ensure that persons such as Decedents cannot be loaded onto a railcar;

d.    negligently hiring Defendant Flores by failing to adequately check on his background;

e.    negligently training or failing to train Defendant Flores to ensure that he does not load persons onto dangerous railcars;

f.    negligently supervising or failing to supervise Defendant Flores so as to enforce its policies and/or procedures that are intended to prevent persons such as Decedents from being loaded onto a dangerous railcar such as the one at issue;

g.    negligently supervising or failing to supervise Defendant Flores when they knew or should have known of Defendant Flores' tendencies or propensity to engage in the kind of conduct that led to the deaths of Decedents;

h.    negligently retaining Defendant Flores when they knew or should have known of Defendant Flores' tendencies or propensity to engage in the kind of conduct that led to the deaths of Decedents; and

i.    negligently entrusting the railcar to Defendant Flores when they knew or should have known when they knew or should have known of Defendant Flores' tendencies or propensity to engage in the kind of conduct that led to the deaths of Decedents.

Defendants Union Pacific Corporation and Union Pacific Railroad Company are directly

liable to Plaintiffs because of the acts and/or omissions constituting negligence that are listed above, among others, because such negligence caused or contributed to cause the deaths of Decedents.

## VIII.

## RESTATEMENT (SECOND) OF TORTS § 317

Defendants Union Pacific Corporation and Union Pacific Railroad Company are also directly liable to Plaintiffs for the negligence committed by Defendant Flores pursuant to the rules set out in Section 317 of the Restatement (Second) of Torts because Defendant Flores committed his acts and/or omissions of negligence on Union Pacific premises or with Union Pacific chattels.

## IX.

## DAMAGES

Plaintiff JUVENAL ESPARZA RICO, suing in his individual capacity, seeks to recover damages provided by law that consist of:

1. past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that he, in reasonable probability, would have received from OMAR ESPARZA CONTRERAS had he lived;

2. past and future loss of the father\son relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that he, in reasonable probability, would have received from OMAR ESPARZA CONTRERAS had he lived; and

3. past and future mental anguish, grief, emotional pain, torment and suffering experienced by him because of the death of his son, OMAR ESPARZA CONTRERAS.

Plaintiff ARCELIA CONTRERAS ORTEGA, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from OMAR ESPARZA CONTRERAS had he lived;

2.  past and future loss of the mother\son relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from OMAR ESPARZA CONTRERAS had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her son, OMAR ESPARZA CONTRERAS.

PLAINTIFFS JUVENAL ESPARZA RICO AND ARCELIA CONTRERAS ORTEGA,

AS THE SOLE SURVIVING HEIRS OF THEIR SON, OMAR ESPARZA CONTRERAS, seek

to recover damages provided by law that consist of:

1.  conscious pain and suffering and mental anguish endured by OMAR ESPARZA CONTRERAS as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of OMAR ESPARZA CONTRERAS.

Plaintiff MARIA INES MUNOZ BRIONES, suing in her individual capacity, seeks to

recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from JUAN ENRIQUE REYES MEZA had he lived;

2.  past and future loss of the spousal relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from JUAN ENRIQUE REYES MEZA had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her husband, JUAN ENRIQUE REYES MEZA.

19

Plaintiff MARIA INES MUNOZ BRIONES, AS NEXT FRIEND OF HER MINOR CHILDREN, INGRI MARVELLA REYES MUNOZ AND CLARISA YAJAIRA REYES MUNOZ, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that they, in r easonable p robability, w ould h ave r eceived f rom JUAN ENRIQUE REYES MEZA had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from JUAN ENRIQUE REYES MEZA had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of their father, JUAN ENRIQUE REYES MEZA.

Plaintiff MARIA INES MUNOZ BRIONES, AS A SURVIVING HEIR OF HER HUSBAND, JUAN ENRIQUE REYES MEZA, seeks to recover damages provided by law that consist of:

1.  conscious p ain a nd s uffering a nd m ental anguish endured by JUAN ENRIQUE REYES MEZA as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of JUAN ENRIQUE REYES MEZA.

Plaintiff JUAN ANTONIO REYES AGUILAR, suing in his individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that he, in reasonable probability, would have received from JUAN ENRIQUE REYES MEZA had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort,

20

companionship, and society that he, in reasonable probability, would have received from JUAN ENRIQUE REYES MEZA had he lived; and

3.     past and future mental anguish, grief, emotional pain, torment and suffering experienced by him because of the death of his son, JUAN ENRIQUE REYES MEZA.

Plaintiff IRENE GODINEZ CARDONA, suing in her individual capacity, seeks to recover

damages provided by law that consist of:

1.     past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from ROBERTO ESPARZA RICO had he lived;

2.     past and future loss of the spousal relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from ROBERTO ESPARZA RICO had he lived; and

3.     past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her husband, ROBERTO ESPARZA RICO.

Plaintiff IRENE GODINEZ CARDONA, AS NEXT FRIEND OF HER MINOR SON,

ROBERTO ESPARZA GODINEZ, seeks to recover damages provided by law that consist of:

1.     past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that they, in reasonable probability, would have received from ROBERTO ESPARZA RICO had he lived;

2.     past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from ROBERTO ESPARZA RICO had he lived; and

3.     past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of his father, ROBERTO ESPARZA RICO.

Plaintiff IRENE GODINEZ CARDONA, AS A SURVIVING HEIR OF HER HUSBAND, ROBERTO ESPARZA RICO, seeks to recover damages provided by law that consist of:

1.    conscious pain and suffering and mental anguish endured by ROBERTO ESPARZA RICO as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.    reasonable and customary charges for the funeral and burial of ROBERTO ESPARZA RICO.

Plaintiff CLEMENTINA SANCHEZ, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.    past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived;

2.    past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived; and

3.    past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her son, PEDRO AMADOR LOPEZ.

Plaintiff EVA CRISTINA SANCHEZ SIERRA, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.    past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived;

2.    past and future loss of the spousal relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her husband, PEDRO AMADOR LOPEZ.

Plaintiff EVA CRISTINA SANCHEZ SIERRA, AS NEXT FRIEND OF HER MINOR CHILDREN, KARLA LIZETH AMADOR SANCHEZ, NANCY MARISOL AMADOR SANCHEZ, MARVIN ALEXANDER AMADOR SANCHEZ AND FRANCIS ESTEFANIA AMADOR SANCHEZ, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that they, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from PEDRO AMADOR LOPEZ had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of his father, PEDRO AMADOR LOPEZ.

Plaintiff EVA CRISTINA SANCHEZ SIERRA, AS A SURVIVING HEIR OF HER HUSBAND, PEDRO AMADOR LOPEZ, seeks to recover damages provided by law that consist of:

1.  conscious pain and suffering and mental anguish endured by PEDRO AMADOR LOPEZ as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of PEDRO AMADOR LOPEZ.

Plaintiff MANUEL DE JESUS DOBLADO AVILA, suing in his individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that he, in

23

reasonable probability, would have received from ISIDRO AVILA BUESO had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that he, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by him because of the death of his son, ISIDRO AVILA BUESO.

Plaintiff DELMIRA SOLER DOBLADO, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived;

2.  past and future loss of the spousal relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her husband, ISIDRO AVILA BUESO.

Plaintiff DELMIRA SOLER DOBLADO, AS NEXT FRIEND OF HER MINOR CHILDREN, NELIS AVILA SOLER, EVER AVILA SOLER AND ELMER ROBERTO AVILA SOLER, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that they, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived; and

3.    past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of his father, ISIDRO AVILA BUESO.

Plaintiff DELMIRA SOLER DOBLADO, AS A SURVIVING HEIR OF HER HUSBAND, ISIDRO AVILA BUESO, seeks to recover damages provided by law that consist of:

1.    conscious pain and suffering and mental anguish endured by ISIDRO AVILA BUESO as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.    reasonable and customary charges for the funeral and burial of ISIDRO AVILA BUESO.

Plaintiff LUDIS YESENIA AVILA SOLER, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.    past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived;

2.    past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived; and

3.    past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her father, ISIDRO AVILA BUESO.

Plaintiff OBDULIA FERRUFINO BURGOS, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.    past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO had they lived;

2.    past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINO had they lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of their mother, ROSIBEL FERRUFINO.

Plaintiff OBDULIA FERRUFINO BURGOS, AS A SURVIVING HEIR OF THE ESTATES OF HER DAUGHTERS, ROSIBEL FERRUFINO AND LELY ELIZABETH FERRUFINOM AND HER GRANDDAUGHTER, LESLY ESMERALDA FERRUFINO, seeks to recover damages provided by law that consist of:

1.  conscious pain and suffering and mental anguish endured by ROSIBEL FERRUFINO, LELY ELIZABETH FERRUFINOM AND LESLY ESMERALDA FERRUFINO as a result of the lack of oxygen, dehydration and excessive heat that they endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of ROSIBEL FERRUFINO, LELY ELIZABETH FERRUFINOM AND LESLY ESMERALDA FERRUFINO.

Plaintiff ROSA DELIA HERNANDEZ DE ARDON, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived;

2.  past and future loss of the spousal relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from ISIDRO AVILA BUESO had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her husband, ISIDRO AVILA BUESO.

Plaintiff ROSA DELIA HERNANDEZ DE ARDON, AS NEXT FRIEND OF HER MINOR CHILDREN, HAROLD MAURICIO ARDON HERNANDEZ and MARELYN IVETTE ARDON HERNANDEZ, seeks to recover damages provided by law that consist of:

27

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that they, in reasonable probability, would have received from DOMINGO ARDON SIBRIAN had he lived;

2.  past and future loss of the parent/child relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that they, in reasonable probability, would have received from DOMINGO ARDON SIBRIAN had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by them because of the death of his father, DOMINGO ARDON SIBRIAN.

Plaintiff ROSA DELIA HERNANDEZ DE ARDON, AS A SURVIVING HEIR OF HER HUSBAND, DOMINGO ARDON SIBRIAN, seeks to recover damages provided by law that consist of:

1.  conscious pain and suffering and mental anguish endured by DOMINGO ARDON SIBRIAN as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of DOMINGO ARDON SIBRIAN.

Plaintiff SIXTO ACEVEDO, suing in his individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that he, in reasonable probability, would have received from BYRON ADNER ACEVEDO PEREZ had he lived;

2.  past and future loss of the father\son relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that he, in reasonable probability, would have received from BYRON ADNER ACEVEDO PEREZ had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by him because of the death of his son, BYRON ADNER ACEVEDO PEREZ.

Plaintiff MARIA EMILIA PEREZ, suing in her individual capacity, seeks to recover damages provided by law that consist of:

1.  past and future pecuniary losses for care, maintenance, support, services, advice, counsel, consortium and reasonable contributions of a pecuniary value that she, in reasonable probability, would have received from BYRON ADNER ACEVEDO PEREZ had he lived;

2.  past and future loss of the mother\son relationship, companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that she, in reasonable probability, would have received from BYRON ADNER ACEVEDO PEREZ had he lived; and

3.  past and future mental anguish, grief, emotional pain, torment and suffering experienced by her because of the death of her son, BYRON ADNER ACEVEDO PEREZ.

PLAINTIFFS SIXTO ACEVEDO AND MARIA EMILIA PEREZ, AS THE SOLE SURVIVING HEIRS OF THEIR SON, BYRON ADNER ACEVEDO PEREZ, seek to recover damages provided by law that consist of:

1.  conscious pain and suffering and mental anguish endured by BYRON ADNER ACEVEDO PEREZ as a result of the lack of oxygen, dehydration and excessive heat that he endured by being locked in the subject railcar; and

2.  reasonable and customary charges for the funeral and burial of BYRON ADNER ACEVEDO PEREZ.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that upon final trial, the Court enter judgment in favor of Plaintiffs against Defendants as follows:

1.  Judgment for actual damages in an amount determined by the trier of fact;

2.  Judgment for punitive damages in an amount determined by the trier of fact;

3.  Judgment for pre- and post-judgment interest if, as, and when provided by law, and at the maximum rate allowed by law;

4.  For all costs of court incurred herein; and

5.    For such other and further relief to which Plaintiffs may be justly entitled.

Plaintiffs respectfully request a trial by jury.

Respectfully submitted,

**LAW OFFICES OF ALBERTO T. GARCIA III, P.C.**
500 W. Pecan Blvd.
McAllen, Texas 78501
Telephone: 956-971-0999
Telecopier: 956-971-0991

_____
**ALBERTO T. GARCIA III**
State Bar No. 00787515

**ATTORNEY FOR PLAINTIFFS**

United States District Court
Southern District of Texas
FILED

AUG 0 1 2003

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

M-03-661

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. M-03- 661-01 |
| | § | |
| v. | § | Count 1: 8 U.S.C. § 1324(a)(1)(A)(v)(I) |
| | § | (Conspiracy to Transport Undocumented Aliens) |
| ARNULFO FLORES, JR. | § | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE

From on or about January 1, 2000, to on or about February 17, 2003, in the Southern District

of Texas, and elsewhere, within the jurisdiction of this court, defendant

### ARNULFO FLORES, JR.,

knowing and in reckless disregard of the fact that certain persons known and unknown to the United

States Attorney – including those who have been confirmed by the United States Attorney, through

certified copies of birth certificates and other means, to have been undocumented aliens and citizens

of foreign countries – were aliens who had come to, entered, and remained in the United States in

violation of law, did knowingly and intentionally combine, conspire, confederate, and agree with

other persons known and unknown to the United States Attorney, including Juan Fernando Licea-

Cedillo, also known as Alvaro Galicia Castro, also known as Cacahaute, to transport, move, attempt

to transport, and attempt to move said  aliens by means of a freight train and otherwise, in

furtherance of such violation of law, within the Southern District of Texas and elsewhere, for the

purpose of commercial advantage and private financial gain, during and in relation to which the

defendant placed in jeopardy the life of a person.



## The Manner and Means of the Conspiracy

It was a part of the conspiracy that

1.      JUAN FERNANDO LICEA-CEDILLO aka ALVARO GALICIA CASTRO aka CACAHUATE ("LICEA") would and did transport and arrange for the transportation of undocumented aliens aboard Union Pacific railroad cars, from locations in or near Harlingen, Texas, past the Border Patrol checkpoint, at Sarita, Texas, and on to points in or near Kingsville, Texas.

2.      ARNULFO FLORES, JR. ("FLORES"), then a conductor employed by Union Pacific Railroad, would and did provide Union Pacific train schedule information, including expected train stopping locations and times, to LICEA, who needed this information so that he would know when and where he and other smugglers could load the aliens onto the train.

3.      LICEA and an unidentified co-conspirator would and did pay FLORES for this information at various locations in and near Harlingen, Texas.

## Overt Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to effect the objects thereof, the defendant named herein and other persons both known and unknown to the United States Attorney, performed or caused the performance of the following overt acts, among others not described herein, in the Southern District of Texas and elsewhere within the jurisdiction of the court:

(1)      On or about May 9, 2002, FLORES, in his capacity as a conductor for Union Pacific Railroad, provided LICEA with information concerning the expected stopping time in or near Harlingen, Texas, for a Union Pacific freight train.

(2)      On or about July 15, 2002, FLORES accepted a cash payment from LICEA in return for train schedule information.

-2-

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), 1324(a)(1)(B)(i) & 1324(a)(1)(B)(iii)

Dated: August 1, 2003.

MICHAEL T. SHELBY,
UNITED STATES ATTORNEY

By: _Jerry L. Leonard by permission_

Michael J. Wynne
Assistant United States Attorney

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N MILBY, CLERK
By _____
Deputy Clerk

-3-

United States District Court
Southern District of Texas
FILED

MAR - 9 2004

Michael N. Milby, Clerk of Court



ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CASE NO. CR M-03-661 |
| | § | |
| VERSUS | § | McALLEN, TEXAS |
| | § | AUGUST 1, 2003 |
| ARNULFO FLORES, JR. | § | 4:14 P.M. TO 4:49 P.M. |

REARRAIGNMENT

BEFORE THE HON. RANDY CRANE, UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff(s)          SEE NEXT PAGE


For the Defendant(s):         SEE NEXT PAGE


Interpreter:                  Elena Medrano


Court Recorder:               Richard Cortez

TRUE COPY I CERTIFY
ATTEST
MICHAEL N. MILBY, CLERK
By _____
Deputy Clerk

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292
(713) 697-4718 (office)
(713) 697-4722 (fax)

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:

For the Plaintiff(s):                    U.S. Attorney's Office
                                         TERRY LEONARD, AUSA
                                         1701 W. Business Hwy. 83, #600
                                         McAllen, Texas 78501


For Defendant Flores:                    Law Office of Abel Toscano, Jr.
                                         ARTURO HERRERA SAENZ
                                         613 E. Harrison Ave.
                                         Harlingen, Texas 78551


Also Present:

For U.S. Probation:                      Liana Hernandez, USPO


For Defendant Vargas:                    U.S. Public Defender's Office
                                         YVONNE SANCHEZ, AFPD
                                         1701 W. Business Hwy. 83, #405
                                         McAllen, Texas 78501

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

McALLEN DIVISION

UNITED STATES OF AMERICA          § CASE NO. CR M-03-450
                                  §
VERSUS                            § McALLEN, TEXAS
                                  § AUGUST 1, 2003
REGULO VARGAS-ROSAS               § 4:14 P.M. TO 4:49 P.M.


<u>REARRAIGNMENT</u>


BEFORE THE HON. RANDY CRANE, UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiff(s)              SEE NEXT PAGE


For the Defendant(s):             SEE NEXT PAGE


Interpreter:                      Elena Medrano


Court Recorder:                   Richard Cortez


PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292
(713) 697-4718 (office)
(713) 697-4722 (fax)

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:


For the Plaintiff(s):              U.S. Attorney's Office
                                   TERRY LEONARD, AUSA
                                   1701 W. Business Hwy. 83, #600
                                   McAllen, Texas 78501


For Defendant Vargas:              U.S. Public Defender's Office
                                   YVONNE SANCHEZ, AFPD
                                   1701 W. Business Hwy. 83, #405
                                   McAllen, Texas 78501




Also Present:


For U.S. Probation:                Liana Hernandez, USPO

For Defendant Flores:              Law Office of Abel Toscano, Jr.
                                   ARTURO HERRERA SAENZ
                                   613 E. Harrison Ave.
                                   Harlingen, Texas 78551

5

1          (Official Court Interpreter present)

2               THE COURT:  Criminal No. M-03-450, United States of

3     America versus Regulo Vargas-Rosas.

4               MR. LEONARD:  The United States is present and

5     ready, Your Honor.  Terry Leonard for the Government.

6               MS. SANCHEZ:  Good afternoon, Your Honor.  He's

7     present and ready.  He needs the services of an interpreter.

8               THE COURT:  Ms. Sanchez, any objection to my taking

9     your client's plea together with that of the other gentleman

10    who intends to plead guilty?

11              MS. SANCHEZ:  No objection, Your Honor.

12              THE COURT:  Okay.  The record will reflect these

13    proceedings are being interpreted for Mr. Vargas.

14                    Criminal No. M-03-661, the United States of

15    America versus Arnulfo Flores, Jr.

16              MR. LEONARD:  The United States is present and

17    ready.  Terry Leonard for the Government.

18              MR. SAENZ:  Arturo Saenz for the defendant.  We're

19    present and ready, Your Honor.

20              THE COURT:  Any objection to my taking your

21    client's plea together with that of the other gentleman here

22    this afternoon?

23              MR. SAENZ:  None, Your Honor.

24              THE COURT:  Okay.  Gentlemen, we're here this

25    afternoon, as you know, to take your plea in these cases that

1    are pending against you.  Before we proceed, I need to have

2    the oath administered to you.

3        **(Defendants sworn)**

4        **THE COURT:**  Each of you are now under oath so

5    you're required to answer my questions truthfully.  If you do

6    not answer all of my questions truthfully you can be later

7    prosecuted in a separate action for committing perjury or for

8    making a false statement.  Do each of you understand that?

9                Mr. Vargas?

10       **DEFENDANT VARGAS:**  Yes.

11       **THE COURT:**  And Mr. Saenz.  I'm sorry, Mr. Flores?

12       **DEFENDANT FLORES:**  Yes, Your Honor.

13       **THE COURT:**  I've been told that each of you wants

14   to plead guilty to the indictment that's pending against you.

15   Before I take your guilty plea, I must make certain that it is

16   done of your own free will -- I'm sorry -- or to a criminal

17   information.  Before I take your guilty pleas, I must make

18   certain that they are done of your own free will and in

19   accordance with law, because in the United States when you

20   plead guilty to an indictment or a criminal information you

21   give up some very important rights that are guaranteed to you

22   in our Constitution.  I'm going to explain some of those

23   rights to you here this afternoon.  If at any point you do not

24   understand one of my questions, will you agree to stop me and

25   let me know so I can explain the question to you?

1              Will you agree to do that, Mr. Vargas?

2         **DEFENDANT VARGAS:**  Yes.

3         **THE COURT:**  And Mr. Flores?

4         **DEFENDANT FLORES:**  Yes, Your Honor.

5         **THE COURT:**  Beginning with you, Mr. Vargas, what is

6    your full and complete name?

7         **DEFENDANT VARGAS:**  Regulo Vargas-Rosas.

8         **THE COURT:**  And how old are you?

9         **DEFENDANT VARGAS:**  Forty years old.

10        **THE COURT:**  How far did you go in school?

11        **DEFENDANT VARGAS:**  Sixth.

12        **THE COURT:**  Was that in Mexico?

13        **DEFENDANT VARGAS:**  Yes.

14        **THE COURT:**  Do you understand any English?

15        **DEFENDANT VARGAS:**  Very little.

16        **THE COURT:**  Are you in good physical health?

17        **DEFENDANT VARGAS:**  Yes.

18        **THE COURT:**  Are you in good mental health?

19        **DEFENDANT VARGAS:**  Yes.

20        **THE COURT:**  Have you ever been treated for any

21   mental illness or mental disorder, or for addiction to drugs

22   of any kind?

23        **DEFENDANT VARGAS:**  Well, I had several accidents in

24   my head, and after that ever since my mind is low to

25   understand.

1      THE COURT:  Do you have any difficulty

2  understanding what is occurring here this afternoon?

3           DEFENDANT VARGAS:  No, I'm fine until now.

4      THE COURT:  Okay.  And, do you believe that you're

5  competent here this afternoon to understand what's occurring

6  and to enter a plea of guilty in this case?

7           DEFENDANT VARGAS:  Yes.

8      THE COURT:  You understand the consequences of what

9  is occurring here this afternoon?

10           DEFENDANT VARGAS:  Yes.

11      THE COURT:  Within the past 24 hours have you taken

12  any drugs, pills or medicine, or consumed any alcoholic

13  beverages?

14           DEFENDANT VARGAS:  No, nothing.

15      THE COURT:  Ms. Sanchez, do you find your client to

16  be competent?

17           MS. SANCHEZ:  I do, Your Honor.

18      THE COURT:  Mr. Leonard, does the United States

19  have any information that would raise a question as to the

20  competence of either of these defendants?

21           MR. LEONARD:  Neither, Your Honor.

22      THE COURT:  Okay.

23              Mr. Flores, what is your full and complete

24  name?

25           DEFENDANT FLORES:  Arnulfo Flores, Jr.

1      THE COURT:  And how far did you go in school?

2      DEFENDANT FLORES:  Seventh grade.  I got my GED.

3      THE COURT:  Okay.  I presume that you can read and

4  write English?

5      DEFENDANT FLORES:  Yes, sir.

6      THE COURT:  How old are you?

7      DEFENDANT FLORES:  I'm 33, sir.

8      THE COURT:  Are you in good physical health?

9      DEFENDANT FLORES:  Yes, sir.

10      THE COURT:  Are you in good mental health?

11      DEFENDANT FLORES:  I'm sorry, sir.

12      THE COURT:  Are you in good mental health?

13      DEFENDANT FLORES:  Yes, sir.

14      THE COURT:  Have you ever been treated for any

15  mental illness or a mental disorder, or for addiction to drugs

16  of any kind?

17      DEFENDANT FLORES:  No, sir.

18      THE COURT:  Within the past 24 hours have you taken

19  any drugs, pills or medicine, or consumed any alcoholic

20  beverages?

21      DEFENDANT FLORES:  No, sir.

22      THE COURT:  And do you believe that you're mentally

23  competent to enter a plea here this afternoon?

24      DEFENDANT FLORES:  Yes, sir, I am.

25      THE COURT:  Mr. Saenz, do you also find your client

1   to be competent?

2           **MR. SAENZ:**  Yes, Your Honor.

3           **THE COURT:**  Have each of you received a copy of the

4   indictment or the criminal information pending against you?

5   That is, the formal written charges in this case.

6                   Mr. Vargas?

7           **DEFENDANT VARGAS:**  Yes.

8           **THE COURT:**  And Mr. Flores?

9           **DEFENDANT FLORES:**  Yes, sir.

10          **THE COURT:**  Mr. Flores, you have a constitutional

11  right to be charged by an indictment of a grand jury, but you

12  can waive that right and consent to be charged by information

13  of the United States Attorney.

14                  Mr. Leonard, I understand that we're going to

15  proceed on a criminal information?

16          **MR. LEONARD:**  That is correct, Your Honor.

17          **THE COURT:**  Okay.  Mr. Flores, instead of an

18  indictment, these felony charges against you have been brought

19  by the United States Attorney by the filing of a criminal

20  information.  Unless you waive indictment, you may not be

21  charged with a felony unless a grand jury finds by a return of

22  an indictment that there is probable cause to believe that a

23  crime has been committed and that you committed it.  If you do

24  not waive indictment, the Government may present the case to

25  the grand jury and ask it to indict you.  And a grand jury is

1    composed of at least 16, but not more than 23 individuals, and

2    at least 12 of them must find that there is probable cause to

3    believe that you committed the crime with which you were

4    charged before you may be indicted.  The grand jury may or may

5    not indict you.  If you waive indictment by the grand jury,

6    this case will proceed against you on the United States

7    Attorney's criminal information just as though the grand jury

8    had indicted you.

9                    Have you discussed waiving your right to an

10   indictment by a grand jury with your attorney?

11            **DEFENDANT FLORES:**  Yes, sir, I have.

12            **THE COURT:**  And do you understand your right to be

13   indicted by a grand jury?

14            **DEFENDANT FLORES:**  Yes, sir, I do.

15            **THE COURT:**  Have any threats or promises been made

16   to you to induce you to waive your right to an indictment by a

17   grand jury?

18            **DEFENDANT FLORES:**  No, sir.

19            **THE COURT:**  And do you wish to waive your right to

20   an indictment by a grand jury?

21            **DEFENDANT FLORES:**  Yes, sir, I do.

22            **THE COURT:**  Okay.

23                    Mr. Leonard, do you have the criminal

24   information?

25            **MR. LEONARD:**  Yes, I do.

1    **THE COURT:** Okay. The record will reflect that Mr.

2    Flores is executing the criminal information in open court.

3    **MR. LEONARD:** I have provided him a copy of the

4    criminal information. I am providing him at this time a copy

5    of the waiver of indictment, which I will mark with today's

6    date, August 1st, for them to sign, in which it states what he

7    is accused of, for his signature and that of his counsel,

8    after his counsel has explained it to him, of course.

9    **(Pause)**

10    **MR. LEONARD:** Your Honor, may the record reflect

11    both defendant and counsel have signed the waiver of

12    indictment, and I'm tendering it to the Court for the Court's

13    signature.

14    **(Pause)**

15    **THE COURT:** Okay. The record will reflect the

16    Court has also signed the waiver of indictment, which has been

17    executed by the defendant and his counsel.

18    Gentlemen, do any of you, do either of you

19    have any questions about these charges that are pending

20    against you?

21    Mr. Vargas?

22    **DEFENDANT VARGAS:** No.

23    **THE COURT:** Mr. Flores?

24    **DEFENDANT FLORES:** No, Your Honor, I don't.

25    **THE COURT:** And are each of you fully satisfied

1    with the representation and advice given to you by your

2    attorneys in this case?

3                    Mr. Vargas?

4            **DEFENDANT VARGAS:**  Yes.

5            **THE COURT:**  Mr. Flores?

6            **DEFENDANT FLORES:**  Yes, Your Honor, I am.

7            **THE COURT:**  And the Court finds that each of these

8    defendants has taken full advantage of his right to the

9    assistance of counsel.

10                   Mr. Vargas, at this time the United States

11   Attorney is going to read Count 1 --

12           **MR. LEONARD:**  Count 1, Your Honor.

13           **THE COURT:**  -- Count 1 of the indictment; that is,

14   the formal charges pending against you.  When he is finished

15   reading Count 1 of the indictment you will be asked whether

16   you plead guilty or not guilty, so please listen carefully.

17           **MR. LEONARD:**  May it please the Court.  The United

18   States District Court, Southern District of Texas, McAllen

19   Division, the United States of America versus Regulo Vargas-

20   Rosas, Criminal No. M-03-450.

21                   Indictment, the grand jury charges, Count 1,

22   on or about April 29th, 2003, in the Southern District of Texas

23   and within the jurisdiction of the Court, defendant, Regulo

24   Vargas-Rosas, did knowingly and intentionally conspire and

25   agree together and with other person or persons, known and

1    unknown to the grand jurors, to knowingly and intentionally

2    possess with the intent to distribute 500 grams or more of

3    cocaine, a Schedule II controlled substance.

4                    This is a violation of Title 21, United

5    States Code, Section 846, 841(a)(1) and 841(b)(1)(B).

6                    To Count 1 of this indictment, how do you

7    plead, Mr. Regulo Vargas-Rosas, guilty or not guilty?

8            **DEFENDANT VARGAS:**  Guilty.

9            **THE COURT:**  And, Mr. Flores, at this time the

10   United States Attorney is going to read the criminal

11   information.  When he's finished reading this you'll be asked

12   whether you plead guilty or not guilty to it, so please listen

13   carefully.

14           **MR. LEONARD:**  The United States District Court,

15   Southern District of Texas, McAllen Division, the United

16   States of America versus Arnulfo Flores, Jr., Criminal No.

17   M-03-661.

18                   Information, the United States Attorney

19   charges, Count 1, from on or about January 1st, 2000, to on or

20   about February 17th, 2003, in the Southern District of Texas

21   and elsewhere within the jurisdiction of the Court, defendant,

22   Arnulfo Flores, Jr., knowing and in reckless disregard of the

23   fact that certain persons known and unknown to the United

24   States Attorney, including those who have been confirmed by

25   the United States Attorney through certified copies of birth

1  certificates and other means to have been undocumented aliens

2  and citizens of foreign countries, were aliens who had come

3  to, entered and remained in the United States in violation of

4  law, did knowingly and intentionally combine, conspire,

5  confederate and agree with other person or persons, known and

6  unknown to the United States Attorney, including Juan Fernando

7  Lacia Cedio [sp.ph.], also known as Alvero Calicia Castro,

8  also known as Catawate [sp.ph.], to transport, move, attempt

9  to transport, and attempt to move said aliens by means of a

10  freight train and otherwise, in furtherance of such violation

11  of law within the Southern District of Texas and elsewhere for

12  the purpose of commercial advantage and private financial

13  gain, during and in relation to which the defendant placed in

14  jeopardy the life of a person.

15            Manner and means of the conspiracy.  It was

16  part of the conspiracy that Juan Fernando Lacia Cedio, also

17  known as Alvero Calicia Castro, also known as Catawate Lacia,

18  would and did transport and arrange for the transportation of

19  undocumented aliens aboard a Union Pacific Railroad car from

20  locations in or near Harlingen, Texas, pass the Border Patrol

21  checkpoint in Sarita, Texas, and on to points in or near

22  Kingsville, Texas.

23            Two, Arnulo Flores, Jr., then a conductor

24  employed by the Union Pacific Railroad would and did provide

25  Union Pacific train schedule information, including expected

1   train stopping locations and times to Lacia, who needed this
2   information so that he would know when and where he and other
3   smugglers could load the aliens into the train.

4               Three, Lacia and an unidentified co-
5   conspirator would and did pay Flores for this information at
6   various locations in or near Harlingen, Texas.

7               Overt acts in furtherance of the conspiracy.
8   In furtherance of the conspiracy and to effect the objects
9   thereof, the defendant named herein and other persons both
10   known and unknown to the United States Attorney, performed or
11   caused the performance of the following overt acts, among
12   others not described herein in the Southern District of Texas
13   and elsewhere within the jurisdiction of the Court.

14               One, on or about May 9th, 2002, Flores, in
15   his capacity as a conductor for Union Pacific Railroad,
16   provided Lacia with information concerning the expected
17   stopping time in or near Harlingen, Texas for a Union Pacific
18   freight train.

19               Two, On or about July 15th, 2002, Flores
20   accepted cash payment from Lacia in return for this train
21   schedule information.

22               All in violation of Title 8, United States
23   Code, Sections 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(i),
24   1324(a)(1)(B)(i) and 1324(a)(1)(B)(iii).

25               Signed August 1st, 2003, Michael T. Shelby,

1  United States Attorney, by Terry L. Leonard, by permission of

2  Michael J. Wynne, Assistant United States Attorney.

3                  To this criminal information, how do you

4  plead, Arnulfo Flores, Jr., guilty or not guilty?

5         **DEFENDANT FLORES:**  Guilty.

6         **THE COURT:**  Under the Constitution and laws of the

7  United States, each of you could plead not guilty if you

8  desired.  And if you pled not guilty, then each of you would

9  have the right to a trial by a jury or a judge on those

10  charges contained in the indictment or information pending

11  against you.  Do each of you understand that?

12                  Mr. Vargas?

13         **DEFENDANT VARGAS:**  Yes.

14         **THE COURT:**  And Mr. Flores?

15         **DEFENDANT FLORES:**  Yes, Your Honor, I do.

16         **THE COURT:**  At a trial each of you would have the

17  right to the assistance of an attorney whether you could

18  afford one or not.  If you could not afford an attorney one

19  would be appointed to represent you at all stages of the

20  proceedings against you at no cost to you.  Do each of you

21  understand that?

22                  Mr. Vargas?

23         **DEFENDANT VARGAS:**  Yes.

24         **THE COURT:**  And Mr. Flores?

25         **DEFENDANT FLORES:**  Yes, Your Honor, I do.

1  **THE COURT:** If you wanted to plead not guilty, in

2  order to find you guilty the Government would have to prove at

3  a trial by competent evidence and beyond a reasonable doubt

4  those charges contained in the indictment or information

5  pending against you. Do each of you understand that?

6  Mr. Vargas?

7  **DEFENDANT VARGAS:** Yes.

8  **THE COURT:** Mr. Flores?

9  **DEFENDANT FLORES:** Yes, Your Honor, I do.

10  **THE COURT:** And at a trial you would be presumed to

11  be innocent and it would not be up to you to have to prove

12  your innocence. Do each of you understand that?

13  Mr. Vargas?

14  **DEFENDANT VARGAS:** Yes.

15  **THE COURT:** Mr. Flores?

16  **DEFENDANT FLORES:** Yes, Your Honor.

17  **THE COURT:** In the course of a trial the witnesses

18  for the Government would have to come into the courtroom and

19  testify in your presence and in the presence of your attorney.

20  Your attorney could confront witnesses against you, object to

21  any evidence offered and present any evidence on your behalf

22  that you might want to present. Do each of you understand

23  that?

24  Mr. Vargas?

25  **DEFENDANT VARGAS:** Yes.

1      **THE COURT:**  Mr. Flores?

2      **DEFENDANT FLORES:**  Yes, Your Honor.

3      **THE COURT:**  At a trial you would also have the

4  right to take the witness stand and testify in your own

5  defense if you desired.  Do each of you understand that?

6            Mr. Vargas?

7      **DEFENDANT VARGAS:**  Yes.

8      **THE COURT:**  Mr. Flores?

9      **DEFENDANT FLORES:**  Yes, Your Honor, I do.

10     **THE COURT:**  You also have an important right not to

11  be compelled to incriminate yourself or forced to testify and

12  no one can hold it against you if you choose not to do that at

13  a trial.  Do you each of you understand that?

14            Mr. Vargas?

15     **DEFENDANT VARGAS:**  Yes.

16     **THE COURT:**  Mr. Flores?

17     **DEFENDANT FLORES:**  Yes, Your Honor, I do.

18     **THE COURT:**  By pleading guilty, however, you give

19  up your right not to incriminate yourself, because in order

20  for me to be satisfied that you are, in fact, guilty, I'm

21  going to have ask each of you some questions about the alleged

22  offense.  You will not be able to refuse to answer those

23  questions.  Do each of you understand that?

24            Mr. Vargas?

25     **DEFENDANT VARGAS:**  Yes.

1      **THE COURT:**  Mr. Flores?

2      **DEFENDANT FLORES:**  Yes, I do.

3      **THE COURT:**  By pleading guilty, and if I accept

4    that plea, you would be giving up all of these rights that I

5    have just mentioned and discussed with you, there would be no

6    trial, I would simply enter a judgment of guilty and sentence

7    you on the basis of your guilty pleas.  Are each of you

8    willing to give up and waive your right to a jury and those

9    other rights we've just discussed?

10            Mr. Vargas?

11      **DEFENDANT VARGAS:**  Yes.

12      **THE COURT:**  And Mr. Flores?

13      **DEFENDANT FLORES:**  Yes, I am.

14      **THE COURT:**  Do each of you know what the maximum

15    possible punishment is that you face in your case?

16            Mr. Vargas?

17      **DEFENDANT VARGAS:**  Yes.

18      **THE COURT:**  Mr. Flores?

19      **DEFENDANT FLORES:**  Yes, Your Honor.

20      **THE COURT:**  Mr. Vargas, do you understand that in

21    your case I can sentence you to a term of imprisonment of up

22    to 40 years with a minimum sentence of at least five years,

23    and that I can also, in addition, fine you up to two million

24    dollars.  Do you understand that, Mr. Vargas?

25      **DEFENDANT VARGAS:**  Yes.

1          **THE COURT:**  In your case, Mr. Flores, do you

2  understand that I can sentence you to a term of imprisonment

3  of up to 20 years and fine you up to $250,000?

4          **DEFENDANT FLORES:**  Yes, Your Honor.

5          **THE COURT:**  In both of your cases I must impose

6  upon you a term of supervised release.  In your case, Mr.

7  Vargas, of at least four years.  Do you understand that?

8          **DEFENDANT VARGAS:**  Yes.

9          **THE COURT:**  And in your case, Mr. Flores, of at

10  least three years.  Do you understand that?

11          **DEFENDANT FLORES:**  Yes, Your Honor.

12          **THE COURT:**  And this term of supervised release

13  does not reduce your imprisonment, but rather it's a term of

14  supervision that is in addition to and immediately following

15  any term of imprisonment.  Do each of you understand that?

16          Mr. Vargas?

17          **DEFENDANT VARGAS:**  Yes.

18          **THE COURT:**  And Mr. Flores?

19          **DEFENDANT FLORES:**  Yes, Your Honor, I do.

20          **THE COURT:**  And there will be conditions placed on

21  this supervised release term, and if you violate any of those

22  conditions your supervised release term may be revoked and you

23  can be sent to prison for the duration of that supervised

24  release term.  Do each of you understand that?

25          Mr. Vargas?

1              **DEFENDANT VARGAS:**  Yes.

2              **THE COURT:**  Mr. Flores?

3              **DEFENDANT FLORES:**  Yes, Your Honor, I understand

4   that.

5              **THE COURT:**  And if you had the financial ability

6   the Court, at the time of sentencing, would have to assess the

7   cost of imprisonment and supervision on you.  Do each of you

8   understand that?

9                  Mr. Vargas?

10             **DEFENDANT VARGAS:**  Yes.

11             **THE COURT:**  Mr. Flores?

12             **DEFENDANT FLORES:**  Yes, Your Honor.

13             **THE COURT:**  The Court must also impose upon each of

14   you a $100 special assessment, which the Court is required to

15   do for each felony adjudication.  Do each of you understand

16   that?

17                  Mr. Vargas?

18             **DEFENDANT VARGAS:**  Yes.

19             **THE COURT:**  Mr. Flores?

20             **DEFENDANT FLORES:**  Yes, Your Honor.

21             **THE COURT:**  Do each of you understand all of these

22   maximum possible consequences of your pleas as to length of

23   imprisonment, amount of fines, supervised release term, and

24   special assessments?

25               Do you understand all of those, Mr. Vargas?

1           **DEFENDANT VARGAS:**  Yes.

2           **THE COURT:**  Mr. Flores?

3           **DEFENDANT FLORES:**  Yes, Your Honor, I understand.

4           **THE COURT:**  Have each of you spoken with your

5 attorney about the Sentencing Commission Guidelines and how

6 those guidelines might apply in your case?

7              Mr. Vargas?

8           **DEFENDANT VARGAS:**  Yes.

9           **THE COURT:**  Mr. Flores?

10           **DEFENDANT FLORES:**  Yes, sir, I have.

11           **THE COURT:**  I will not be able to determine exactly

12 what guideline sentence might apply in your case until after a

13 presentence investigation report has been prepared by the

14 United States Probation Office and you and the Government have

15 had an opportunity to review and object to that report.  Do

16 each of you understand that?

17              Mr. Vargas?

18           **DEFENDANT VARGAS:**  Yes.

19           **THE COURT:**  Mr. Flores?

20           **DEFENDANT FLORES:**  Yes, Your Honor, I understand.

21           **THE COURT:**  Once that guideline sentence has been

22 determined, I can nevertheless depart from the guideline and

23 sentence you up to the maximum possible punishment that you

24 face in your case.  Do each of you understand that?

25              Mr. Vargas?

1         **DEFENDANT VARGAS:**  Yes.

2         **THE COURT:**  Mr. Flores?

3         **DEFENDANT FLORES:**  I understand, Your Honor.

4         **THE COURT:**  And even if I depart from these

5  guidelines you will still be bound by your guilty pleas and

6  will not be able to withdraw them.  Do each of you understand

7  that?

8              Mr. Vargas?

9         **DEFENDANT VARGAS:**  Yes.

10         **THE COURT:**  Mr. Flores?

11         **DEFENDANT FLORES:**  I understand, Your Honor.

12         **THE COURT:**  Has anybody promised you or guaranteed

13  to you the exact sentence that I'm going to give you in your

14  case?

15              Mr. Vargas?

16         **DEFENDANT VARGAS:**  I did not understand.

17         **THE COURT:**  Has anybody promised you or guaranteed

18  to you the exact sentence that I am going to give you in your

19  case at the time of sentencing?

20         **DEFENDANT VARGAS:**  No.

21         **THE COURT:**  Mr. Flores, has anybody guaranteed to

22  you or promised you the exact sentence that I'm going to give

23  you in your case?

24         **DEFENDANT FLORES:**  No, Your Honor.

25         **THE COURT:**  Parole has been abolished, and if you

1   are sent to prison you will not be released early on parole.

2   Do each of you understand that?

3                       Mr. Vargas?

4           **DEFENDANT VARGAS:**  Yes.

5           **THE COURT:**  Mr. Flores?

6           **DEFENDANT FLORES:**  Yes.

7           **THE COURT:**  Has anybody attempted in any way to

8   force you to plead guilty in this case, or told you that if

9   you did not plead guilty some further charges or some other

10  action would be brought against you?

11                      Mr. Vargas?

12          **DEFENDANT VARGAS:**  No.

13          **THE COURT:**  Mr. Flores?

14          **DEFENDANT FLORES:**  No, Your Honor.

15          **THE COURT:**  And are there plea agreements in both

16  of these cases, Mr. Leonard?

17          **MR. LEONARD:**  Yes, sir.

18                      First of all as to Mr. Vargas.  In exchange

19  for Mr. Vargas' plead of guilty to Count 1 of the indictment,

20  the Government will recommend that the defendant receive

21  maximum credit for acceptance of responsibility, if, in fact,

22  the defendant qualifies in accordance with the sentencing

23  guidelines; (b), that the defendant be sentenced at the low

24  end of the applicable guideline range; and (c), that the

25  remaining count in the indictment be dismissed at the time of

1   sentencing.

2           **THE COURT:**  Mr. Vargas, you've just heard what the

3   Government describe as the plea agreement in your case.  Is

4   that your understanding of your agreement with the Government?

5           **DEFENDANT VARGAS:**  Yes.

6           **THE COURT:**  Okay.

7           **MR. LEONARD:**  As to Mr. Flores, Your Honor, in

8   exchange for his plea of guilty in this case, the defendant

9   agrees (a), to plead guilty to Count 1 of the information;

10  (b), to cooperate fully with the Government in its

11  investigation of the smuggling of undocumented aliens via

12  railroad and its truthful prosecution of those responsible for

13  that smuggling; and to testify truthfully at trial of any co-

14  conspirator, the Government will recommend in exchange that

15  the defendant receive maximum credit for acceptance of

16  responsibility, if, in fact, the defendant qualifies in

17  accordance with the sentencing guidelines; (b), we recommend

18  that the defendant be granted a personal recognizance bond and

19  be permitted to remain on bond pending sentencing.  As a

20  charge in the information encompasses the defendant's knowing

21  involvement in alien smuggling at this time, the Government

22  does not plan to file additional charges against the

23  defendant, if the defendant continues to cooperate with the

24  Government, and in the opinion of the Government he provides

25  substantial assistance in the prosecution of alien smugglers,

1  including testifying at trial, the Government will file a

2  motion with the Court making it possible for the defendant to

3  obtain a reduction pursuant to United States Sentencing

4  Guidelines, Section 5K1.1.

5              That is his plea agreement.

6          **THE COURT:**  Mr. Flores, you just heard the

7  Government describe the plea agreement in your case.  Is that

8  your understanding of the agreement you have with the

9  Government?

10         **MR. FLORES:**  Yes, it is, Your Honor.

11         **THE COURT:**  And have each of you voluntarily signed

12 your plea agreements with the Government?

13             Mr. Vargas?

14         **DEFENDANT VARGAS:**  Yes.

15         **THE COURT:**  Mr. Flores?

16         **DEFENDANT FLORES:**  Yes, I have.

17         **THE COURT:**  And did each of you have the

18 opportunity to read and discuss the plea agreement with your

19 lawyer and have it explained to you in Spanish, if necessary,

20 before you signed it?

21             Mr. Vargas?

22         **DEFENDANT VARGAS:**  Yes.

23         **THE COURT:**  Mr. Flores?

24         **DEFENDANT FLORES:**  Yes, Your Honor.

25         **THE COURT:**  Except for this plea agreement, has

1   there been any other promise or assurance made to you of any

2   kind in exchange for your guilty pleas?

3                    Mr. Vargas?

4            **DEFENDANT VARGAS:**  No.

5            **THE COURT:**  Mr. Flores?

6            **DEFENDANT FLORES:**  No, Your Honor.

7            **THE COURT:**  And are each of you pleading guilty of

8   your own free will because you are guilty?

9                    Mr. Vargas?

10           **DEFENDANT VARGAS:**  Yes.

11           **THE COURT:**  Mr. Flores?

12           **DEFENDANT FLORES:**  Yes, Your Honor.

13           **THE COURT:**  Mr. Vargas, in your case, I do not have

14  to dismiss the remaining count of the indictment as is

15  reflected in your plea agreement.  However, if I do not plan

16  to do that, I will tell you in open court at the time of

17  sentencing that I do not plan to dismiss the remaining counts

18  of the indictment.  In that case, and in only that case, Mr.

19  Vargas, you could take back your guilty plea.  But, even then

20  you could continue to plead guilty, although the outcome of

21  your case would likely be less favorable than that proposed in

22  your plea agreement.  Do you understand that, Mr. Vargas?

23           **DEFENDANT VARGAS:**  Yes.

24           **THE COURT:**  The offense to which both of you are

25  pleading guilty is a felony offense.  And if I accept your

1    pleas each of you will adjudged guilty of that offense.  That

2    adjudication will deprive you of valuable civil rights, such

3    as the right to vote, the right to hold public office, the

4    right to serve on a jury, and the right to possess a firearm.

5              Also, if you are not a United States citizen

6    this adjudication will require your deportation from the

7    United States.

8              In addition, this adjudication may deprive

9    you of your right to certain government employment, licenses

10   and benefits.

11             Do each of you understand that?

12             Mr. Vargas?

13        **DEFENDANT VARGAS:**  Yes.

14        **THE COURT:**  Mr. Flores?

15        **DEFENDANT FLORES:**  Yes, Your Honor, I do.

16        **THE COURT:**  Knowing everything that I've explained

17   to you here this afternoon, would either of you like to take

18   back your guilty pleas at this time?

19             Mr. Vargas?

20        **DEFENDANT VARGAS:**  No.

21        **THE COURT:**  Mr. Flores?

22        **DEFENDANT FLORES:**  No, Your Honor.

23        **THE COURT:**  Mr. Vargas, at this time the United

24   States Attorney is going to give me a representation

25   concerning the facts that the Government is prepared to prove

1   at a trial in your case.  It's important that you listen

2   closely because when he is finished I'm going to ask you if

3   what he said about you was true, or whether there was any part

4   of what he said that was not true.

5                   Mr. Leonard?

6          **MR. LEONARD:**  Your Honor, on or about April 29th,

7   2003, in the Southern District of Texas and within the

8   jurisdiction of the Court, Mr. Vargas, knowingly and

9   intentionally conspired with at least one other person to

10   knowingly and intentionally possess with the intent to

11   distribute more than 500 grams of cocaine.

12          In order to carry out this conspiracy, Mr.

13   Vargas, prior to the date of April 29th, approximately five to

14   seven days prior, Mr. Vargas negotiated with an individual who

15   turned out to be an undercover informant for the Drug

16   Enforcement Administration, for the sale and/or purchase of

17   cocaine.

18          Agents were then contacted by Mr. Martinez.

19   They went out to the residence and they found 1.1 kilograms of

20   cocaine hidden on the property.

21          Mr. Vargas was basically the intermediary.

22   He made negotiations.  Mr. Vargas knew what he was doing was

23   illegal.  No one forced him to do it.  He did it of his own

24   free will.

25          **THE COURT:**  Mr. Vargas, you've just heard what the

1    Government contends in your case.  Were the facts as stated by

2    the United States Attorney true and correct?

3              **DEFENDANT VARGAS:**  It's true.

4              **THE COURT:**  Mr. Flores, if you would now please

5    listen carefully to the United States Attorney, who is going

6    to give me a representation concerning the facts the

7    Government is prepared to proof at a trial in your case.

8              **MR. LEONARD:**  As to Mr. Flores, Mr. Flores was

9    working in his capacity as a conductor for Union Pacific

10   Railroad, was a participant in the conspiracy from

11   approximately January 1st, 2000, to approximately February 17th,

12   2003, to transport undocumented aliens aboard Union Pacific

13   Railroad cars from points in and near Harlingen, Texas to

14   points in and near Kingsville, Texas.

15              The smugglers transported the aliens aboard

16   Union Pacific Railroad cars in an effort to evade United

17   States Border Patrol checkpoint in Sarita, Texas, along US 77

18   leading out of the Rio Grande Valley toward Houston, Texas.

19              Union Pacific freight trains leaving the Rio

20   Grande Valley did not follow a set schedule every day, but

21   were controlled by a dispatcher.  There is a single main rail

22   line leading north from Brownsville, Texas through Harlingen

23   and northward.  There are several sightings at which

24   northbound and southbound trains can pass by one another.  To

25   regulate this traffic, conductors are issued track warrants,

1   which authorize them to proceed along a given segment of

2   track.  They must wait for the next warrant before proceeding

3   to the next segment of track.  This process is controlled by a

4   dispatcher working out of Spring, Texas.

5               Bulletins concerning train movements issued

6   at train crews, as well as related information, is available

7   to all conductors through the Union Pacific computer system.

8   Accordingly, any conductor, regardless of whether he is a

9   conductor for any given train, can determine where and when a

10  train will need to stop.

11              On or about May 9th, 2002, and on multiple

12  dates, during the course of this conspiracy, Mr. Flores, in

13  his capacity as a Union Pacific Railroad conductor, provided

14  information by telephone to Juan Fernando Lacia Cedio, also

15  known as Alvero Calicia Castro, also known as Catawate Lacia,

16  concerning where and when the northbound Union Pacific trains

17  headed out of the Rio Grande Valley were expected to stop.

18              Flores communicated with Lacia and another

19  known alien smuggler by telephone hundreds of times during the

20  conspiracy and during these conversations Flores provided the

21  smugglers with train schedule information.

22              Flores knew Lacia and the other known

23  smugglers were engaged in the business of alien smuggling, and

24  he understand that they would use the information to make

25  arrangements to load aliens into northbound railroad cars for

1    the purpose of transporting them within the Southern District

2    of Texas.   Transporting aliens by friend train in this manner

3    is inherently dangerous activity and places in jeopardy the

4    lives of the aliens.

5                     The aliens Lacia transported by train with

6    Flores' assistance came into the United States through

7    Reynosa, Mexico into Hidalgo County, Texas.   On or about July

8    15th of 2002, and on multiple other dates during the course of

9    this conspiracy, Mr. Flores accepted cash payments from Lacia

10   in return for this information at bars and various other

11   locations in or near Harlingen, Texas, as confirmed by

12   eyewitnesses of these payments.

13                     He knew what he was doing was illegal.   No

14   one forced him to do it.   He did it of his own free will.

15        **THE COURT:**  Mr. Flores, you've just heard what the

16   Government contends are the facts in your case.   Were the

17   facts as stated by the United States Attorney true and

18   correct?

19        **DEFENDANT FLORES:**  Yes, Your Honor, they were.

20        **THE COURT:**  Is there any part of what the U.S.

21   Attorney said that you would like to correct at this time?

22        **DEFENDANT FLORES:**  No, Your Honor.

23        **THE COURT:**  Okay.   It's the finding of the Court in

24   the case of the United States of America versus Regulo Vargas-

25   Rosas, Criminal No. M-03-450, and the United States of America

1   verus Arnulfo Flores, Jr., Criminal No. M-03-661, that each of

2   these defendants is fully competent and capable of entering an

3   informed plea, each of these defendants understands the nature

4   of the charges and the consequences of their pleas, and the

5   maximum possible punishment that they each face, and that each

6   of these guilty pleas is a knowing and voluntary plea

7   supported by an independent basis in fact containing each of

8   the essential elements of the offense.

9               These guilty pleas are, therefore, accepted.

10   The Court adjudge both of these defendants guilty of the

11   offense, and a judgment of guilty is entered.

12               I inform both of you of the following.   A

13   United States Probation Officer will be contacting each of you

14   and interviewing you for the purpose of preparing a

15   presentence investigation report about you that will assist me

16   in determining an appropriate sentence for you.   You'll be

17   asked questions about your employment background, family

18   background, criminal background, and other such subject areas.

19   If you would like, your lawyer may be present during this

20   questioning, but it is certainly not necessary.

21               Once the United States Probation Officer

22   gathers all of the information they need about you, a typed

23   written report will be prepared, a copy of it will be given to

24   your attorney.   Your attorney is required to meet with you and

25   discuss this report with you.   And, if you find anything in

hack the intro

1    the report to be incorrect, to make objections on your behalf

2    to that report.

3                    Finally, at your sentencing hearing, each of

4    you will have the opportunity to bring to my attention

5    anything that you want me to consider in determining an

6    appropriate sentence for each of you.

7                    In your case, Mr. Vargas, I'm ordering that

8    that report be prepared by September 4th, 2003, with any

9    objections to be made by you and your attorney by September

10   18th, 2003, so that a final report can come to the Court by

11   October 2nd, 2003.

12                   Mr. Vargas, you're set for sentencing here in

13   this courtroom on Thursday, October 9th, 2003, at 2:30 p.m.

14                   Mr. Flores, in your case, I'm ordering that

15   that presentence investigation report be prepared by September

16   11th, 2003, with any objections to be made by you and your

17   attorney by September 25th, 2003, so that a final report can

18   come to the Court by October 9th, 2003.

19                   And, Mr. Flores, you're set for sentencing in

20   this courtroom on Thursday, October 16th, 2003, at 2:30 p.m.

21                   Mr. Vargas, you are excused at this time.

22                   Thank you very much, Ms. Sanchez.  I presume

23   he doesn't have any family here?

24           **MS. SANCHEZ:**  No, Your Honor.

25                   May I be excused, Your Honor?

1        **THE COURT:**  Yes, Ms. Sanchez.

2    **(Pause)**

3        **THE COURT:**  Is there a concern that this plea

4    agreement should probably be under seal, just given its --

5        **MR. LEONARD:**  Nobody -- you know, Judge, nobody

6    told me for it to be under seal.  If there is, I will make a

7    proper motion to this Court to put it under seal, because I

8    know there's some things that show his cooperation in it, and

9    we need to go downstairs also, if the Court would allow us to

10    have the Mag court consider our motion for reduction, we would

11    make a motion for reduction of bail.  There are some things in

12    there, but they haven't told me.  I could check with them and

13    see if they want it under seal, so I'll file a motion as such,

14    Your Honor.

15        **THE COURT:**  Okay.  I don't know that we even have a

16    magistrate judges still here.  I'm perfectly comfortable

17    listening to what you have to say on bond, determining whether

18    a bond is suitable in this case.

19        **MR. LEONARD:**  On bond, Your Honor.  What this

20    individual is going to do, he's going to assist us in the

21    prosecution of a case in which 11 aliens were found dead in a

22    railroad car in Minneapolis, Minnesota.

23        **MR. SAENZ:**  Iowa.

24        **MR. LEONARD:**  Minnesota.  Somewhere up north.

25    Anyway, he's going to assist us.  He has been assisting.  He's

1    been cooperative.  The original agreement on bond was whatever

2    the Court decided.  A master promise at that time decided to

3    see if he could reach a percentage bond of 15,000.  His family

4    has been unable to come up with that amount right now.

5    Because of his cooperation, we think it would be better for

6    him to be out of the general prison population at this time.

7    Therefore, we would ask the Court to reduce it to $150,000

8    unsecured.  He does have property, Judge, and so that we know

9    that we can go get his property at any time.  We'd ask

10   $150,000 unsecured.  He has relatives here.  We'd ask for at

11   least one co-surety to sign on that bond with him, so that

12   they would -- you know, he would be responsible.  If he runs

13   not only does he hurt himself, but he hurts a relative, and I

14   don't think he wants to do that.

15          **THE COURT:**  And he is tied in with the group -- I

16   mean, did he have some involvement in the deaths of the

17   individuals in the railcar that ended up in -- up north?

18          **MR. LEONARD:**  Not directly, Your Honor.

19          **THE COURT:**  That wasn't one of the railcars that he

20   helped facilitate through the system through the checkpoint?

21          **MR. LEONARD:**  I am not -- I couldn't tell you

22   exactly on that, Your Honor.

23          **MR. SAENZ:**  Your Honor, if I may.  The discussion

24   has been to that, in fact, is that at the time that rail that

25   they found out that rail that a car went through, it was not

1   around that time.  And so, it wasn't -- he wasn't involved in

2   that that manner.

3            **THE COURT:**  I'm a little skeptical.

4            **MR. LEONARD:**  But this is the information I have

5   been provided, Your Honor.

6            **THE COURT:**  Okay.  I find that the penalty that he

7   faces is so severe that the temptation to flee is go great

8   that I find that this gentleman is going to be a flight risk

9   and I'll deny bond at this time.

10            Mr. Flores, I understand and appreciate that

11   you're going to be cooperating with the Government, and you

12   can obviously substantially reduce the sentence that you face

13   by earning a 5K1.1 motion from the Government and that would

14   mean that you would have to agree to testify at a trial in the

15   prosecution of those, as indicated by Mr. Leonard, that were

16   responsible for the deaths of the aliens in the railcar that

17   eventually ended up in the Minnesota area.

18            And, because this case is in its infancy and

19   you have not yet earned that motion, the amount of time that

20   you face is enormous in this case and I consider you a flight

21   risk at this time.

22            However, when you begin cooperating further,

23   I will reconsider the bond issue at that time, when the

24   Government indicates to me that in all likelihood will proceed

25   with the 5K motion, then that will indicate to me that the

1    amount time you're facing isn't as substantial and, therefore,

2    your risk of flight is not as great, and I will just ask your

3    lawyer to -- I don't know if it takes two weeks or three weeks

4    or whatever, however long it takes for him to begin his

5    cooperating, to file a motion to reconsider bond at that time,

6    and I'll take up the matter then.

7         MR. LEONARD:  We will at the appropriate time, Your

8    Honor, approach with the matter to reconsider bond as soon as

9    we can, Your Honor.

10         THE COURT:  Okay.

11         MR. LEONARD:  And, for the Court's reconsideration.

12         THE COURT:  Okay.  Thank you all very much.  You

13    all are excused.

14      (These proceedings concluded at 4:49 p.m.)

15

16

17

18

19

20

21

22

23

24

25                          * * * * *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct

transcript from the electronic sound

recording of the proceedings in

the above-entitled matter.

_Jeannine K Davis_

Signature of Transcriber

_02-01-04_

Date

_22804_

JTT#