United States District Court
Southern District of Texas
FILED

JAN 0 4 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUVENAL ESPARZA RICO AND )
ARCELIA CONTRERAS ORTEGA, )
INDIVIDUALLY AND AS THE SOLE )
SURVIVING HEIRS OF THE ESTATE OF )
THEIR SON, OMAR ESPARZA )
CONTRERAS, *et al.* )
)
    Plaintiffs, )
)
V. )          CIVIL ACTION B-04-117
)
ARNULFO FLORES, JR., NORMA )
ARRIAGA TREVINO a/k/a NORMA )
BOCANEGRA, UNION PACIFIC )
CORPORATION, UNION PACIFIC )
RAILROAD COMPANY, A T & L )
RAILROAD COMPANY, INC., AND )
ARCHER DANIELS MIDLAND )
COMPANY, )
)
    Defendants. )

**DEFENDANT AT&L RAILROAD COMPANY'S REPLY AND
BRIEF IN SUPPORT THEREOF TO PLAINTIFFS' RESPONSE
TO DEFENDANT AT&L RAILROAD COMPANY'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

    Defendant AT&L Railroad Company ("AT&L") files this Reply and Brief in Support

Thereof to Plaintiffs' Response to AT&L's Motion to Dismiss for Lack of Personal Jurisdiction,

respectfully showing the Court as follows:

## I.    **INTRODUCTION**

    At the November 22, 2004 scheduling conference, the Court was notified that AT&L

filed a Special Appearance contesting personal jurisdiction in Texas before this case was

removed to federal court. Plaintiffs informed the Court that discovery was needed on this issue,

and the Court instructed Plaintiffs and AT&L to conduct discovery on a shortened discovery schedule. Plaintiffs were then required to file a response before Christmas.

In accordance with the Court's instructions, Plaintiffs served discovery on AT&L addressing solely personal jurisdiction issues, to which AT&L timely responded. *See* Exhibits 1 and 2 attached to Exhibit A. Thereafter, however, Plaintiffs did not file a response addressing personal jurisdiction. Rather, Plaintiffs' response focused solely on whether they have stated a claim against AT&L. It was clear at the scheduling conference that Plaintiffs were directed to respond to AT&L's motion to dismiss for lack of personal jurisdiction (*i.e.* Special Appearance), rather than AT&L's motion to dismiss for failure to state a claim (*i.e.* Plea in Abatement). Plaintiffs, therefore, have failed to meet their burden that AT&L is subject to personal jurisdiction in Texas.

## II.    STATEMENT OF FACTS

1.      Plaintiffs filed this suit naming AT&L among several defendants. *See* Plaintiffs' Original Petition, p. 12. Plaintiffs did not describe the bases of jurisdiction over AT&L other than stating that it is a "foreign railroad doing business within the State of Texas." *Id.*

2.      AT&L timely filed a verified pleading contesting personal jurisdiction in Texas by denying that its does business in Texas and by identifying specific facts supporting its position. *See* Defendant AT&L Railroad Company, Inc.'s Special Appearance and, Subject Thereto, Plea in Abatement and Original Answer.

3.      AT&L is an Oklahoma short-line railroad company that operates solely in the State of Oklahoma. *See* Affidavit of Danny Williams, attached as Exhibit "A" and incorporated herein by reference. It operates 38 miles of track between Watonga, Oklahoma, and El Reno, Oklahoma, with a 10 mile branch that extends south to Bridgeport, Okahoma. *Id.* No part of AT&L's line is located in Texas. *Id.* It owns three (3) locomotives, two (2) switch engines, and eight (8) grain hoppers. *Id.*

2

Other grain hoppers used by AT&L are leased, obtained through vouchers, or obtained as excess storage cars from non-Texas companies. *Id.*

4.    AT&L transports customer grain from Watonga to El Reno, where its line connects to Union Pacific's exchange line. *Id.* Depending on where AT&L's customer has sold grain, Union Pacific or other railroad companies will then transport the grain hoppers to where the grain has been sold. *Id.* AT&L's locomotives and switch engines never leave its Oklahoma line. *Id.*

5.    Other than one job over ten years ago when AT&L's employees worked on a railroad spur for another company in the Texas Panhandle, AT&L's employees have never worked outside the State of Oklahoma. *Id.*

6.    Other railroad companies occasionally transport grain hoppers owned or leased by AT&L to Texas if that is where AT&L's customer has sold grain. *Id.* A small percentage of AT&L's income is derived from "carhire" when other railroad companies transport AT&L's grain hoppers on their lines. *Id.*; *see also* Exhibits 1 and 2. "Carhire" income, however, is never paid to AT&L by Texas companies. *Id.*; *see also* Exhibits 1 and 2.

7.    AT&L is not registered to do business in Texas; it is not required to maintain a registered agent in Texas; it does not maintain a registered agent in Texas; it does not advertise, have a telephone listing or mailing address in Texas; it does not solicit business or have any customers in Texas; it does not maintain an office or bank account in Texas; it does not enter into any contracts in Texas; it does not have any employees who reside in Texas; it is not obligated to pay any taxes in Texas; it does not receive any compensation from Texas; and it does not maintain a systematic and continuous presence in Texas. *See* Exhibit A.

8.    Furthermore, AT&L did not own, use or lease the grain hopper in question that was boarded by the decedents. *Id.* On June 16, 2002, AT&L did not even own or lease any grain hoppers that were in Texas or Mexico. *Id.*

9.    In 2002, Union Pacific was allowed to store excess empty grain hoppers on AT&L's line at no charge. *Id.* Any of the excess grain hoppers could be used by AT&L if needed, and any excess grain hoppers that were not used by AT&L were returned to Union Pacific upon request. *Id.*

10.    On the afternoon of June 18, 2002, AT&L received a fax from Union Pacific that 100 excess grain hoppers were being moved to AT&L's line in El Reno to be held for storage. *Id.* On June 19, 2002, AT&L moved the grain hoppers to an isolated portion of its line. *Id.* Several of the grain hoppers, including the grain hopper in question, were never used by AT&L and were later returned to Union Pacific. *Id.*

### III.    ARGUMENT AND CITATIONS OF AUTHORITY

#### A.    Personal Jurisdiction

Courts in Texas may exercise personal jurisdiction over nonresident defendants <u>only</u> when (1) the defendant has established minimum contacts with the forum and (2) if such contacts are established, such an exercise comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Nat'l Industrial Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). Federal case law requires defendants to have, by some act, purposely availed themselves of the privileges of conducting business in the forum state to such a degree that they reasonably should foresee being haled into court there. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Texas law follows the same rule. *Nat'l Industrial Sand Ass'n*, 897 S.W.2d at 773.

For general jurisdiction -- or jurisdiction over the defendant for *any* claim -- the defendant's contacts with the forum must be continuous and systematic. When a defendant's

4

contacts with the forum are less substantial, a state may exercise specific jurisdiction only when a defendant commits some act in the forum state that brings about the cause of action asserted against it. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex. 1990). Here, because AT&L had no connection to the grain hopper in question while it was in Texas or Mexico, the only issue to consider is whether AT&L had continuous and systematic contacts with Texas substantial enough to subject it to general jurisdiction in Texas. The following analysis clearly establishes that AT&L does not have sufficient contacts to subject it to general jurisdiction in Texas.

As noted above, exercising general jurisdiction over an out-of-state defendant requires continuous and systematic contacts with Texas. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Moreover, plaintiffs must show more than isolated, attenuated contacts with the state – the contacts must be "substantial." *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Here, there are no contacts substantial enough to give rise to general jurisdiction. AT&L has no railroad lines, operations, employees, or customers in Texas. The isolated job in Texas over 10 years ago and grain hoppers occasionally being transported by other railroad companies to Texas at the request of AT&L's customer are insufficient to establish general jurisdiction.

Numerous courts have found that general jurisdiction did not extend to defendants with substantially greater contacts with Texas than AT&L has. *See, e.g. Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) (finding no jurisdiction over a foreign corporation that purchased substantial goods and services from a Texas company, sent personnel to Texas for training, and sent its CEO to Texas to negotiate a contract); *D.H. Blair Investment Banking Corp. v. Reardon*, 97 S.W.3d 269, 278-79 (Tex. App.—Hous. [14th Dist.] 2002, pet dismd w.o.j.) (finding no jurisdiction over a foreign corporation that owned a 38.5% stake in a

5

corporation that had its principal office in Texas, signed a letter of intent to purchase several

Texas companies, and had negotiated by telephone and letter with at least five Texas

companies); *Michel v. Rocket Engineering Corp.*, 45 S.W.3d 658, 685 (Tex. App.—Ft. Worth

2001, no pet.) (finding <u>no</u> jurisdiction over a foreign corporation that attended trade shows in

Texas, advertised in the national media and on a web site accessible in Texas, and had

distribution agreements with two Texas dealers).

    *Conner v. Conticarriers and Terminals, Inc.*, 944 S.W.2d 405 (Tex. App.—[Hous. 14th

Dist.] 1997, no writ), is instructive because it also involved a grain transporter.  In *Conner*, the

court held that a grain transporter's contacts with Texas were insufficient to establish general

jurisdiction because there was not a "substantial connection" between the transporter and the

forum state.  *Id.* at 420.  There, the transporter (1) had a certificate to do business in Texas since

1963; (2) had maintained an agent for service of process in Texas; (3) had filed franchise tax

returns in Texas; (4) had sent barges to Texas ports since the early or mid 1980s; (5) had contacts

with Texas businesses; (6) earned yearly revenue from barges loaded or unloaded in Texas; (7)

had hired Texas employees; and (8) had litigated in a Texas court.  *Id.* at 417.

    The court found that these contacts were insufficient to establish a "substantial

connection" between the transporter and the State of Texas, stating:

> [A] "substantial connection" must result from the actions or
> conduct of the nonresident defendant purposefully directed toward
> the forum state.  Id.  The unilateral act of another party is not an
> appropriate consideration when determining whether a defendant
> has sufficient contacts with a forum state to justify the assertion of
> jurisdiction.  *Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1973.
> **Allowing barges to go to Texas when requested by a customer
> and being sued once for cargo damage in a Texas court is not
> "purposeful availment" of the state's benefits and protection of
> its laws deemed necessary to create a "substantial connection"
> between ContiCarriers and Texas.**

*Id.* at 418 (emphasis added).

In the face of "general jurisdiction" law, AT&L's contacts with Texas are wholly inadequate to establish personal jurisdiction in Texas. AT&L's contacts with Texas are substantially less than the transporter's contacts were in *Conner*. *Conner* also established that transporting grain hoppers to Texas pursuant to customer requests is inadequate to subject a foreign company to general jurisdiction in Texas. Furthermore, unlike AT&L, in *Conner*, the transporter itself shipped the barges to Texas.

### B.    Failure to State a Claim (Subject to AT&L's Special Appearance)

As previously stated, Plaintiffs improperly responded to AT&L's Motion to Dismiss for Failure to State a Claim (i.e. Plea in Abatement), rather than AT&L's Motion to Dismiss for Lack of Personal Jurisdiction (i.e. Special Appearance). Without waiving its jurisdictional challenge, AT&L respectfully requests that the Court rule on AT&L's Motion to Dismiss for Lack of Personal Jurisdiction before ruling on AT&L's Motion to Dismiss for Failure to State a Claim. Subject to its Special Appearance, AT&L replies to Plaintiffs' Response to AT&L's Motion to Dismiss for Failure to State a Claim as follows:

Plaintiffs' sole contention that they have stated a claim against AT&L comes from an excerpt in Section IV of their Petition entitled "FACTS" where it is alleged that *"Union Pacific Corporation, Union Pacific Railroad Company and/or AT&L Railroad negligently failed to inspect the railcar and otherwise failed to discover that Decedents were still locked inside the railcar." See* Plaintiff's Response, p. 3. In the sections of their Petition asserting specific causes of action, however, AT&L is never mentioned.

The above-quoted allegation is insufficient to assert a claim against AT&L for three reasons. First, there is no allegation that AT&L proximately caused any injury or damage to the

decedents, which is an essential element of any cause of action Plaintiffs might have against AT&L. In this regard, there is no allegation that the decedents were even still alive when they reached AT&L's line in Oklahoma. Second, there is no allegation that AT&L had a duty to inspect the contents of the grain hopper in question. Absent such a duty, Plaintiffs have failed to allege another essential element of any cause of action they might have against AT&L. Finally, Plaintiffs have failed to allege that AT&L injured the decedents willfully and wantonly, which would have been the applicable duty, if any, owed to the decedent trespassers.

Because AT&L's only connection to the grain hopper in question occurred in Oklahoma, any duty that might have been owed to the decedents by AT&L is governed by Oklahoma law. In Oklahoma, the only duty a landowner owes to trespassers is a duty to avoid injuring them willfully and wantonly. *Pickens v. Tulsa Metropolitan Ministry*, 1997 OK 152, 951 P2d 1079, 1083-84. Thus, even if Plaintiffs properly alleged the essential elements of a negligence claim, which they have not, they still have not alleged a claim against AT&L because it is clear from the allegations in Plaintiffs' Petition that the decedents were trespassers when they illegally boarded the grain hopper in question. Thus, without alleging that AT&L violated the applicable duty owed to trespassers, Plaintiffs have failed to state a claim against AT&L.

## IV.   **CONCLUSION**

For the foregoing reasons, AT&L respectfully requests that the Court grant its Motion to Dismiss for Lack of Personal Jurisdiction. Alternatively, AT&L respectfully requests that its Motion to Dismiss for Failure to State a Claim be granted but only after its Motion to Dismiss for Lack of Personal Jurisdiction has been ruled on by the Court.

Respectfully submitted,

Todd O. Lafferty
Texas Bar No. 00784431
Attorney at Law
P. O. Box 510
Watonga, OK 73772
(580) 623-7265
(580) 623-2343 FAX

ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas 78551-1429
(956) 428-7495
(956) 428-2954 FAX

By: _____
    Tom Lockhart
    Texas Bar No. 12473500
    Southern District Admissions No. 2257

ATTORNEYS FOR DEFENDANT
A T & L RAILROAD COMPANY, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded on this the 4th day of January, 2005, as follows:

Mr. Alberto T. Garcia III                                    **Via Regular Mail and**
**Law Offices of Alberto T. Garcia III, P.C.**    **CMRRR# 7003 2260 0000 0440 2923**
500 W. Pecan Blvd.
McAllen, TX 78501
Counsel for Plaintiffs

Mr. Robert E. Ammons                                    **Via Regular Mail and**
**THE AMMONS LAW FIRM, LLP**            **CMRRR# 7003 2260 0000 0440 2930**
3700 Montrose Boulevard
Houston, Texas 77006
Counsel for Plaintiffs

Mr. Mitchell C. Chaney                                    **Via Regular Mail**
**Rodriguez, Colvin & Chaney & Saenz LLP**
1201 East Van Buren
P. O. Box 2155
Brownsville, TX 78522
Counsel for Defendants, Union Pacific Railroad
Company and Union Pacific Corporation

Mr. Arnulfo Flores, Jr.                                    **Via Regular Mail**
Karnes City Correctional Center
810 Commerce St.
Karnes City, Texas 78118

Ms. Norma Arriaga Trevino                            **Via Regular Mail**
Liberty County Institution
IN# 04 133 938 H-1
P. O. Box 10069
Liberty, Texas 77575

_____
Tom Lockhart

10

FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUVENAL ESPARZA RICO AND | ) | |
| ARCELIA CONTRERAS ORTEGA, | ) | |
| INDIVIDUALLY AND AS THE SOLE | ) | |
| SURVIVING HEIRS OF THE ESTATE OF | ) | |
| THEIR SON, OMAR ESPARZA | ) | |
| CONTRERAS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION B-04-117 |
| | ) | |
| ARNULFO FLORES, JR., NORMA | ) | |
| ARRIAGA TREVINO a/k/a NORMA | ) | |
| BOCANEGRA, UNION PACIFIC | ) | |
| CORPORATION, UNION PACIFIC | ) | |
| RAILROAD COMPANY, A T & L | ) | |
| RAILROAD COMPANY, INC., AND | ) | |
| ARCHER DANIELS MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DANNY WILLIAMS

Danny E. Williams, of lawful age, being first duly sworn, deposes and says that the following facts are within his personal knowledge and are true and correct.

1.    My name is Danny Williams.  I am the General Manager for AT&L Railroad Company ("AT&L"), and I was its General Manager on all dates mentioned in this Affidavit.

2.    AT&L is an Oklahoma short-line railroad company that operates solely in the State of Oklahoma.  It operates 38 miles of track between Watonga, Oklahoma, and El Reno, Oklahoma, with a 10 mile branch that extends south to Bridgeport, Oklahoma.  No part of AT&L's line is located in Texas.  It owns three (3) locomotives, two (2) switch engines, and eight (8) grain hoppers.  Other grain hoppers used by AT&L are leased, obtained through vouchers, or obtained as excess storage cars from non-Texas companies.



EXHIBIT
A

3.    AT&L transports customer grain from Watonga to El Reno, where its line connects to Union Pacific's exchange line. Depending on where AT&L's customer has sold grain, Union Pacific or other railroad companies will then transport the grain hoppers to where the grain has been sold. AT&L's locomotives and switch engines never leave its Oklahoma line.

4.    Other than one job over ten years ago when AT&L's employees worked on a railroad spur for another company in the Texas Panhandle, AT&L's employees have never worked outside the State of Oklahoma.

5.    Other railroad companies occasionally transport grain hoppers owned or leased by AT&L to Texas if that is where AT&L's customer has sold grain. AT&L receives a small percentage of income from "carhire" when other railroad companies transport AT&L's grain hoppers on their lines. "Carhire" income, however, is never paid to AT&L by Texas companies.

6.    AT&L is not registered to do business in Texas; it is not required to maintain a registered agent in Texas; it does not maintain a registered agent in Texas; it does not advertise, have a telephone listing or mailing address in Texas; it does not solicit business or have any customers in Texas; it does not maintain an office or bank account in Texas; it does not enter into any contracts in Texas; it does not have any employees who reside in Texas; it is not obligated to pay any taxes in Texas; it does not receive any compensation from Texas; and it does not maintain a systematic and continuous presence in Texas.

7.    AT&L did not own, use or lease the grain hopper in question that was boarded by the decedents. On June 16, 2002, AT&L did not own or lease any grain hoppers that were in Texas or Mexico.

8.    In 2002, Union Pacific was allowed to store excess empty grain hoppers on AT&L's line at no charge. Any of the excess grain hoppers could be used by AT&L if needed, and any excess grain hoppers that were not used by AT&L were returned to Union Pacific upon request.

9.    On the afternoon of June 18, 2002, AT&L received a fax from Union Pacific that 100 excess grain hoppers were being moved to AT&L's line in El Reno to be held for storage. On June 19, 2002, AT&L moved the grain hoppers to an isolated portion of its line. Several of the grain hoppers, including the grain hopper in question, were never used by AT&L and were later returned to Union Pacific.

2

10.    Attached as Exhibits 1 and 2 to this affidavit and incorporated herein by reference are true and correct copies of the following documents:

a.    Subject to its Special Appearance, Defendant AT&L Railroad Company's Answers to Plaintiff Juvenal Esparza Rico's First Set of Written Interrogatories; and

b.    Subject to its Special Appearance, Defendant AT&L Railroad Company's Responses to Plaintiff Juvenal Esparza Rico's First Set of Requests for Admission.

Danny E. Williams

Subscribed and sworn to before me this 30ᵗʰ day of December, 2004.

Notary Public    #01011505

My Commission Expires:   7-19-2005

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUVENAL ESPARZA RICO AND ARCELIA CONTRERAS ORTEGA, INDIVIDUALLY AND AS THE SOLE SURVIVING HEIRS OF THE ESTATE OF THEIR SON, OMAR ESPARZA CONTRERAS, *et al.* | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| V. | ) ) | CIVIL ACTION B-04-117 |
| ARNULFO FLORES, JR., NORMA ARRIAGA TREVINO a/k/a NORMA BOCANEGRA, UNION PACIFIC CORPORATION, UNION PACIFIC RAILROAD COMPANY, A T & L RAILROAD COMPANY, INC., AND ARCHER DANIELS MIDLAND COMPANY, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SUBJECT TO ITS SPECIAL APPEARANCE,
DEFENDANT A T & L RAILROAD COMPANY'S
ANSWERS TO PLAINTIFF JUVENAL ESPARZA RICO'S
<u>FIRST SET OF WRITTEN INTERROGATORIES</u>**

Subject to its Special Appearance, Defendant AT&L Railroad Company submits the following answers to Plaintiff Juvenal Esparza Rico's First Set of Written Interrogatories.

```
┌─────────────────────┐
│      EXHIBIT        │
│                     │
│        1            │
│                     │
└─────────────────────┘
```

Respectfully submitted,

Todd O. Lafferty
Texas Bar No. 00784431
Attorney at Law
P. O. Box 510
Watonga, OK  73772
(580) 623-7265
(580) 623-2343 FAX

ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas  78551-1429
(956) 428-7495
(956) 428-2954 FAX

By
    Tom Lockhart
    Texas Bar No. 12473500
    Southern District Admissions No. 2257

ATTORNEYS FOR DEFENDANT
A T & L RAILROAD COMPANY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document

was this 3rd day of December, 2004, forwarded to counsel of record as follows:

Mr. Alberto T. Garcia III                                    **Via Fax No. 956-971-0991**
**Law Offices of Alberto T. Garcia III, P.C.**     **&CMRRR# 7002 2410 0002 3597 9540**
500 W. Pecan Blvd.
McAllen, TX 78501

Mr. Robert E. Ammons                                    **Via Fax No.713-523-4159**
**THE AMMONS LAW FIRM, LLP**                       **& Regular Mail**
3700 Montrose Boulevard
Houston, Texas 77006
Counsel for Plaintiffs

Mr. Mitchell C. Chaney                                   **Via Regular Mail**
**Rodriguez, Colvin & Chaney & Saenz LLP**
P. O. Box 2155
Brownsville, TX 78522
Counsel for Defendants, Union Pacific Railroad
Company and Union Pacific Corporation

Mr. Arnulfo Flores, Jr.                                    **Via Regular Mail**
Karnes City Correctional Center
810 Commerce St.
Karnes City, Texas 78118

Ms. Norma Arriaga Trevino                              **Via Regular Mail**
Liberty County Institution
IN# 04 133 938 H-1
P. O. Box 10069
Liberty, Texas 77575

_____
Tom Lockhart

3

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify by physical and mailing address all of Defendant's offices, leaseholds or real property in Texas.

**ANSWER:**   None.

### INTERROGATORY NO. 2:

State the number of employees, agents and representatives at each location or office identified in response to the prior Interrogatory.

**ANSWER:**   Not applicable.

### INTERROGATORY NO. 3:

IDENTIFY all of Defendant's customers and/or clients in Texas.

**ANSWER:**   None.

### INTERROGATORY NO. 4:

For each customer and/or client IDENTIFIED in response to the prior interrogatory, state the amount of revenues earned by Defendant from each such customer or client over the last 10 fiscal years.

**ANSWER:**   Not applicable.

4

## INTERROGATORY NO. 5:

Identify each account maintained with a financial institution by Defendant in Texas by stating the name and address of the financial institution and the types of accounts kept with each.

**ANSWER:** None.


## INTERROGATORY NO. 6:

Identify by style, cause number, court and year of filing each lawsuit in Texas in which Defendant was a party and state whether Defendant was a plaintiff or defendant.

**ANSWER:** None (other than this lawsuit).


## INTERROGATORY NO. 7:

Describe any revenue-generating work performed by Defendant in Texas over the last 10 years by stating the nature of the work, the person or entity for whom the work was performed, the year in which the work was performed, how much revenue was received for such work and the location where such work was performed.

**ANSWER:** None.


## INTERROGATORY NO. 8:

Describe any revenue-generating work performed by Defendant in Texas over the last 10 years by stating the nature of the work, the person or entity for whom the work was performed, the year in which the work was performed, how much revenue was received for such work and the location where such work was performed.

**ANSWER:** None.

**INTERROGATORY NO. 9:**

IDENTIFY each employee of Defendant that is a resident and/or citizen of Texas.

**ANSWER:** None.

**INTERROGATORY NO. 10:**

Identify each agreement or contract to which Defendant is a party where another party with an office or residence in Texas is also a party.

**ANSWER:** Defendant objects to this interrogatory because it is overly broad, unduly burdensome, unduly harassing, and seeks information that is irrelevant to any issues to be decided in this case in that it does not contain a time frame, and it requires Defendant to identify and research every agreement and contract entered into with companies that have an office in Texas even if the companies are foreign companies and the agreements or contracts have no connection to Texas. Such a requirement would necessarily require Defendant to spend countless hours researching all of its invoices and contracts to determine whether entities with whom it has contracted, such as Union Pacific, First Union, General Electric, telephone companies, etc., have offices in Texas even though the contracts were not entered into in Texas.

6

## VERIFICATION

STATE OF OKLAHOMA )
)
COUNTY OF BLAINE )

I, Danny Williams, Manager of AT&L Railroad Company, having been duly sworn, state that the above Answers to Interrogatories are true and correct to the best of my knowledge and belief.

AT&L RAILROAD COMPANY:

By: _____

Danny Williams
Its Manager

SUBSCRIBED and sworn to before me this 24th day of November, 2004.



Notary Public #01011505

My Commission Expires: 7-19-2005

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUVENAL ESPARZA RICO AND | ) | |
| ARCELIA CONTRERAS ORTEGA, | ) | |
| INDIVIDUALLY AND AS THE SOLE | ) | |
| SURVIVING HEIRS OF THE ESTATE OF | ) | |
| THEIR SON, OMAR ESPARZA | ) | |
| CONTRERAS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION B-04-117 |
| | ) | |
| ARNULFO FLORES, JR., NORMA | ) | |
| ARRIAGA TREVINO a/k/a NORMA | ) | |
| BOCANEGRA, UNION PACIFIC | ) | |
| CORPORATION, UNION PACIFIC | ) | |
| RAILROAD COMPANY, A T & L | ) | |
| RAILROAD COMPANY, INC., AND | ) | |
| ARCHER DANIELS MIDLAND | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**SUBJECT TO ITS SPECIAL APPEARANCE,
DEFENDANT A T & L RAILROAD COMPANY'S RESPONSES
TO PLAINTIFF JUVENAL ESPARZA RICO'S FIRST SET OF
REQUESTS FOR ADMISSION**

Subject to its Special Appearance, Defendant AT&L Railroad Company submits the following responses to Plaintiff Juvenal Esparza Rico's First Set of Request for Admissions.

EXHIBIT

2

Respectfully submitted,

Todd O. Lafferty
Texas Bar No. 00784431
Attorney at Law
P. O. Box 510
Watonga, OK  73772
(580) 623-7265
(580) 623-2343 FAX

ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas  78551-1429
(956) 428-7495
(956) 428-2954 FAX

By: _____
    Tom Lockhart
    Texas Bar No. 12473500
    Southern District Admissions No. 2257

ATTORNEYS FOR DEFENDANT
A T & L RAILROAD COMPANY, INC.

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was this 3rd day of December, 2004, forwarded to counsel of record as follows:

Mr. Alberto T. Garcia III                                   <u>**Via Fax No. 956-971-0991**</u>
**Law Offices of Alberto T. Garcia III, P.C.**   <u>**&CMRRR# 7002 2410 0002 3597 9540**</u>
500 W. Pecan Blvd.
McAllen, TX  78501

Mr. Robert E. Ammons                                     <u>**Via Fax No.713-523-4159**</u>
**THE AMMONS LAW FIRM, LLP**                          <u>**& Regular Mail**</u>
3700 Montrose Boulevard
Houston, Texas 77006
Counsel for Plaintiffs

Mr. Mitchell C. Chaney                                      **Via Regular Mail**
**Rodriguez, Colvin & Chaney & Saenz LLP**
P. O. Box 2155
Brownsville, TX 78522
Counsel for Defendants, Union Pacific Railroad
Company and Union Pacific Corporation

Mr. Arnulfo Flores, Jr.                                        **Via Regular Mail**
Karnes City Correctional Center
810 Commerce St.
Karnes City, Texas 78118

Ms. Norma Arriaga Trevino                               **Via Regular Mail**
Liberty County Institution
IN# 04 133 938 H-1
P. O. Box 10069
Liberty, Texas 77575

_____
Tom Lockhart

3

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**  Admit that A T & L Railroad Company, Inc. does business in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 2:**  Admit that A T & L Railroad Company, Inc. sells products or services in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 3:**  Admit that A T & L Railroad Company, Inc. generates revenues from Texas residents and Texas businesses.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 4:**  Admit that A T & L Railroad Company, Inc. has one or more mailing addresses in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 5:**  Admit that A T & L Railroad Company, Inc. has one or more offices in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 6:**  Admit that A T & L Railroad Company, Inc. has been a party to litigation in Texas.

**RESPONSE:**        Denied (other than this lawsuit).

**REQUEST FOR ADMISSION NO. 7:**  Admit that A T & L Railroad Company, Inc. has been a plaintiff in litigation in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 8:**  Admit that A T & L Railroad Company, Inc. holds a certificate to do business in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 9:** Admit that A T & L Railroad Company, Inc. is required to maintain a registered agent in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 10:** Admit that A T & L Railroad Company, Inc. is required to maintain a registered office in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 11:** Admit that A T & L Railroad Company, Inc. maintains a registered agent in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 12:** Admit that A T & L Railroad Company, Inc. maintains a registered office in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 13:** Admit that A T & L Railroad Company, Inc. maintains agents in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 14:** Admit that A T & L Railroad Company, Inc. maintains servants in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 15:** Admit that A T & L Railroad Company, Inc. maintains employees in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 16:** Admit that A T & L Railroad Company, Inc. has in the past maintained offices in Texas.

**RESPONSE:**        Denied.

**REQUEST FOR ADMISSION NO. 17:**  Admit that A T & L Railroad Company, Inc. has in the past maintained agents in Texas.

**RESPONSE:**          Denied.

**REQUEST FOR ADMISSION NO. 18:**  Admit that A T & L Railroad Company, Inc. has in the past maintained servants in Texas.

**RESPONSE:**          Denied.

**REQUEST FOR ADMISSION NO. 19:**  Admit that A T & L Railroad Company, Inc. has in the past maintained employees in Texas.

**RESPONSE:**          Denied.

**REQUEST FOR ADMISSION NO. 20:**  Admit that A T & L Railroad Company, Inc. derives income in the State of Texas.

**RESPONSE:**  Defendant denies that it conducts operations in Texas and denies that any funds are sent to it from Texas, but admits that it sometimes receives "carhire" revenue from non-Texas companies as a small percentage of its income when grain hoppers owned or leased by Defendant are transported by other rail carriers, some of which occurs in Texas at the request of Defendant's customer.  To the extent this request seeks any further admission, it is denied.

**REQUEST FOR ADMISSION NO. 21:**  Admit that A T & L Railroad Company, Inc. has in the past derived income in the State of Texas.

**RESPONSE:**  Defendant admits that on one occasion over ten years ago, it derived income in Texas by working on a railroad spur in the Texas Panhandle for a grain company.  Other than that one occasion, Defendant denies that it conducted operations in Texas and denies that any funds were sent to it from Texas, but admits that it sometimes received "carhire" revenue from non-Texas companies as a small percentage of its income when grain hoppers owned or leased by Defendant were transported by other rail carriers, some of which occurred in Texas at the request of Defendant's customer.  To the extent this request seeks any further admission, it is denied.

**REQUEST FOR ADMISSION NO. 22:**  Admit that A T & L Railroad Company, Inc. had operations in Texas in June 2002.

**RESPONSE:**          Denied.

**REQUEST FOR ADMISSION NO. 23:** Admit that A T & L Railroad Company, Inc. had employees performing business operations on its in Texas in June 2002.

**RESPONSE:**      Denied.

**REQUEST FOR ADMISSION NO. 24:** Admit that A T & L Railroad Company, Inc. had clients and/or customers in Texas in June 2002.

**RESPONSE:**      Denied.

**REQUEST FOR ADMISSION NO. 25:** Admit that A T & L Railroad Company, Inc. owned real property in Texas in June 2002.

**RESPONSE:**      Denied.

**REQUEST FOR ADMISSION NO. 26:** Admit that A T & L Railroad Company, Inc. owned personal property in Texas in June 2002.

**RESPONSE:** Defendant denies that it owned personal property that was maintained or kept in Texas, but admits that it owned five (5) grain hoppers that were transported by Union Pacific to Texas in late June 2002 at the request of Defendant's customer. Defendant denies that these grain hoppers had any connection to the incident in question, denies that it owned any grain hoppers that were being transported in Texas or Mexico on June 16, 2002, and denies that its railroad or crew operate in any state except Oklahoma. To the extent this request seeks any further admission, it is denied.

**REQUEST FOR ADMISSION NO. 27:** Admit that A T & L Railroad Company, Inc. leased real property in Texas in June 2002.

**RESPONSE:**      Denied.

**REQUEST FOR ADMISSION NO. 28:** Admit that A T & L Railroad Company, Inc. leased personal property in Texas in June 2002.

**RESPONSE:** Defendant denies that it leased personal property in Texas in June 2002, but admits that it leased grain hoppers that were transported by Union Pacific to Texas in late June 2002 at the request of Defendant's customer. Defendant denies that these grain hoppers had any connection to the incident in question, denies that it leased any grain hoppers that were being transported in Texas or Mexico on June 16, 2002, and denies that its railroad or crew operate in any state except Oklahoma. To the extent this request seeks any further admission, it is denied.

**REQUEST FOR ADMISSION NO. 29:** Admit that A T & L Railroad Company, Inc. earned revenues in Texas in June 2002.

**RESPONSE:** Defendant denies that it conducted operations in Texas and denies that any funds were sent to it from Texas, but admits that it received "carhire" revenue from non-Texas companies as a small percentage of its income when grain hoppers owned or leased by Defendant were transported by another rail carrier, some of which occured in Texas at the request of Defendant's customer. To the extent this request seeks any further admission, it is denied.

**REQUEST FOR ADMISSION NO. 30:** Admit that A T & L Railroad Company, Inc. earned revenues in Texas prior to June 2002.

**RESPONSE:** Defendant admits that on one occasion over ten years ago, it earned revenues in Texas by working on a railroad spur in the Texas Panhandle for a grain company. Other than that one occasion, Defendant denies that it conducted operations in Texas and denies that any funds were sent to it from Texas, but admits that it sometimes received "carhire" revenue from non-Texas companies as a small percentage of its income when grain hoppers owned or leased by Defendant were transported by other rail carriers, some of which occurred in Texas at the request of Defendant's customer. To the extent this request seeks any further admission, it is denied.

8