# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| JUVENAL ESPARZA RICO AND | § | |
| ACRELIA CONTRERAS ORTEGA, | § | |
| INDIVIDUALLY AND AS THE SOLE | § | |
| SURVIVING HEIRS OF THE ESTATE OF | § | |
| THEIR SON, OMAR ESPARZA CONTRERAS; | § | |
| MARIA INES MUNOZ BRIONES, | § | |
| INDIVIDUALLY, AS NEXT FRIEND OF HER | § | |
| MINOR CHILDREN, INGRI MARVELLA | § | |
| REYES MUNOZ AND CLARISA YAJAIRA | § | |
| REYES MUNOZ, AND AS A SURVIVING HEIR | § | |
| OF THE ESTATE OF HER HUSBAND, JUAN | § | |
| ENRIQUE REYES MEZA; JUAN ANTONIO | § | |
| REYES AGUILAR, INDIVIDUALLY; IRENE | § | |
| GODINEZ CARDONA, INDIVIDUALLY, AS | § | |
| NEXT FRIEND OF HER MINOR SON, | § | |
| ROBERTO ESPARZA GODINEZ, AND AS A | § | |
| SURVIVING HEIR OF THE ESTATE OF HER | § | CIV. NO. B-04-117 |
| HUSBAND, ROBERTO ESPARZA RICO; | § | |
| CLEMENTINA SANCHEZ, INDIVIDUALLY; | § | |
| EVA CRISTINA SANCHEZ SIERRA, | § | |
| INDIVIDUALLY, AS NEXT FRIEND OF HER | § | |
| MINOR CHILDREN, KARLA LIZETH | § | |
| AMADOR SANCHEZ, NANCY MARISOL | § | |
| AMADOR SANCHEZ, MARVIN ALEXANDER | § | |
| AMADOR SANCHEZ AND FRANCIS | § | |
| ESTEFANIA AMADOR SANCHEZ, AND AS A | § | |
| SURVIVING HEIR OF THE ESTATE OF HER | § | |
| HUSBAND, PEDRO AMADOR LOPEZ; | § | |
| MANUEL DE JESUS DOBLADO AVILA, | § | |
| INDIVIDUALLY; DELMIRA SOLER | § | |
| DOBLADO, INDIVIDUALLY, AS NEXT | § | |
| OF HER MINOR CHILDREN NELIS AVILA | § | |
| SOLER, EVER AVILA SOLER, AND ELMER | § | |
| ROBERTO AVILA SOLER, AND AS A | § | |
| SURVIVING HEIR OF THE ESTATE OF HER | § | |
| HUSBAND ISIDRO AVILA BUESO; LUDIS | § | |
| YESENIA AVILA SOLER, INDIVIDUALLY; | § | |
| OBDULIA FERRUFINO BURGOS; | § | |
| INDIVIDUALLY; AS NEXT FRIEND OF HER | § | |
| MINOR GRANDCHILDREN JONATHAN JOEL | § | |
| GUTIERREZ FERRUFINO, LELY AMPARO | § | |

CANALES FERRUFINO, IVY ROXANA                          §
CANALES FERRUFINO, OSCAR ALFREDO                       §
FERRUFINO, JAIRO MAURICIO FERRUFINO,                   §
KATHERINE NINOSKA CANALES                              §
FERRUFINO, JENNIFER GUADALUPE                          §
FERRUFINO, AND ELMER NOE FERRUFINO,                    §
AND AS A SURVIVING HEIR OF THE                         §
ESTATES OF HER DAUGHTERS, ROSIBEL                      §
FERRUFINO AND LELY ELIZABETH                           §
FERRUFINO, AND HER GRANDDAUGHTER                       §
LESLY ESMERALDA FERRUFINO; ROSA                        §
DELIA HERNANDEZ DE ARDON,                              §
INDIVIDUALLY, AS NEXT FRIEND OF HER                    §
MINOR CHILDREN HAROLD MAURICIO                         §
ARDON HERNANDEZ, MARELYN IVETTE                        §
ARDON HERNANDEZ, AND AS A                              §
SURVIVING HEIR OF THE ESTATE OF HER                    §
HUSBAND, DOMINGO ARDON SIBRIAN;                        §
SIXTO ACEVEDO AND MARIA EMILIA                         §
PEREZ, INDIVIDUALLY AND AS THE SOLE                    §
SURVIVING HEIRS OF THE ESTATE OF                       §
THEIR SON, BRYON ADNER ACEVEDO                         §
PEREZ,                                                 §
      Plaintiffs,                                   §
                                                       §
vs.                                                    §
                                                       §
ARNULFO FLORES, JR., NORMA ARRIAGA                     §
TREVINO a/k/a NORMA BOCANEGRA,                         §
UNION PACIFIC CORPORATION, UNION                       §
PACIFIC RAILROAD COMPANY, AT&L                         §
RAILROAD COMPANY, INC. AND ARCHER                      §
DANIELS MIDLAND COMPANY,                               §
      Defendants.                                   §

## MEMORANDUM OPINION AND ORDER

This case arises out of the tragic deaths of ten undocumented aliens who attempted to pass

undetected through the Border Patrol checkpoint at Sarita, Texas, by stowing away in a railroad car.

Before the Court is a Motion to Remand (Docket No. 4) filed by Plaintiffs who are the surviving

family members of the decedents.   The Court, having considered the legal memoranda and

2

applicable authorities, **DENIES** Plaintiffs' remand motion for the reasons elaborated below.

## I.    INTRODUCTION

This case presents the very tragic but all too frequent circumstance of undocumented aliens being injured or killed either in their attempt to enter the United States illegally or in their attempt to avoid detection once in the country illegally.  It is a case in which the decedents made a bargain with a smuggling organization that accidentally, negligently, or perhaps even purposefully locked them in a grain hopper train car in South Texas and failed to release them once past the Sarita Border Patrol checkpoint.  Thus, the conduct of the aliens, the conduct of their co-conspirator smugglers, and possibly the conduct of others ultimately resulted in the death of ten individuals, all of whom had left family and friends in other parts of the world to travel to the United States presumably seeking better opportunities.

On the one hand, when one views this case in this fashion, equity cries out for the courts to offer their heirs some form of relief.  On the other hand, the argument can be made that the degree of tragedy surrounding these circumstances do not make a difference and what this Court is truly facing is the death of ten individuals who died breaking the laws of the United States whose heirs are now seeking compensation for injuries resulting from the decedents' own illegal activities.  One can certainly argue without appearing too unsympathetic that a person cannot and should not be able to profit from his or her own illegal activities.[1]

The complex nature of the problem presented in this case is highlighted by the pleadings of the parties.  Union Pacific, a defendant, in order to distinguish this case from that of *Smallwood v.*

---

[1]    This Court recognizes that a person who has died in a tragedy is not seeking to "profit" from it; however, the Court uses this term in the historical sense as it has been used by most courts for the last two centuries who have written on this topic.

*Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), is in the unlikely position of arguing in favor of there being a cause of action against itself.  Conversely, the plaintiffs have argued in favor of this case being controlled by section 93.001(a)(1) of the Texas Civil Practice and Remedies Code, which, if applicable, would totally bar the plaintiffs from recovering from any of the five defendants under any cause of action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case as they pertain to the matter at hand, and insofar as they are known, appear to be undisputed.  In June 2002, Flores, who was at that time a conductor for Union Pacific, placed ten illegal aliens into a Union Pacific grain hopper railroad car in order to illegally transport them past the Sarita checkpoint.[2]  Four months later, in October, the aliens' remains were found in the railroad car in Denison, Iowa.  The medical examiner determined the cause of death for all ten individuals to be lack of oxygen, extreme overheating, and dehydration.  Flores was arrested and pled guilty to conspiring to transport illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(I).  Neither party provided the Court with the status of Trevino; however, this Court takes judicial notice of the fact that she pled guilty to a similar § 1324 violation.  Her apparent role in this illegal scheme was to operate a stash house and subsequently to deliver the illegal aliens to the railroad's property so that Flores could smuggle them on board the train.

On June 3, 2004, Plaintiffs brought a wrongful death suit in the 138th Judicial District Court

---

[2]    Omar Esparza Contreras, Juan Enrique Reyes Meza, and Roberto Esparza Rico were citizens of the Republic of Mexico; Pedro Amador Lopez, Isidro Avila Bueso, Rosibel Ferrufino, Lely Elizabeth Ferrufino, and Lesly Esmeralda Ferrufino were citizens of the Republic of Honduras; and Domingo Ardon Sibrian and Byron Adner Acevedo Perez were citizens of the Republic of El Salvador.  All perished in the incident made the basis of this case and they will be collectively referred to as "decedents."

of Cameron County, Texas, alleging damages as a result of the deaths of the ten undocumented aliens.[3]  Plaintiffs named as defendants Union Pacific Corporation, Union Pacific Railroad Company, Arnulfo Flores, Jr. ("Flores"), Norma Arriaga Trevino ("Trevino"), AT&L Railroad Company, Inc. ("AT&L"), and Archer Daniels Midland Company ("Archer Daniels").[4]

Plaintiffs' First Amended Original Petition brings claims against Flores and Trevino involving negligence and civil conspiracy.  They maintain that "civil conspiracy is derivative from the acts of negligence committed by Defendants Flores and Trevino and/or their co-conspirators…."[5] (First Am. Orig. Pet., at 15.)  Plaintiffs allege that Flores and Trevino's negligence arises out of their acts and omissions committed while smuggling the aliens.  Plaintiffs further allege that Union

---

[3]     Juvenal Esparza Rico and Acrelia Contreras Ortega are citizens of Florida; Maria Ines Munoz Briones, Juan Antonio Reyes Aguilar, and Irene Godinez Cardona are citizens of the Republic of Mexico; Eva Cristina Sanchez Sierra, Clementina Sanchez, Delmira Soler Doblado, Ludis Yesenia Avila Soler, Manuel De Jesus Doblado Avila, and Obdulia Ferrufino Burgos are citizens of the Republic of Honduras; and Rosa Delia Hernandez de Ardon, Sixto Acevedo, and Maria Emilia Perez are citizens of the Republic of El Salvador.

For ease of reference, the various Plaintiffs, who have sued individually as wrongful death beneficiaries for their spouses and/or their child/children, as next friend of their minor child/children and grandchild/grandchildren, and/or as proper heirs to maintain a survival action, will hereinafter collectively be referred to as "Plaintiffs."

[4]     Union Pacific Railroad Company is a citizen of Delaware and Nebraska.  Union Pacific Corporation is a citizen of Utah and Nebraska.  AT&L is a citizen of Oklahoma.  Archer Daniels is a citizen of Delaware and Illinois.  Flores and Trevino are citizens of Texas.  Union Pacific Corporation and Union Pacific Railroad Company will hereinafter collectively be referred to as "Union Pacific."  Due to the fact that this Court dismisses AT&L on jurisdictional grounds, it will not be mentioned further.  Similarly, except where needed, Archer Daniels will not be individually discussed as the plaintiffs have not pleaded any causes of action against it.  Nevertheless, for purposes of determining the propriety of diversity jurisdiction, both will be subsumed under the umbrella of "Union Pacific" or the more generic term of "diverse defendants."

[5]     This Court does not opine as to whether one can actually conspire to be negligent as it was not an issue briefed by the parties and is not germane to this decision.

Pacific is vicariously liable for Flores' alleged negligent acts and also directly liable for Flores' acts pursuant to section 317 of the RESTATEMENT (SECOND) OF TORTS. Although Plaintiffs have also named as Defendants AT&L and Archer Daniels, their petition does not plead any causes of action against them.

On July 9, 2004, Union Pacific removed this case to federal court on the basis of diversity jurisdiction claiming that Flores and Trevino were improperly joined. Specifically, Union Pacific avers that Texas' "unlawful acts" rule bars Plaintiffs' claims against Flores and Trevino.[6] The controversy in this matter does not center around the question of complete diversity of citizenship of the parties. Rather, it is a controversy over fraudulent or improper joinder because the Texas citizenship of Flores and Trevino would otherwise prohibit the removal of a diversity action in which any properly joined and served defendant "is a citizen of the State in which such action is brought." 28 U.S.C.A. § 1441(b).

Plaintiffs filed a motion to remand on July 19, 2004, contending that Flores and Trevino are properly joined and that remand is warranted on three grounds. First, Plaintiffs maintain that removal was defective because all of the defendants did not consent in a timely manner, i.e., Flores and Trevino failed to consent to removal within thirty days of June 10, 2004, the date upon which the first defendant, Archer Daniels, was served. Second, Plaintiffs contend that the unlawful acts rule is inapplicable in wrongful death cases. Plaintiffs argue that section 93.001 of the Texas Civil Practice and Remedies Code governs wrongful death cases, not the unlawful acts rule. Finally, Plaintiffs maintain that, even if the unlawful acts rule is applicable, it still does not bar recovery

---

[6]     The unlawful acts rule is that no cause of action may be premised upon an admittedly unlawful act of the party asserting it.

because Plaintiffs do not have to prove any illegal act on behalf of the decedents to prove the elements of their negligence cause of action against Flores and Trevino. Union Pacific filed a response on August 9, 2004, arguing that removal was timely and that the unlawful acts rule precludes recovery against Flores and Trevino. Plaintiffs filed a reply on August 10, 2004.

Plaintiffs filed their motion to remand and Defendants filed their responses thereto on September 10, 2004, prior to the issuance of *Smallwood*. *Smallwood* signifies an important change in controlling law for it counsels that a district court must remand a case wherein the defendant asserts a defense in support of a finding of improper joinder that is dispositive of all claims in the action.[7] In such cases, the defendant is essentially alleging that the plaintiff has filed a lawsuit without merit. Accordingly, the district court must remand the case to state court since federal jurisdiction has not been established. *Smallwood*, 385 F.3d at 574.

In the wake of *Smallwood*, the Court held a hearing on November 22, 2004, to afford the parties an opportunity to present oral argument on the impact of *Smallwood* on the present matter and the issues arising therefrom. The Court also invited the parties to submit supplemental briefs. Both parties took the Court up on its invitation but addressed only whether Defendants were required to plead the defense of the unlawful acts rule.

---

[7] It should be noted that in *Rainwater v. Lamar Life Insurance Co.*, 391 F.3d 636 (5th Cir. 2004), the United States Court of Appeals for the Fifth Circuit was presented with the issue of whether *Smallwood* applies to those cases in which the asserted defense in support of improper joinder does not apply to all claims against the out-of-state defendants. The defendants contended that the plaintiffs advanced state law claims unique to the out-of-state defendants. *Id.* at 638. Though the Fifth Circuit could not determine *Smallwood*'s applicability because of the way the plaintiffs had drafted their complaint, the panel did observe that "the inclusion of such claims against [the out-of-state defendants] would mean that the statute of limitations that disposes of all claims against the in-state defendants would not constitute a 'common defense.'" *Id.* That in turn would preclude remand under the rule espoused in *Smallwood*. *Id.*

III.    **DISCUSSION**

The overarching question before the Court is whether Flores and Trevino were improperly joined.[8] If so, their Texas citizenship must be disregarded for purposes of removal thereby rendering removal proper; if not, this case must be remanded back to state court. *See* 28 U.S.C.A. § 1441(b). However, in order to resolve this issue, the following sub-issues must first be addressed: (1) whether Union Pacific's notice of removal was defective because neither Flores nor Trevino consented to removal; (2) whether the defendants were required to plead the affirmative defense of the unlawful acts rule; (3) whether section 93.001 of the Texas Civil Practice and Remedies Code governs this action; (4) whether the *in pari delicto* or "unlawful acts" rules are applicable to this matter; and (5) whether either rule bars Plaintiffs' recovery from all Defendants. Each issue will be addressed in turn below.

A.    **The Law of Improper Joinder**

Pursuant to 28 U.S.C. § 1441(a), an action filed in state court may be removed to federal court if the action is one over which a federal court has subject matter jurisdiction. Where federal court jurisdiction is based upon diversity of citizenship, removal of an action from state to federal court is disallowed when one of the parties in interest, properly joined and served as a defendant, is a citizen of the state in which the action is filed. Once a case has been removed from state court and a motion to remand is filed, the removing party bears the burden of proving that jurisdiction is proper in federal court. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). The

---

[8]    In *Smallwood*, the Fifth Circuit departed from the use of the term "fraudulent joinder" noting that there is no substantive difference between that term and "improper joinder." *Smallwood*, 385 F.3d at 571 n.1. Therefore, this Court will henceforth use the term "improper joinder" except when citing a quotation from either a pre-*Smallwood* opinion or from a party's pleading in the instant matter.

8

burden to establish improper joinder is high and must be demonstrated by clear and convincing evidence. *Id.*; *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). In *Smallwood*, the Fifth Circuit emphasized that the purpose of the improper joinder inquiry is to determine the appropriateness of joinder, not the merits of the case. *Smallwood*, 385 F.3d at 574.

There are two ways to establish improper joinder. The removing party must "show either that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *Jernigan*, 989 F.2d at 815 (citing *B., Inc.*, 663 F.2d at 549). In the instant matter, the first way to establish improper joinder is before the Court. The appropriate test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. "[T]he ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (quoting 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 107.14[2][c][iv][A]) (emphasis added in original). The possibility that state law may impose liability, however, must be reasonable, not merely theoretical. *Id.*

A district court may resolve improper joinder claims in two ways. The first way is to conduct an analysis similar to that conducted under Rule 12(b)(6) of the Federal Rules of Civil Procedure looking initially at the allegations of the complaint to determine whether the plaintiff has alleged a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. The second way applies to those cases in which a plaintiff has stated a claim but has misstated or omitted

discrete facts that would determine the propriety of joinder. *Id.* In these cases, the district court may in its discretion pierce the pleadings and conduct a summary inquiry. *Id.* The Fifth Circuit counseled "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant and attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id.* at 574–75. Furthermore, district courts should resolve all disputed questions of fact and substantive law in favor of the plaintiff. *Jackson v. Pneumatic Prod. Corp.*, 2001 WL 238214, at *1 (E.D.La. 2001).

### B.    Plaintiffs Had Fair Notice that the Unlawful Acts Rule was Raised as a Defense

Defendants failed to plead the defense of the unlawful acts rule in their answer. Plaintiffs maintain that Defendants' failure to do so constitutes a waiver of that defense. The Federal Rules of Civil Procedure control this Court's analysis.[9] Rule 8 of the Federal Rules of Civil Procedure has generally been interpreted as allowing a technical failure as long as "the matter is raised in the trial court in a manner that does not result in unfair surprise.…" *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983). "Thus, a defendant does not waive an affirmative defense if he 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to

---

[9]    Even if state law controlled, Defendants were not required to plead the unlawful acts rule as a defense. Under Texas Rule of Civil Procedure 94, a party who intends to rely on an affirmative defense must plead that defense. A failure to plead such a defense will result in waiver. *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991). However, an exception to the waiver rule arises if the defense is apparent from the face of the pleadings. *Id.* at 790; *see also Shoemake v. Fogel, Ltd*, 826 S.W.2d 933, 937 (Tex. 1992). Although no Texas court has addressed whether the exception to the waiver rule extends to the unlawful acts rule, this Court would find the exception applicable to the present case. The defense is apparent from the face of the pleadings, especially since Plaintiffs' own pleadings set up the affirmative defense of the unlawful acts rule for Defendants.

respond.'" *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001) (quoting *Allied Chem. Corp.*, 695 F.2d at 856). In the instant case, the issue was squarely raised by the Removal Notice and responded to in the Motion to Remand. It was the subject of briefing followed by a lengthy hearing followed by more briefing. It cannot be said that there was no notice or that any party was surprised by this issue.[10] This ground for remand is denied.

### C.    Union Pacific's Notice of Removal Was Timely Filed

Plaintiffs maintain that under 28 U.S.C. § 1446(b), Union Pacific's removal was invalid because it lacked the consent of Flores and Trevino. Section 1446(b) provides in pertinent part that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...."

While it is true that the Fifth Circuit has construed § 1446(b) to require that all defendants that have been served join in or consent to the removal within thirty days of service of the first defendant, *see Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir. 1992); *Getty Oil Corp. v. Ins. Co. of North America*, 841 F.2d 1254, 1262–63 (5th Cir. 1988), the Fifth Circuit has also held that consent need not be obtained from a co-defendant that the removing party contends is improperly joined. *Jernigan*, 989 F.2d at 815 (noting that the application of the consent requirement in cases involving the alleged improper joinder of a party would be "nonsensical, as removal of those cases is based on the contention that no other proper defendant exists"). No explanation of the absence of consent of the allegedly improperly joined co-defendant is required. *Id.*

---

[10]    The Court should note that in this opinion it will consider factors favorable to the plaintiffs which the plaintiffs have not directly pleaded in their current petition. But, again, these matters were fairly raised and were the subject of this Court's prior hearing.

In the instant action, Archer Daniels was the first defendant to be served, which was on June 10, 2004. Union Pacific filed its removal notice on July 9, 2004, within the thirty-day period prescribed by § 1446(b) and all Defendants who are not alleged to be improperly joined consented thereto. Accordingly, Union Pacific timely filed its notice of removal.

## IV.    SECTION 93.001 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE DOES NOT GOVERN THIS CASE

Plaintiffs maintain that in civil actions for wrongful death the effect of a plaintiff's illegal act on his recovery is governed solely by section 93.001(a)(1) of the Texas Civil Practice and Remedies Code, not the unlawful acts rule. According to Plaintiffs, this statute preempts the unlawful acts rule in such cases. The plaintiffs give the Court absolutely no authority supporting this proposition. Moreover, while advocating the applicability of the statute, Plaintiffs simultaneously contend that section 93.001(a)(1) does not bar their recovery because the decedents were never charged with and convicted of a felony.

Section 93.001(a)(1) provides: "It is an affirmative defense to a civil action for damages for personal injury or death that the plaintiff, at the time the cause of action arose, was committing a felony, *for which the plaintiff has been finally convicted*, that was the sole cause of the damages sustained by the plaintiff." (Emphasis added.) Section 93.001(c) further states that "[i]n an action to which this section applies, this section shall prevail over any other law."[11]

The very language of section 93.001(a)(1) proves the fallacy of Plaintiffs' argument. This provision controls when a plaintiff has been finally convicted of a felony offense. It is that

---

[11]    It is somewhat ironic, as mentioned above, that the ultimate logical result of Plaintiffs' argument regarding the applicability of section 93.001 is that they are barred from recovering from all the defendants. To avoid this logical result, in effect, the plaintiffs have argued that section 93.001 applies, but it is inapplicable herein.

conviction that serves as an affirmative defense to a civil action for damages for the personal injury or death of a plaintiff. Section 93.001 does not govern the instant matter because the decedents, for obvious reasons, were never charged with or convicted of a felony. This Court will not disregard the plain wording of section 93.001(a)(1) because to do so would do violence to the plain language of the statute. Nor does any provision of the statute suggest that it preempts the common law in situations where it does not apply. Statutory construction must begin with the language employed by the Texas Legislature and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose underlying it. Where a statute's language is plain, as it is in this case, the sole function of this Court is to enforce it according to its terms. Accordingly, section 93.001(a)(1) is not controlling and does not govern this matter.

## V.    TEXAS LAW PROHIBITS RECOVERY AGAINST FLORES AND TREVINO

For almost 160 years, Texas law has consistently disallowed parties from using the courts to recover damages from illegal transactions. This is true whether those claims are based in contract or in tort and it is true whether the claims have been lodged against someone involved in the illegal transaction or against a party unconnected to the illegal contract. The cases generally reach the same result—one line of cases seems to involve situations where all parties to the lawsuit are somehow involved in the illegal transaction while the second line of cases involves lawsuits by involved Plaintiffs against uninvolved defendants. The first line of cases sets out the *in pari delicto* rule while the second line employs the "illegal acts" doctrine. Seemingly, the *in pari delicto* cases relate primarily to claims against co-conspirators and appear to be primarily contractual while the "illegal acts" cases involve claims against third parties to the illegal act and are both contractual and tortious

in nature.[12]   However, the distinction between these two lines is quite blurred.  In fact, to even

describe them as two lines of cases may be making a distinction where none was intended and none

actually exists.  Regardless of whether one can discern a distinction between the two, and regardless

of whether a distinction was ever intended, the end result is the same.  The plaintiffs cannot recover

against Flores and Trevino.[13]

### A.    Claims Against the Co-Conspirators: The *In Pari Delicto* Rule

As noted above, the two questions that substantively answer the issue of whether the removal

is proper are: (1) have the plaintiffs pleaded a salient cause of action against Flores and Trevino and

(2) if the plaintiffs have not, does the defense, which makes the claim against Flores and Trevino

impossible, also apply to the removing defendants.  If the answer to the first question is in the

affirmative, then the case must be remanded to state court as there is no improper joinder.  If the

answer to the first question is "no," then the Court moves to the second issue.  If the answer to the

second question is "yes," the case must still be remanded under the *Smallwood* doctrine.  If the

answer, however, is "no," then this Court has jurisdiction.  Having framed the inquiry, the Court

now turns to the first question.

The decedents, Flores, and Trevino were, according to Plaintiffs' pleadings, joined in a

conspiracy to violate this country's immigration laws.  Plaintiffs pled that Defendant Flores and his

---

[12]    In the instant case, we have shades of both contract and tort.  The negligence claim is obviously tortious while the conspiracy claim must be based upon an agreement or contract.

[13]    The Court has divided its review of the pertinent case law into these two distinct discussions to forestall any argument that this case is in any manner factually distinguishable due to any difference in the illegal involvement of the defendants or any difference in the language used by the courts.

cohorts helped the decedents cross into the United States, hid them, and then loaded them into a

Union Pacific grain hopper.  (First Am. Orig. Pet., at 12).  Plaintiffs went into further detail in

Section IV of Plaintiff's First Amended Original Petition:

> *Defendants Flores and Trevino were members of a conspiracy to transport undocumented immigrants from Mexico to the United States*.  Defendant Flores was employed as a conductor by Defendant Union Pacific Railroad Company and/or Union Pacific Corporation.  Defendant Flores used information and his general authority granted to him by Union Pacific Railroad Company and/or Union Pacific Corporation to participate in the conspiracy.

> On or about June 16, 2002, in Harlingen, Cameron County, Texas Defendants Flores and Trevino and their co-conspirators loaded OMAR ESPARZA CONTRERAS, JUAN ENRIQUE REYES MEZA, ROBERT ESPARZA RICO, PEDRO AMADOR LOPEZ, ISIDRO AVLIA BUESO, ROSIBEL FERRUFINO, LELY ELIZABETH FERRUFINO, LESLY ESMERALDA FERRUFINO, DOMINGO ARDON SIBRIAN and BYRON ADNER ACEVEDO PEREZ (hereinafter, the "Decedents") onto a grain hopper railroad car and locked the entry door from the outside.  Defendant Flores accepted a monetary fee from the Decedents in return for Defendant Flores' allowing Decedents to ride on the Union Pacific grain hopper.  At all times, the subject railcar was owned, maintained, inspected and/or otherwise under the control of Defendants Union Pacific Railroad Company and Union Pacific Corporation.

> *Defendant Flores, Trevino and their co-conspirators promised Decedents that they would give them safe passage on the Union Pacific railcar to a location just beyond the Sarita, Texas Border Patrol checkpoint*.  They also assured Decedents that they would be let out of the railcar at some location beyond the Sarita, Texas Border Patrol checkpoint.  Defendants Flores and Tevino negligently failed to let Decedents get out of the railcar after the train got past the Sarita, Texas Border Patrol checkpoint.  Decedents were never let out of the Union Pacific railcar and they were unable to free themselves from the railcar.  As a result, Decedents died a long, excruciating death because of lack of oxygen, dehydration and extreme overheating.

> The railcar carrying Decedents traveled north through Texas and eventually stopped at a Union Pacific and/or AT & L Railroad location in Oklahoma.  The railcar remained in the Union Pacific and/or AT & L Railroad location in Oklahoma with Decedents still locked inside.  While at this location, Defendants Union Pacific Corporation, Union Pacific Railroad Company and/or AT & L Railroad negligently failed to inspect the railcar and otherwise failed to discover that Decedents were still locked inside the railcar.

*Id.* (emphasis added).  The very essence of their claim of negligence and civil conspiracy against

Flores and Trevino is rooted in the agreement between the decedents, Flores, and Trevino to violate

the immigration laws of the United States.  It is the basis of the relationship between the decedents,

Flores, and Trevino.  It gives rise to any of their quasi-contractual or conspiracy claims as well as

to their tort claims.  Plaintiffs cannot recover against Flores and Trevino under any of their theories

without proving their underlying agreement to violate the laws of this country.

Since its inception, Texas has held that a party to the illegal contract cannot enforce that

contract.  Stated differently, one may not sue another co-conspirator for his failure to fulfill an illegal

commitment.  The courts have held consistently that the parties to such agreements will be left as

they were prior to coming to court.  The Supreme Court of Texas in one of the earliest cases

addressing this issue explained as follows:

> It is believed to be a rule of universal application that to undertake to do an act
> forbidden by the law of the place where it is to be done is an invalid agreement, and
> imposes no legal obligation.  There is a moral obligation in the absence of a penalty
> to obey the law.  Courts are organized under the law and are required to administer
> it, and it would seem to be an anomaly were they so far to sanction its violation as
> to give effect to a contract forbidden by the very law that they are bound to respect
> and enforce.

*Hunt's Heirs v. Robinson's Heirs*, 1 Tex. 748, 1847 WL 3502, at *7 (1847).

Throughout history, the law in Texas has continued to hold that illegal contracts or contracts

to perform illegal acts will not be enforced.  In 1885, the Supreme Court of Texas reiterated the rule.

> The law implies a promise to pay when one person, at the request of another,
> discharges for him to a third person a legal obligation, or performs for him some
> lawful service; but when the request is to do some act illegal in its nature, and out of
> the act itself springs the claim of one of the actors, then no promise to pay can arise
> in favor of the actor from his compliance with the request, for in such case there is
> no valid consideration to support a promise express or implied.

*Seeligson v. Lewis & Williams*, 65 Tex. 215, 1885 WL 7300, at *7 (1885).  Again, almost thirty

16

years later, the court repeated the rule.

> A contract, which by its terms exacts a violation of the law, will not subject the defaulting party to damages. Nor are damages recoverable for the nonperformance of a contract which, while legal, in its terms may not, from the circumstances of the case be, performed without violating the law.

*Raywood Rice Canal & Milling Co. v. Erp*, 105 Tex. 161, 166, 146 S.W. 155, 158 (1912).

In the post-World War II era, the Supreme Court of Texas has ruled consistent with these earlier courts. In *Kokernot v. Gilstrap*, 143 Tex. 595, 187 S.W.2d 368 (1945), the court held:

> the transaction evidenced by the contract and the deed under which respondents claim title falls within that class of contracts which are held to be illegal and void and upon which a plaintiff cannot recover when it is necessary for him to prove his own illegal acts as a part of his cause of action. *The law leaves the parties to such contracts where it finds them.*

*Id.* at 600, 187 S.W.2d at 370 (emphasis added). In *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146 (1947), the court emphasized the same concept as being a matter of public interest: "[t]he general rule that denies relief to a party to an illegal contract is expressed in the maxim, *In pari delicto potior est conditio defendantis*….The rule is adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public." *Id.* at 477, 199 S.W.2d at 151 (emphasis added). Not unexpectedly, Texas' intermediate courts followed suit. For example, the Court of Civil Appeals in San Antonio in *Mercury Life & Health Co. v. Hughes*, 271 S.W.2d 842 (Tex. Civ. App.—San Antonio 1954, writ ref'd), emphasized the unenforceability of illegal contracts as a matter of public policy.

> Appellee further contends that the contract should be upheld upon the theory of ratification, adoption or estoppel. We overrule these contentions. This contract is unenforceable as being against public policy and cannot be ratified or adopted by the mere showing of partial performance, or that the corporation has accepted benefits under the provisions of the contract. Neither does estoppel apply. The court will not lend its aid in the enforcement of rights growing out of an illegal contract, but will leave the parties to the unlawful contract where it finds them.

17

*Id.* at 846.

Texas courts in the modern era have followed the precedent discussed above.  Justice Lloyd

Doggett in his concurring opinion in the 1991 case of *Williams v. Patton*, 821 S.W.2d 141 (Tex.

1991), relied on the older Texas cases to suggest:

> From early times, courts have refused to enforce certain contracts deemed to be against public policy.  Oliver Wendell Holmes wrote long ago that there are circumstances in the interpretation of contracts where public policy, the interests of people other than the parties to the contract, must be considered.  On a number of recent occasions, our Texas judiciary has refused to enforce various contractual obligations that conflicted with public policy in this state.  Substantial societal concerns may be reflected in statutes, state and federal constitutions, judicial decisions, administrative decisions, rules and regulations, or other statements of public policy.

*Id.* at 147–48.  In two recent cases, the courts of appeals have recognized the same rule:

> A contract to do a thing which cannot be performed without violation of the law violates public policy and is void.  The purpose behind this rule is not to protect or punish either party to the contract, but to benefit and to protect the public.  In Texas, parties to a contract are presumed to be knowledgeable of the law.  Accordingly, courts will generally leave the parties as they find them.

*Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.); *see also*

*Texas A&M-Kingsville v. Lawson*, 127 S.W.3d 866, 873 (Tex. App.—Austin 2004, pet. filed).  All

of these cases clearly establish that the decedents cannot maintain claims against their co-

conspirators, Flores and Trevino.

**B.    Claims Against Third Parties: The Unlawful Acts Rule**

Consistent with the cases cited above, if this Court were faced with a purely contractual

issue, it would be simple to conclude that the decedents, who are admitted co-conspirators of Flores

and Trevino, could not avail themselves of judicial enforcement due to over 150 years of Texas case

law.  Texas law dictates that parties to illegal acts cannot sue each other to remedy their own

18

disputes.  The decedents in this case along with Flores and Trevino are *in pari delicto*.  Therefore,

Texas case law would have them as this Court has found them.

Instead of referring to these matters as illegal contracts, agreements to perform illegal acts,

and/or *in pari delicto*, some cases refer to this concept under the umbrella of the "unlawful acts"

rule.  The unlawful acts line of cases has applied to actions sounding in both contact and tort.  *See*

*Gulf, C. & S.F. Ry. Co. v. Johnson*, 71 Tex. 619, 9 S.W. 602 (1888); *Dover v. Baker, Brown,*

*Sharman & Parker*, 859 S.W.2d 441 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Gladu v.*

*Wallace*, No. 11-02-00211-CV, 2003 WL 2010946, at *2 (Tex. App.—Eastland May 1, 2003, no

pet.)(not designated for publication).

The unlawful acts rule has been part of the fabric of Texas jurisprudence for well over 100

years.[14]  It provides that no cause of action may be premised upon an admittedly unlawful act of the

party asserting it.  *Macias v. Moreno*, 30 S.W.3d 25, 28–29 (Tex. App.—El Paso 2000, pet. denied);

*Duncan Land & Exploration, Inc. v. Littlepage*, 984 S.W.2d 318, 328 (Tex. App.—Fort Worth 1998,

---

[14]      In *Gulf C. & S.F. Ry. Co.*, the Supreme Court of Texas seemingly for the first
time articulated the unlawful acts rule.  The facts involved a plaintiff who was the lessee of a
building where damages were incurred due to the destruction of carpet, wallpaper, and gaming
tables.  The plaintiff filed suit and won damages.  In its appeal from that judgment, the defendant
maintained that since gaming was illegal, an owner could not recover damages to property used
for that purpose.  In establishing the unlawful acts rule, the court stated:

> It may be assumed, as undisputed doctrine, that no action will lie to recover a
> claim for damages, if to establish it the plaintiff requires aid from an illegal
> transaction, or is under the necessity of showing or in any manner depending
> upon an illegal act to which he is a party.…In those cases where it is shown that,
> at the time of the injury, the plaintiff was engaged in the denounced or illegal act,
> the rule is, if the illegal act contributed to the injury, he cannot recover; but, if
> plaintiff's act did not contribute to the injury, the fact alone that at the time he
> was engaged in an act in violation of law will not of itself preclude a recovery.

*Gulf C. & S.F. Ry. Co.*, 71 Tex. at 621–22, 9 S.W. at 603 (emphasis added).

pet. denied); *Rodriquez v. Love*, 860 S.W.2d 541, 544 (Tex. App.—El Paso 1993, no writ). In those cases where it can be shown that at the time of the injury the plaintiff was engaged in the illegal act, the rule is that if the illegal act contributed to the injury, the plaintiff cannot recover. *Ward v. Emmett*, 37 S.W.3d 500, 503 (Tex. App.—San Antonio 2001, no pet.).

Recent Texas cases have held that the doctrine bars recovery when the plaintiff has knowingly and willfully engaged in criminal acts that contributed to the injury alleged to have occurred. *Saks v. Sawtelle, Goode, Davidson & Troilo*, 880 S.W.2d 466, 470 (Tex. App.—San Antonio 1994, writ denied) (affirming summary judgment in favor of defendant law firm and attorneys who had advised plaintiffs on loan transaction because plaintiffs were convicted of a scheme to defraud a bank); *Dover*, 859 S.W.2d at 441 (affirming summary judgment against plaintiff because his claims for damages resulted from illegal business transactions in which he knowingly and willfully participated); *Ward*, 37 S.W.3d at 503 (affirming summary judgment for defendants because plaintiff's claims for damages arose from the murder she committed). Underlying the rule is the idea that public policy proscribes recompense for any act or agreement that violates the law. *Houston Ice & Brewing Co.*, 63 Tex.Civ.App. at 19, 132 S.W. at 387.

### C.    Application to Wrongful Death Actions

This Court could locate no case in which a Texas court has applied the unlawful acts rule in a wrongful death action nor has either side provided this Court with an appropriate Texas guide. Texas courts have extended the rule to tort actions where a plaintiff seeks compensation for injuries resulting from his or her own illegal activities. *See, e.g., Saks*, 880 S.W.2d at 470; *Dover*, 859 S.W.2d at 450. Upon careful consideration of the rule itself and the public policy underlying the rule, the Court believes that if faced with this issue, the Supreme Court of Texas would find the rule

applicable.[15]

The Court bases its conclusion on relevant Texas case law that it has looked to for guidance. For example, in *Saks*, the plaintiffs filed suit against the attorney defendants asserting claims of malpractice and gross negligence, among others, in order to recover damages arising out of legal services rendered in connection with a loan transaction—a transaction that led to the plaintiffs' convictions for knowingly executing or attempting to execute a scheme to defraud a bank. *Saks*, 880 S.W.2d at 467. The plaintiffs alleged that the defendants were negligent in preparing the loan documents, failing to inform the plaintiffs of potential criminal violations arising from the transaction, and misrepresenting the legality of the transaction to the plaintiffs. *Id.* at 468. The court held that the plaintiffs' suit was for damages resulting from their illegal acts in the loan transaction and would not permit the plaintiffs to profit from that conduct. *Id.* at 470. In barring the malpractice action, the court reasoned that all of the plaintiffs' claims arose from the actual criminal prosecution in which a jury found that the plaintiffs had acted knowingly to defraud the banks. *Id.* The court concluded that the plaintiffs' illegal acts were inextricably intertwined with their claims, not merely incidental to them. *Id.* It explained that even if the defendants were guilty of negligence, it was irrelevant in the face of the public policy that precludes the plaintiffs from recovering damages they incurred as a result of their conviction. *Id.*

This Court also finds support for its conclusion in *Dover*. In that case, the plaintiff, who was convicted of tax fraud, brought malpractice claims against his accountants and attorneys alleging

---

[15]    This Court in the instant opinion is deciding issues or certain facets of issues upon which no Texas court, state or federal, has opined. No party has suggested that this Court abstain under any of the abstention principles outlined in *Diamond Offshore Co. v. A & B Builders*, 302 F.3d 531 (5th Cir. 2002).

21

that he committed the illegal acts based on their advice. *Dover*, 859 S.W.2d at 444–45. The

defendants objected that such a lawsuit contravened Texas public policy. The First Court of Appeals

in Houston held:

> Dover's claims are for damages that resulted from the illegal business transactions
> in which he knowingly and willingly participated. His illegal conduct is not
> incidental to his claims; it is inextricably intertwined with those claims. Because
> Dover's illegal act contributed to his injury, the trial court correctly granted
> appellees' summary judgment on the grounds of public policy.

*Id.* at 451.

While factually dissimilar to the case at bar, *Saks* and *Dover* are important because they

reveal the willingness of Texas courts to adhere to the concept that a party will not be permitted to

recover in a civil action when it is based on illegal acts in tort cases. As Texas courts apply this

principle in cases sounding in both tort and contract, there is no good reason why it should not be

extended to wrongful death actions. In such instances, the action should be barred if in order to

establish that cause of action, a plaintiff must rely in whole or in part on an illegal or immoral act

or transaction to which it is a party. In so ruling, this Court is in complete accord with Texas' public

policy of not entertaining a suit where a plaintiff was engaged in unlawful conduct at the time of the

injury.

This Court's decision also finds support in the legal authority of other jurisdictions. Many

states have a rule nearly identical to Texas' unlawful acts rule. One of the clearest statements in any

jurisdiction concerning the rationale behind the rule is set out by the Michigan Supreme Court in

*Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995). That case, like this one, involved claims

of tortious conduct. John Orzell sued various defendants who aided his illegal acquisition of the

drug Desoxyn to which he was addicted. The defendants claimed the action was barred by Orzel's

illegal conduct. The Michigan Supreme Court noted that the "wrongful conduct rule" in Michigan

was long-standing. *Id.* at 558–59. It then explained the rationale in a most succinct fashion:

> The rationale that Michigan courts have used to support the wrongful-conduct rule
> are rooted in the public policy that courts should not lend their aid to a plaintiff who
> founded his cause of action on his own illegal conduct. If courts chose to regularly
> give their aid under such circumstances, several unacceptable consequences would
> result. First, by making relief potentially available for wrongdoers, courts in effect
> would condone and encourage illegal conduct. Second, some wrongdoers would be
> able to receive a profit or compensation as a result of their illegal acts. Third, and
> related to the other two previously mentioned results, the public would view the legal
> system as a mockery of justice. Fourth, and finally, wrongdoers would be able to
> shift much of the responsibility for their illegal acts to other parties.[16]

*Id.* at 559–60.

Several other states have applied their versions of the unlawful acts rule in cases involving

redress for wrongful death. *See Barker v. Kallas*, 468 N.E.2d 39, 45 (N.Y. 1984) (holding that a suit

is disallowed if the plaintiff's conduct constitutes a serious violation of the law and the injuries for

which the plaintiff seeks recovery are the direct result of that violation); *Miller v. Bennett*, 56 S.E.2d

217, 218 (Va. 1949) (recognizing the "illegality" defense, which is based on the principle that a

party who consents to and participates in an illegal act cannot recover damages from other

participants for the consequences of that act); *Reed v. Witvoet*, 724 N.E.2d 553, 557 (Ill. App. Ct.

2000) (wrongful death action not maintainable by parents who illegally violated child labor laws).

For instance, in *Miller*, the Supreme Court of Appeals of Virginia held that the estate of a woman

who died after participating in an illegal abortion could not recover damages for wrongful death

from the person who performed the abortion procedure. *Miller*, 56 S.E.2d at 221. The court based

---

[16]    Texas courts have used many of these reasons in one form or another as a basis
for holding recovery contrary to public policy. *See, e.g., Houston Ice & Brewing Co.*, 63
Tex.Civ.App. at 20, 132 S.W. at 389; *Hunt's Heirs v. Robinson's Heirs*, 1847 WL 3502, at *7.

its holding on the fact that the direct cause of the decedent's death was the illegal conduct in which

she consensually participated, opining that the decedent consented to and thereby intentionally

participated in the abortion procedure that caused her death.  *Id.*

Illinois has also applied its version of the unlawful acts rule in a wrongful death action.  In

*Reed*, the special administrator for the estate of a deceased minor brought a wrongful death suit

against the decedent's employer, alleging that the employer employed the decedent in a "non-

agricultural and hazardous occupation" in violation of the Illinois Child Labor Law.  *Reed*, 724

N.E.2d at 554.  The defendants had employed the minor at the father's request and his parents

transported him to and from work.  *Id.*  The Appellate Court of Illinois held that the parents' illegal

conduct in allowing their minor son to be employed in violation of the Child Labor Law barred their

recovery against the defendant in a wrongful death suit as beneficiaries of their son's estate.

Notably, this Court unearthed no wrongful death case from any jurisdiction that rejected

applying the general rule that a person cannot maintain an action where it is based upon an illegal

act to which he or she is a party.

### D. The Application of the *In Pari Delicto* Rule and the Unlawful Acts Rule Bars Plaintiffs' Claims Against Flores and Trevino

Plaintiffs argue that if the Court finds that the unlawful acts rule is applicable, it still does

not bar recovery because Plaintiffs can show a complete cause of action without being obliged to

prove their own illegal act.  Generally, no legal right can result from an unlawful act or transaction

and no action can be maintained on a claim arising out of or based on such an act or transaction if

a plaintiff must in any way rely thereon in establishing his or her cause of action.  Nonetheless, "if

a party can show a complete cause of action without being obliged to prove their own illegal act,

although the illegal act may appear incidentally and may be important in explanation of other facts

in the case, they may recover." *Macias*, 30 S.W.3d at 29 (citing *Rodriquez*, 860 S.W.2d at 544).

Based upon those two general statements of the applicable law, the Court finds Plaintiffs'
argument unpersuasive. It is uncontroverted that the decedents made an agreement with Flores,
Trevino, and others to pay them money in exchange for aid in helping them illegally enter the United
States and for transportation to a location beyond the Sarita checkpoint. Plaintiffs even admit to
these facts in their petition.[17] (First Am. Orig. Pet., at 12–15.) Moreover, both Flores and Trevino
pled guilty to conspiring to transport illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and
1324 (a)(1)(A)(v)(I).[18] (Union Pacific's Resp., at Ex. C.) Therefore, the decedents' conduct was

---

[17]    Plaintiffs' First Amended Original Petition states that "[v]enue is proper in
Cameron County, Texas…because…Defendant Flores and his co-conspirators helped the
decedents cross into the United States in Cameron County, Texas, they hid them in Cameron
County, Texas and they also loaded the decedents in the Union Pacific grain hopper in Cameron
County, Texas. (First Am. Orig. Pet. at 12.) The petition also maintains that "[d]efendants
Flores and Trevino were members of a conspiracy to transport undocumented immigrants from
Mexico to the United States.... Defendant Flores accepted a monetary fee from the Decedents in
return for Defendant Flores' [sic] allowing Decedents to ride on the Union Pacific grain
hopper…Defendants Flores, Trevino and their co-conspirators promised Decedents that they
would give them safe passage…to a location just beyond the Sarita, Texas Border Patrol
checkpoint." *Id.* at 14.

[18]    Flores pled guilty to a criminal information wherein it stated that "Arnulfo Flores
Jr. in knowing and reckless disregard of the fact that…persons…who have been confirmed by
the United States attorney through certified copies of birth certificates and other means to have
been undocumented aliens and citizens of foreign countries—did knowingly and
intentionally…conspire…to transport…said aliens by means of a freight train…in furtherance of
such violation of law…for the purpose of commercial advantage and for private gain." Section
1324 states that "[a]ny person who…(ii) knowing or in reckless disregard of the fact that an
alien has come to, entered, or remains in the United States in violation of law, transports, or
moves or otherwise in furtherance of such violation of law; or (v)(I) engaged in any conspiracy
to commit any of the preceding acts…shall be punished as provided in subparagraph (B)."
Trevino pleaded guilty to count one of an indictment which reads in pertinent part "knowing and
in reckless disregard of the fact that certain persons, including but not limited to Juan
Marmolejo-Ornelas ('Marmolejo'), were aliens who had come to, entered, and remained in the
United States in violation of law, did unlawfully, knowingly and willfully combine, conspire,
confederate, and agree with other persons known and unknown to the Grand Jury to (1)

unquestionably unlawful and the agreement that arose between Flores, Trevino, and the decedents was likewise illegal.

That agreement to illegally transport the decedents past the immigration checkpoint is essential to establishing Plaintiffs' negligence and conspiracy claims against Flores and Trevino. Plaintiffs sued Flores and Trevino for civil conspiracy and for being negligent in: (1) failing to timely let the decedents out of the railcar, (2) loading them in a railcar from which they would be unable to escape, (3) locking the railcar from the outside, (4) failing to warn the decedents of their inability to unlock the railcar, and (5) failing to inform others that the decedents were locked in the railcar. To prevail on a claim for negligence, Texas law requires a finding of three elements: (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991). Plaintiffs simply cannot establish the existence of a duty owed or a breach of a duty by Flores or Trevino or prove the agreement which is the basis for any conspiracy claim without proving their illegal contract, the facts behind it, and the reasons for the decedents' concealment in the railroad car. The duty that Flores and Trevino allegedly owed the decedents arose out of the agreement to perform the illegal act of being transported into the United States and past the Sarita checkpoint.

---

transport, move, attempt to transport, and attempt to move said aliens by means of a freight train and otherwise, in furtherance of such violation of law, within the Southern District of Texas and elsewhere, for the purpose of commercial advantage and private financial gain, during and in relation to which the defendant placed in jeopardy the life of a person, in violation of Title 8, U.S.C. § 1324(a)(1) (A)(ii) and (B)(i) and (iii) and to (2) conceal, harbor, and shield from detection said aliens in any place, including any building and any means of transportation, for the purpose of commercial advantage and private financial gain, during and in relation to which the defendant placed in jeopardy the life of a person, in violation of Title 8, U.S.C. § 1324(a)(1)(A)(iii) and (B)(i) and (iii)."

Additionally, the decedents' illegal actions would certainly be pertinent to the negligence and proximate cause elements as well. Their actions may not have been the sole cause of their injuries; however, their unlawful conduct was certainly one of the proximate causes thereof. The decedents knowingly entered into an agreement with Flores and Trevino to commit a crime. In the commission of that crime, the decedents were allegedly killed by Flores and Trevino's negligence. To think one can make such a claim either based in tort or conspiracy without having to rely on the illegal agreement is absurd. *See, e.g., Manning v. Brown*, 689 N.E.2d 1382, 1385 (N.Y. 1997)(barring the plaintiff from recovering damages against the negligent driver with whom the plaintiff had knowingly participated in the unauthorized use of a motor vehicle even though the driver negligently caused the accident and the plaintiff's injuries); *Barker v. Kallash*, 468 N.E.2d 39, 43 (N.Y. 1984) (barring the plaintiff from seeking damages against the defendants who gave him gunpowder to make a pipe bomb); *Heard v. Denman*, 29 S.W.2d 824, 824 (Tex. Civ. App.—Austin 1930, no writ) (barring recovery of bribe monies paid to witnesses). It would violate the public policy of Texas to award damages growing out of the decedents' own illegal acts. Permitting such a suit to go forward would be tantamount to assisting the parties in relieving themselves of the consequences of their illegal activities. This, the courts of Texas and the United States, cannot allow. Consequently, Plaintiffs are precluded from pursuing their negligence and conspiracy claims against Flores, Trevino, or their co-conspirators because their claims are grounded upon the decedents' illegal acts.

It has not escaped the Court's attention than an argument possibly exists for finding that the decedents' unlawful conduct was not the direct cause of their injuries. The argument would be that the decedents' presence in the railroad car is too remote an event to constitute a proximate cause of

27

the injuries. Instead, one could argue that the direct cause would be the failure of Flores and Trevino either to let the decedents out of the railroad car or to notify someone to do the same. There is a distinction between that which directly and proximately produces or helps to produce the result as a cause thereof and that which is a necessary condition or attendant circumstance to it. If an illegal act is a mere condition that makes it possible for an accident to occur but is, in itself, no part of the accident, it cannot be considered the immediate cause of the injury. While it is an essential condition of most accidents that the injured person be where he or she was at the time in order for the injury to occur, the fact that he or she would not have been there if he or she had not been violating the law should not, in itself, bar recovery.

The Court, upon deep reflection, must ultimately reject this argument. In the instant case, the decedents' presence in the railroad car was not merely a condition that made it possible for Flores and Trevino to act negligently. They entered into an illegal agreement to transport them past the Sarita checkpoint. They were in the railroad car for the very purpose of attempting to avoid detection while being transported past the checkpoint. Further, there is no question that the decedents along with Trevino and Flores knowingly participated in that illegal act. As discussed above, where Texas courts have applied the unlawful acts rule in tort actions, the consent or participation in the unlawful conduct by the plaintiff has precluded recovery for injuries sustained as a result of that act. Plaintiffs seek redress in connection with that very knowing and intentional conduct which constitutes a violation of the law. Such an action is untenable; Plaintiffs simply cannot recover for a loss, no matter how severe or tragic, that arose out of that conduct.

The Court also observes that certain Texas courts have suggested possible exceptions to the

unlawful acts rule.[19]  One exception exists where both parties, although having engaged in illegal conduct, do not stand *in pari delicto* because the defendant's culpability is greater than that of the plaintiff.[20]  *De Vall v. Strunk*, 96 S.W.2d 245, 247 (Tex. Civ. App.—Galveston 1936, no writ) (the rule applies "only where the participating parties in an illegal or immoral transaction are of equal guilt with reference thereto...").  In *De Vall*, a single woman sued the defendant for fraud alleging that she consented to intercourse with the defendant based upon his promise to marry her, that he infected her with a sexually transmitted disease, and that he had spread rumors that she had been infected by someone other than himself.  *Id.* at 246.  The court held that the defendant could not avail himself of the rule that no one by his own wrong acquires a right of action because the woman's act could not have been as culpable as the defendant's deception.  The rule applied only where the parties to an immoral transaction are of equal guilt.  *Id.* at 247.  The court noted:

> The law also recognizes, even as between participants in the same illegal transaction, different degrees of culpability and will permit a recovery where the parties are not *in pari delicto*, as where the complaining party has been induced to participate in the illegal transaction by fraud, duress, or undue influence, or through ignorance of its true nature.

*Id.*

Another suggested exception is that the unlawful acts rule does not apply where a plaintiff's

---

[19]    This Court notes that even though Plaintiffs complain about the lack of pleading by Defendants, they have not pleaded nor have they briefed any of these possible exceptions. Moreover, they have not claimed that the exceptions are applicable.  The Court, however, in all fairness feels the need to address them.

[20]    These courts are using the phrase "*in pari delicto*" differently than referenced above in section V, subpart A, although the literal meaning is the same.  In section V, subpart A, the phrase is used as a means to communicate that since both parties were involved in the illegality, the courts would leave the parties as they found them.  Here, the courts have voiced a theoretical exception if the parties conduct was not equally illegal, i.e., where one party knew such conduct was illegal and the other did not.

injury was caused by a defendant's wilful or wanton act. *Pyeatt v. Stroud*, 264 S.W. 307, 310 (Tex.Civ.App.—Galveston 1924, writ granted). In *Pyeatt*, the plaintiff brought a negligence suit to recover for personal injuries suffered when the automobile of Pyeatt, the defendant, struck the motorcycle upon which Stroud was riding. *Id.* at 307. The defendant argued that Stroud had been riding the motorcycle without the consent of the owner thus violating several articles of the Texas Penal Code. *Id.* at 308. In explaining the rule, the court stated:

> It is well settled, we think, that no action will lie to recover a claim for damages if to establish it the plaintiff requires aid from an unlawful transaction, or is under the necessity of showing or in any manner depending upon an unlawful act to which he is a party, except in cases where it is shown that the injury was caused by the willful or wonton act of the party causing the injury. But, to constitute such unlawful act a defense in behalf of the party causing the injury, it must be made to appear by the evidence that the unlawful act of the injured party did in some manner contribute to the injury and was inseparably connected therewith.

*Id.* at 309. The court ultimately held that there was no causal connection between the alleged illegal act and the collision and, more importantly, that there was no proof that an illegal act had indeed occurred.

It is the opinion of this Court that these so-called exceptions are not applicable to the present case. Both *Pyeatt* and *De Vall* are factually distinguishable. Unlike *Pyeatt*, it is undisputed in the present case that the decedents, Flores, and Trevino all engaged in wrongful conduct. Indeed, Flores and Trevino entered into an illegal agreement with the decedents wherein the decedents paid to be transported past the Sarita checkpoint. In *Pyeatt*, the plaintiff and defendant did not enter into such an agreement, and, in fact, the defendant did nothing illegal. In *De Vall*, though both the plaintiff and the defendant allegedly engaged in "immoral" conduct, only the defendant had knowledge of his affliction when the plaintiff consented. In the instant case, the decedents knowingly and intentionally paid Flores, Trevino, or their co-conspirators to illegally transport them. Consequently,

they had equal knowledge of the illegal nature associated with their plan. Additionally, the decedents knew that they were in the country illegally and that they were trying to evade detection. They also knew that they were trespassing and illegally trying to stow-away in a grain hopper on a freight train.

As such, this Court holds that while the incident in question was indeed a grave tragedy, and despite the extreme consequences suffered by the decedents, the results do not excuse the decedents' own role in the event. They purposefully took part in a conspiracy to break the immigration laws of the United States and they purposefully agreed to trespass on a freight train and ride in a grain hopper railroad car in order to avoid detection by immigration authorities. This cannot be ignored. It goes without saying that the decedents did not agree to be locked away in a hopper and forgotten. The evil allegedly inflicted upon them by Flores, Trevino, and others should not be minimized.

It also should be noted that these decedents are not the only illegal aliens who have been hurt or killed by those with whom they have contracted to avoid immigration detection. This Court has seen all too often instances on both sides of the border in which those attempting to enter the United States illegally have been cheated, misled, and endangered. As tragic as these circumstances are, this Court cannot ignore the fact that the decedents in this case intentionally entered into a conspiracy to avoid our immigration laws and their role in breaking the law is an integral part of their proof. As such, they cannot now sue their co-conspirators for negligence and conspiracy.

## VI.    TEXAS LAW DOES NOT BAR PLAINTIFFS' CLAIMS AGAINST UNION PACIFIC

This brings the Court back to the potential liability of Union Pacific. Under the rule espoused in *Smallwood*, this Court, having found that a cause of action against Flores and Trevino

cannot be maintained, must determine whether the same defense which prevents recovery against these non-diverse defendants also prevents recovery from the diverse defendants.[21]  If so, then this Court must remand the case as the Fifth Circuit in the closely divided *Smallwood* opinion has held that if the reason that an in-state defendant is not properly joined—i.e., there is no reasonable basis for predicting state law would allow recovery—is equally applicable to the diverse defendant, then the concept of fraudulent joinder is inapplicable and the case must be remanded.  *Smallwood*, 385 F.3d at 574.  Therefore, this Court is now compelled to decide whether the same rule which bars a suit against Flores and Trevino bars recovery against the diverse defendants.

Plaintiffs' negligence claims against Union Pacific are based, in part, on premises liability. Plaintiffs also allege that Union Pacific is vicariously liable for Flores' alleged negligent acts and directly liable for his acts pursuant to Section 317 of the RESTATEMENT (SECOND) OF TORTS.[22]  For the purpose of premises liability, the decedents are classified as trespassers because they were

---

[21]     This Court should note that no party, neither the plaintiffs nor the defendants, has taken the position that the wrongful acts of the decedents barred all causes of action against the diverse defendants.

[22]     § 317.  Duty Of Master To Control Conduct Of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

    (a)  the servant
        (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
        (ii) is using a chattel of the master, and
    (b)  the master
        (i) knows or has reason to know that he has the ability to control his servant, and
        (ii) knows or should know of the necessity and opportunity for exercising such control.

trespassing on Union Pacific's property.[23]  Under Texas law, a trespasser is one who:

> enters upon  the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge.

*Texas-Louisiana Power Co. v. Webster*, 127 Tex. 126, 134, 91 S.W.2d 302, 306 (1936).  Texas courts have long recognized that a landowner's duty to a trespasser is not to injure him willfully, wantonly, or through gross negligence.  *City of El Paso v. Zarate*, 917 S.W.2d 326, 330 (Tex. App.—El Paso 1996, no writ).

For example, in *Williams v. Bill's Custom Fit, Inc.*, 821 S.W.2d 432 (Tex. App.—Waco 1991, no writ), a minor passenger in a stolen vehicle sued various parties for injuries sustained in an accident.  *Id.* at 432.  The vehicle became involved in a high-speed chase with a state trooper and the chase ended when the trooper's vehicle collided with the stolen vehicle.  *Id.* at 432–33.  The plaintiff sued the owner of the stolen vehicle contending that an employee of the defendant had negligently left the keys inside the vehicle when she parked it on the street.  *Id.* at 433.  The court held that because the plaintiff was a trespasser in the defendant's vehicle, the defendant merely owed the plaintiff a duty not to injure him willfully, wantonly, or through gross negligence.  *Id.* at 434.

No Texas court has explicitly addressed whether the unlawful acts rule applies to a

---

[23]    The Court recognizes that an argument could be made that the decedents were licensees rather than trespassers; however, for the purposes of this opinion, this Court will assume that at the very least they were trespassers since that is the position most favorable to the Plaintiffs' remand argument.

trespassing case.[24]   In the face of this precedent, however, this Court must conclude that a Texas court would not apply the unlawful acts rule to bar Plaintiffs' negligence claims against Union Pacific.  This Court's holding is consistent with other jurisdictions that have a rule similar to Texas' unlawful acts rule.  *See, e.g., Ryals v. United States Steel Corp.*, 562 So.2d 192, 194 (Ala. 1990) (distinguishing between the duty owed by a landowner to an adult trespasser who enters the premises to engage in theft from the ordinary duty owed by a landowner to a trespasser; the landowner's duty to one who trespasses with intent to steal is a duty to refrain from intentionally injuring him); *Goldfuss v. Davidson*, 679 N.E.2d 1099, 1104–05 (1997) (holding that public policy did not bar recovery in a wrongful death action where the homeowner negligently shot and killed the trespasser who was attempting to break into the homeowner's barn).

Further, finding the rule inapplicable in such instances is in accord with the general principle that where a plaintiff is a trespasser by reason of his or her own unlawful purpose, the illegal acts rule will not preclude recovery for injuries where there is no causal connection between the illegality and the plaintiff's injuries.  Thus, the duty owed to an individual committing an illegal act in addition to the act of trespass does not arise out of that person's illegal act but exists independent from it.  Plaintiffs' claims against Union Pacific do not necessarily require proof of the decedents' illegal status or their agreements as a predicate to recovery.[25]  The illegal aliens were trespassers and were killed as a result of being unable to escape from a grain hopper.  The fact that the decedents

---

[24]     It is a virtual tautology that a trespasser is breaking the law by being on someone else's property without permission, yet it is clear that a trespasser may recover under certain circumstances.

[25]     This Court concedes that their illegal status certainly provides a motive or explanation for their trespass, but this does not seem to be an integral part of their proof.

were at least trespassers does not bar recovery against Union Pacific because trespassers are always allowed to bring suit despite the fact that the trespassers are breaking the law. Further, decedents could conceivably have suffered the same result had they been legal residents who were seeking a free ride north of the Rio Grande Valley. Thus, the plaintiffs could theoretically recover against the diverse defendants without necessarily having to prove their involvement in the conspiracy to provide them with transport north.

Since neither the illegal acts rule nor the *in pari delicto* rule bars recovery against Flores and Trevino, the non-diverse defendants do not bar recovery against the diverse defendants and *Smallwood* does not apply. Indeed, in *Rainwater* the Fifth Circuit advised:

> If, however, the district court should determine that the time bar defense is not dispositive of every claim against every defendant, it should continue to deny remand and proceed with the proper disposition of the case.

*Rainwater*, 391 F.3d at 638–39. This Court finds that Flores and Trevino are wrongfully joined and, therefore, they are dismissed. Nevertheless, the bar against Flores and Trevino does not apply to all claims against the diverse defendants and, therefore, the Court holds those claims may proceed. The Court further finds that given that ruling, it has diversity jurisdiction and, therefore, **DENIES** the Motion to Remand (Docket No. 4).

## VII.    INTERLOCUTORY REVIEW

Title 28, § 1292(b) of the United States Code permits a district court in certain circumstances and in its discretion to certify appeal orders that are otherwise not appealable. Under § 1292(b), a court may certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation. *Aparicio v. Swan Lake*, 643

35

F.2d 1109, 1110 n.2 (5th Cir. 1981).  The district judge must make a proper certification statement in its order that these three criteria have been met.

The Court finds that this case meets this high burden.  There is no doubt that the removability of Plaintiffs' claims is a controlling question of law.  Jurisdiction or the lack thereof is clearly a controlling issue.  Resolution of this matter hinges upon determining the applicability of the *in pari delicto* or unlawful acts rules in wrongful death actions.  To date, no Texas court has addressed this issue in this context.  As no controlling Texas precedent exists, there remains the chance that Texas courts will not follow this Court's ruling.  Therefore, substantial grounds for a reasonable difference of opinion remain a possibility.

Further, many courts may find the ultimate result to be a harsh one and create an exception or shoehorn these facts into one of the exceptions that this Court discussed but rejected.  A court could also differ with this Court as to its conclusion that the illegal acts rule does not prohibit a claim against the diverse defendants.[26]  Resolution of this issue directly determines whether this Court has jurisdiction over this case.  At this stage, it would inure to the benefit of both parties and the orderly administration of justice if an early determination of jurisdiction is made.  Further, an immediate appeal resolving the issue of the unlawful acts rule will prove invaluable to the ultimate resolution of this case.  In fact, if the Fifth Circuit found that the illegal acts doctrine barred all claims against all defendants, the lawsuit would be over.[27]  This Court, therefore, certifies this case for appeal.

---

[26]    This Court cannot conclude without noting that the position that all of Plaintiffs' claims are barred by the illegal acts or *in pari delicto* rules has not been argued by any party.

[27]    Unfortunately, such a ruling would also deprive this Court of jurisdiction to rule that the lawsuit was over and that ruling would fall to a state court.

## VIII.  CONCLUSION

Based on the foregoing reasons, Plaintiffs' Motion to Remand (Docket No. 4) is **DENIED**

and this order is certified for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Signed in Brownsville, Texas, this 6th day of May, 2005.

_____
Andrew S. Hanen
United States District Judge