United States District Court
Southern District of Texas
FILED

JUL 2 3 2007

Michael N. Milby
Clerk of Court

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2007

Charles R. Fulbruge III
Clerk

No. 05-41719

JUVENAL ESPARZA RICO; ARCELIA CONTRERAS ORTEGA, Individually as
the sole surviving heirs of the Estate of their son, Omar Esparza
Contreras; MARIA INES MUNOZ BRIONES, Individually as next friend
of her minor children, Ingri Marvella Reyes Munoz and Clarisa
Yajaira Reyes Munoz, and as a surviving heir of the Estate of her
husband, Juan Enr; JUAN ANTONIO REYES AGUILAR, Individually;
IRENE GODINEZ CARDONA, Individually as next friend of her minor
son, Roberto Esparza Godinez, and as surviving heir of the Estate
of her husband, Roberto Esparza Godinez, and as a surviving heir;
CLEMENTINA SANCHEZ, Individually; EVA CRISTINA SANCHEZ SIERRA,
Individually as next friend of her minor children, Karla Lizeth
Amador Sanchez, Nancy Marisol Amador Sanchez, and Francis
Estefania Amador Sanchez, and as a surviving heir; MANUEL DOBLADO
AVILA, Individually; DELMIRA SOLER DOBLADO, Individually as next
friend of her minor children, Nelis Avila Soler, Ever Avila
Soler, and Elmer Roberto Avila Soler, and as a surviving heir of
the Estate of her husband, Isidro Avila Bueso; LUDIS YESENIA
SOLER, Individually; OBDULIA FERRUFINO BURGOS, Individually as
next friend of her minor grandchildren, Jonathan Joel Gutierrez
Ferrufino, Lely Ampao Canales Ferrufino, Ivy Roxana Canales
Ferrufino, and Oscar Alfredo Ferrufino; ROSA DELIA HERNANDEZ DE
ARDON, Individually as next friend of her minor children, Harold
Mauricio Ardon Hernandez, Marelyn Ivette Ardon Hernandez, and as
a surviving heir of the Estate of her husband; SIXTO ACEVEDO;
MARIA EMILIA PEREZ, Individually and as the sole surviving heirs
of the Estate of their son, Byron Adner Acevedo Perez

                    Plaintiffs-Appellants,

        v.

ARNULFO FLORES, JR.; NORMA ARRIAGA TREVINO, also known as Norma
Bocanegra; UNION PACIFIC; AT&L RAILROAD COMPANY, INC; ARCHER
DANIELS MIDLAND CO.

                    Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
No. 1:04-CV-117

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Plaintiff-appellant Juvenal Esparza Rico and numerous other plaintiffs-appellants (collectively, "Plaintiffs"), who represent the estates of ten deceased illegal immigrants, appeal the district court's order finding that non-diverse defendants Arnulfo Flores, Jr. ("Flores"), and Norma Arriaga Trevino ("Trevino") were improperly joined and denying Plaintiffs' motion to remand to Texas state court. Because we conclude that the application of the Texas unlawful acts rule to Plaintiffs' claims is too uncertain to support a finding of improper joinder, we REVERSE the order of the district court and REMAND for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from the deaths of ten illegal aliens who stowed away in a grain hopper railroad car in an attempt to pass undetected through the Border Patrol checkpoint at Sarita, Texas. The ten aliens were locked into the rail car by smugglers with whom they had conspired. They died from lack of oxygen, overheating, and dehydration after being unable to escape. Their

remains were found four months later in Denison, Iowa.
Plaintiffs, the surviving family members of the ten decedents,
brought suit in Texas state court against Flores, who is alleged
to have loaded the decedents into the grain hopper; Trevino, an
alleged co-conspirator in the smuggling operation; Union Pacific
Corporation and Union Pacific Railroad Company (collectively,
"Union Pacific"), the owner of the railroad car and employer of
Flores; AT&L Railroad Company, Inc. ("AT&L"), another railroad
company that may or may not have transported the rail car in
question; and Archer Daniels Midland Company ("Archer Daniels"),
the owner of the grain facility where the decedents' remains were
ultimately found.

Against Flores and Trevino, Plaintiffs brought causes of
action for negligence and for civil conspiracy "derivative from
acts of negligence." Against Union Pacific, Plaintiffs brought
causes of action for vicarious liability for the acts of Flores;
for negligent hiring, training, supervision, and retention of
Flores; and for premises liability. Plaintiffs did not specify
any causes of action against AT&L or Archer Daniels.

On July 9, 2004, Union Pacific removed this case to the
Southern District of Texas on the basis of diversity
jurisdiction. 28 U.S.C. 1441(b) provides that any civil action
over which the district courts have original jurisdiction that is
not founded on a claim or right arising under the Constitution,

treaties, or laws of the United States is removable only if none of the parties properly joined and served as defendants is a citizen of the state in which the action is brought. Union Pacific claimed that Defendants Flores and Trevino, citizens of Texas, were both improperly joined because Texas's unlawful acts rule barred Plaintiffs' claims against Flores and Trevino. The unlawful acts rule is a rule of Texas common law that generally bars claims that implicate an illegal act by the plaintiff.[1]

Plaintiffs filed a motion to remand on July 19, 2004, arguing first, that removal was improper because defendants Flores and Trevino did not consent; second, that defendants Flores and Trevino had not raised the unlawful acts rule in their defense; third, that the unlawful acts rule is inapplicable in wrongful death cases because it is superseded by section 93.001 of the Texas Civil Practice & Remedies Code; and fourth, that even if the unlawful acts rule does apply, it does not bar Plaintiffs' claims because Plaintiffs do not have to prove their unlawful act to make out their causes of action.

While these arguments were being considered by the district court, this circuit handed down its en banc decision in <u>Smallwood v. Illinois Central Railroad Co.</u>, 385 F.3d 568 (5th Cir. 2004)(en banc). <u>Smallwood</u> held that a district court must remand a case

---

[1] As discussed at greater length herein, there are a number of differently worded versions of the unlawful acts rule.

where a defendant asserts a defense in support of improper joinder that is dispositive of all claims in the action. Id. at 571. The district court offered the parties an opportunity to address the impact of Smallwood on their case, at which time Plaintiffs argued that if the unlawful acts rule barred claims against Flores and Trevino, so too it barred claims against the diverse defendants, and therefore, under Smallwood, the case must be remanded to state court.

On May 6, 2005, the district court handed down its Memorandum Order and Opinion denying Plaintiffs' motion to remand. The district court also that day issued an order dismissing defendant AT&L for lack of personal jurisdiction. On May 18, 2005, the district court issued an Amended Memorandum Opinion and Order. The district court's Amended Memorandum Opinion and Order ("Order") rejected each of the Plaintiffs' arguments. The district court ruled that the fact that Flores and Trevino had not pleaded the unlawful acts rule was not dispositive because "the issue was squarely raised by the Removal Notice and responded to in the Motion to Remand." Rico v. Flores, 405 F. Supp. 2d 746, 755 (S.D. Tex. 2005). The district court also held that Flores and Trevino's lack of consent to removal did not bar removal because "consent need not be obtained from a

---

[2] We have not been able to discern any difference between the original and the Amended Memorandum Opinion and Order.

co-defendant that the removing party contends is improperly joined." Id. at 756. The district court held that section 93.001 did not govern this case, and that the unlawful acts rule did bar Plaintiffs' claims against Flores and Trevino. The district court found, however, that the unlawful acts rule did not bar certain claims by Plaintiffs against Union Pacific, because the only illegal act which Plaintiffs must show to make out these claims was trespass, which is an exception to the unlawful acts rule. Id. at 768-70.

In its Order, the district court noted that Title 28, § 1292(b) of the United States Code permits a court to certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation. Finding that this case met these criteria, the district court certified the case for appeal. Id. at 770-71. We granted Plaintiffs' petition for permission to appeal on December 1, 2005. This appeal by Plaintiffs followed.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

This court's jurisdiction over Plaintiffs' appeal "derives from the district court's certification of its interlocutory order denying the motion to remand as suitable for appeal under 28 U.S.C. § 1292(b)." Ard v. Transcon. Gas Pipe Line Corp., 138

F.3d 596, 600 (5th Cir. 1998). 28 U.S.C. § 1447(d) forbids appellate court review of district court decisions to remand in the face of an alleged lack of subject matter jurisdiction; however, § 1447(d) does not preclude appellate review of a district court decision not to remand when the district court finds that subject matter jurisdiction exists. Bissonnet Invs. LLC v. Quinlan, 320 F.3d 520, 525 (5th Cir. 2003). We review questions of subject matter jurisdiction de novo. Id. at 522.

### III. STANDARD FOR IMPROPER JOINDER

To establish that a non-diverse defendant has been improperly joined to defeat diversity jurisdiction, the removing party must prove "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood, 385 F.3d at 573 (quotation omitted). Here, there has been no claim that Plaintiffs fraudulently pleaded jurisdictional facts, so our concern is with the second prong. The test established by our circuit is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. In making this determination, the district court is "obliged to resolve any

-7-

contested issues of material fact, and any ambiguity or
uncertainty in the controlling state law, in [the plaintiff's]
favor." <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir.
1999). Plaintiffs argue that throughout its Order, the district
court erred by resolving ambiguities in the controlling state law
in favor of Union Pacific. As discussed below, this contention
has merit.

## IV. DISCUSSION

On appeal, Plaintiffs argue that (1) Union Pacific's removal
petition was defective because all defendants did not consent to
removal; (2) the district court erred in considering the unlawful
acts rule, when it was never pleaded by the in-state defendants;
(3) section 93.001(a)(1) of the Texas Civil Practice & Remedies
Code preempts the unlawful acts rule in wrongful death cases; (4)
the unlawful acts rule does not bar Plaintiffs' claims against
Flores and Trevino; (5) if the unlawful acts rule does bar
Plaintiffs' claims against Flores and Trevino, it also bars
Plaintiffs' claims against the out-of-state defendants. Union
Pacific contests these arguments.

## A. Failure to Obtain Consent for Removal

Plaintiffs argue that under 28 U.S.C. § 1446, Union
Pacific's removal was invalid because it lacked the consent of
Flores and Trevino. To support this argument, Plaintiffs cite
<u>Getty Oil Corp. v. Insurance Co. of North America</u>, 841 F.2d 1254,

1262 (5th Cir. 1988). <u>Getty Oil</u>, however, states that "[28 U.S.C.
§ 1446] has been interpreted to require that all then-served
*properly joined* defendants join in the removal petition." <u>Id.</u> at
1262 (emphasis added). This statement does not support
Plaintiffs' position, since Union Pacific claims that Flores and
Trevino were not properly joined. In <u>Jernigan v. Ashland Oil
Inc.</u>, 989 F.2d 812, 815 (5th Cir. 1993), this court held that a
removing party need not obtain the consent of a co-defendant that
the removing party contends is improperly joined. The <u>Jernigan</u>
court explained that such a requirement would be "nonsensical, as
removal in those cases is based on the contention that no other
proper defendant exists." <u>Id.</u>  Therefore, the district court was
correct in holding that the absence of consent by Flores and
Trevino did not render Union Pacific's removal invalid.

**B.    Failure to Plead Unlawful Acts Rule by In-State Defendants**

     Plaintiffs next contend that the failure of Flores and
Trevino to plead the unlawful acts rule in their respective
answers bars Union Pacific from relying on this rule when
claiming improper joinder.

     The district court reasoned that Rule 8 of the Federal Rules
of Civil Procedure allows a technical failure in pleading so long
as "the matter is raised in the trial court in a manner that does
not result in unfair surprise." <u>Rico v. Flores</u>, 405 F. Supp. 2d
at 755.  Noting that Union Pacific "squarely raised" the unlawful

-9-

acts rule in its removal notice, and that Plaintiffs responded in their own briefing, the district court concluded that there was no unfair surprise. Id.

This analysis misses the point. Plaintiffs argue that, in accordance with the law of improper joinder, Union Pacific must demonstrate that "there is no possibility of recovery by the plaintiff against an in-state defendant." Smallwood, 385 F.3d at 573. Union Pacific has attempted to make this showing by pointing to the unlawful acts rule. Plaintiffs argue, however, that regardless of the applicability of this rule to their claims, their possibility of recovery against Flores and Trevino remains strong so long as Flores and Trevino do not plead the unlawful acts rule in their defense. Both defendants pleaded a general denial in their answers, and neither raised the unlawful acts rule. Plaintiffs correctly argue, therefore, that the fact that Union Pacific raised the rule in a timely fashion is irrelevant.

It is possible, however, that the Texas unlawful acts rule is imposed as a matter of public policy, and that a Texas court will refuse to enforce claims that are barred by public policy even when that policy is not affirmatively invoked by a party. See Phillips v. Phillips, 820 S.W.2d 785, 789 (Tex. 1991).[3]

_____

[3] There are several cases in which a Texas court declared enforcement of the unlawful acts rule to be a matter of public policy. Cf. Saks v. Sawtelle, Goode, Davidson & Troilo, 880 S.W.2d 466, 470 (Tex. App.--San Antonio 1994, writ denied) ("[P]ublic policy bars recovery for injuries arising from a

However, because our conclusion that the application of the
unlawful acts rule to Plaintiff's claims is too uncertain to
support improper joinder requires remand to the state court, we
need not decide this issue.

**C.    Preemption of Unlawful Acts Rule in Wrongful Death Cases**

Plaintiffs argue that for wrongful death suits, the unlawful
acts rule is preempted by section 93.001(a)(1) of the Texas Civil
Practice & Remedies Code. Section 93.001 reads as follows:

§ 93.001.  Assumption of the Risk: Affirmative Defense

(a) It is an affirmative defense to a civil action for
damages for personal injury or death that the plaintiff,
at the time the cause of action arose, was:

(1) committing a felony, for which the plaintiff has been
finally convicted, that was the sole cause of the damages
sustained by the plaintiff . . . .

(c) In an action to which this section applies, this
section shall prevail over any other law.

Plaintiffs argue that section 93.001(c) provides that
section 93.001(a)(1) prevails over any other law relating to
civil actions for damages for personal injury or death.
Plaintiffs therefore argue that section 93.001(a)(1), which
requires that a plaintiff have been finally convicted of a felony
before the defense is available, prevails over the unlawful acts

---

knowing and willful crime."); Dover v. Baker, Brown, Sharman &
Parker, 859 S.W.2d 441, 451 (Tex. App--Houston [1st Dist.] 1993,
no writ) ("[W]here [plaintiff] was a knowing and wilful party to
the illegal acts which contributed to his injury, public policy
clearly bars him from bringing suit to recover damages resulting
from those acts.").

-11-

rule, which has no such requirement.

The district court rejected the Plaintiffs' argument, declaring that the "plain wording" of the statute indicates that section 93.001(a)(1) controls only when a plaintiff has been finally convicted of a felony offense. As a result, the district court concluded that section 93.001(a)(1) does not preempt the unlawful acts rule in Plaintiffs' case, since they have not been finally convicted.

Plaintiffs insist that the district court misread the "plain wording" of the statute, claiming that the word "action" in section 93.001(c) refers to the "civil action for damages for personal injury or death" mentioned in section 93.001(a). This interpretation of "action" is likely correct, but section 93.001(c) references not just an "action" but "an action to which this section applies." The language "to which this section applies" appears to limit the reach of section 93.001(c) to situations where sections 93.001(a)(1) or 93.001(a)(2) apply. Otherwise, the result would be that section 93.001(c) would prevail over all other law relating to civil actions for damages for personal injury or death, which seems improbable. On the other hand, it also seems improbable that a statute that creates a narrow, specific defense to a wrongful death action would leave unaffected the much broader defense of the unlawful acts rule.[4]

_____

[4] Unless, of course, the unlawful acts rule does not apply

We have not identified any caselaw directly addressing the preclusive effect of section 93.001(c).[5]

The district court's interpretation of section 93.001 was likely correct, but there remains substantial uncertainty about the relationship of section 93.001 to the unlawful acts rule. This uncertainty supports our conclusion that the district court's finding of improper joinder was in error.

## D.    Unlawful Acts Rule Applied to Plaintiffs' Claims Against Flores and Trevino

### (1)    Does the unlawful acts rule apply to wrongful death claims?

It is undisputed that there are no Texas cases applying the unlawful acts rule to a wrongful death claim. Plaintiffs argue that the district court wrongfully engaged in speculation about whether the Texas courts would apply the unlawful acts rule to a wrongful death claim, and made an "Erie guess" that they would. Plaintiffs contend that after acknowledging the lack of caselaw on this point, the district court should have ruled that Union Pacific had failed to meet its burden for demonstrating improper

_____

to wrongful death actions. See herein, section IV(D)(1).

[5] One potentially relevant case is Ward v. Emmett, 37 S.W.3d 500 (Tex. App.--San Antonio 2001, no pet.). In this case, the defendants raised both the unlawful acts rule and section 93.001, and the trial court granted summary judgment on both grounds. The court of appeals affirmed, discussing section 93.001 and the unlawful acts rule without any suggestion that one preempted the other. The court of appeals' analysis, however, was not especially searching.

-13-

joinder.

Union Pacific counters that the unlawful acts rule is a general rule that applies across the board where a plaintiff committed an unlawful act that contributed to the plaintiff's injuries. Union Pacific argues, therefore, that it is unnecessary for a Texas court to have specifically held that the unlawful acts rule applies to wrongful death suits for the district court in this case to have concluded properly that it does apply. Further, Union Pacific argues that no Texas cases applying the unlawful acts rule have drawn distinctions based on the nature or severity of the plaintiff's injuries.

The unlawful acts rule was first fully stated by the Texas Supreme Court in the 1888 case <u>Gulf, Colorado & Santa Fe Railway Co. v. Johnson</u>, 9 S.W. 602, 603 (Tex. 1888). There the Court declared,

> It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages if, to establish it, the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party. . . .
> . . . [W]here it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he cannot recover . . . .

Subsequent cases state the rule in equally sweeping terms. "The unlawful act rule provides that no action may be predicated upon an admittedly unlawful act of the party asserting it." <u>Rodriquez v. Love</u>, 860 S.W.2d 541, 544 (Tex App.--El Paso 1993, no writ).

-14-

"No recovery can be had if it is necessary for the plaintiff to prove, as part of his cause of action, his own illegal contract or other illegal transaction." Marathon Oil Co. v. Hadley, 107 S.W.2d 883, 885 (Tex. Civ. App.--Fort Worth 1935, writ dism'd). These statements lend support to Union Pacific's position that the unlawful acts rule is one of general application which applies to all claims, including wrongful death claims.

It appears, however, that Texas courts have also created a number of exceptions to the unlawful acts rule. In De Vall v. Strunk, 96 S.W.2d 245, 247 (Tex. Civ. App.--Galveston 1936, no writ), the court found the "strict general [unlawful acts] rule applicable only where the participating parties in an illegal or immoral transaction are of equal guilt with reference thereto." In Pyeatt v. Stroud, 264 S.W. 307, 309 (Tex. Civ. App.--Galveston 1924), aff'd, 269 S.W. 430, (Tex. Comm'n App. 1925), the court found an exception to the rule where "the injury was caused by the willful or wanton act of the party causing such injury." In Duncan Land & Exploration, Inc. v. Littlepage, 984 S.W.2d 318, 329 (Tex. App.--Fort Worth 1998, pet. denied), the court concluded that "the extraordinary circumstances of this case dictate that public policy should not preclude [plaintiff] from recovery as a matter of law." The court also noted that "courts in oil and gas cases have only invoked the illegal acts rule against a private entity when doing so favored the Railroad

Commission." Id. at 330 n.4.

In addition, as was central to the district court's conclusion that the unlawful acts rule does not apply to Plaintiffs' claim against Union Pacific (see herein, section IV(E)), it appears that the unlawful acts rule does not apply to cases where the unlawful act in question was trespass. Texas courts have repeatedly held that a landowner owes a duty to a trespasser "to refrain from injuring the trespasser willfully, wantonly, or through gross negligence." State v. Shumake, 199 S.W.3d 279, 285 (Tex. 2006); see also Tex. Util. Elec. Co. v. Timmons, 947 S.W.2d 191, 193 (Tex. 1997). The cases that articulate this duty do not mention the unlawful acts rule, even though it would appear that the trespasser's injury is a direct result of his violation of the law.  Indeed, we have found no Texas cases applying the unlawful acts rule to the claims of a trespasser.

In light of these exceptions, it is apparent that the Texas courts' application of the unlawful acts rule has not been nearly as uniform as Union Pacific suggests. Consequently, we cannot say with any certainty that the Texas courts would apply the unlawful acts rule to a wrongful death claim.

(2)  If the unlawful acts rule does apply to wrongful death claims, does it necessarily bar Plaintiffs' claims against Flores and Trevino?

The Johnson case alone contains multiple differently worded

statements of the unlawful acts rule--one focusing on the timing
of the plaintiff's injury, another on how the plaintiff makes out
his claim, and yet another on the cause of the plaintiff's
injury. Plaintiffs make arguments based on each version. Relying
on Johnson's "at the time of the injury," language,[6] Plaintiffs
contend that at the time of the decedents' injuries, which in a
wrongful death suit is the time of death, the decedents were not
engaged in an unlawful act. They argue that, once past the
Sarita, Texas checkpoint, the decedents were no longer violating
the immigration laws. This argument has some merit, since at that
point the decedents' illegal entry was completed. See 8 U.S.C. §
1325; United States v. Rincon-Jimenez, 595 F.2d 1192, 1193-94
(9th Cir. 1979). It is therefore likely that the only offense
that the decedents were committing past the Sarita, Texas
checkpoint was trespass.

Cases since Johnson have downplayed the timing element and
focused on whether to make out their claim, plaintiffs must show
an illegal act on their part. "[I]f a party can show a complete
cause of action without being obliged to prove his own illegal
act, although said illegal act may appear incidentally and may be
important in explanation of other facts in the case, he may

---

[6] "[W]here it is shown that, at the time of the injury, the
plaintiff was engaged in the denounced or illegal act, the rule
is, if the illegal act contributed to the injury, he can not
recover . . . ." Johnson, 9 S.W. at 603.

recover." <u>Norman v. B.V. Christie & Co.</u>, 363 S.W.2d 175, 178 (Tex. Civ. App--Houston 1962, writ ref. n.r.e.); <u>see also</u> <u>Rodriquez</u>, 860 S.W.2d at 544; <u>Marathon Oil Co.</u>, 107 S.W.2d at 885.

Plaintiffs assert that they succeed under this version of the unlawful acts rule as well. They argue that they do not need to prove any illegal act, other than perhaps trespass, to make out their negligence claim against Flores and Trevino. The context of the trespass, an effort to evade inspection at the border crossing, need not enter the analysis. There is at least one Texas case supporting this logic: In <u>Murry v. Campbell</u>, 338 S.W.2d 483 (Tex. Civ. App.--Amarillo 1960, no writ), the court permitted a creditor to recover on a note even though the source of the debt was an illegal craps game.

Union Pacific, in turn, refers this court to the causation language from <u>Johnson</u> ("if the illegal act contributed to the injury he can not recover"), which was cited recently in <u>Dover</u>, 859 S.W.2d at 451. In <u>Dover</u>, the court concluded that the plaintiff's claims were barred because his illegal conduct was "inextricably intertwined with [his] claims," and that his "illegal act contributed to his injury." <u>Id.</u> Picking up on this language, Union Pacific argues that the decedents' illegal acts contributed to and were inextricably intertwined with their deaths.

-18-

At least one Texas case supports a contrary view. In <u>Petta v. Rivera</u>, 985 S.W.2d 199, 204 (Tex. App.--Corpus Christi 1998), <u>rev'd on other grounds</u>, 44 S.W.3d 575 (Tex. 2001), the court held that the unlawful acts rule did not bar the plaintiff from bringing suit against a police officer, even though her conduct in fleeing the officer was illegal. The court found that "the evidence does not show that [plaintiff's] conduct contributed to her alleged injuries," for "Petta's flight did not cause Rivera" to curse her, beat her car with a nightstick, and then shoot at her. <u>Id.</u> A Texas court could likewise conclude that the decedents' unlawful acts did not cause Flores and Trevino to leave them to their deaths (allegedly) in the railcar.

In sum, there are multiple versions of the unlawful acts rule, versions which emphasize different links between a plaintiff's illegal acts and injuries suffered. For each of these versions, Plaintiffs raise a plausible argument. The district court erred by resolving the ambiguities of Texas's unlawful acts rule against Plaintiffs. <u>See Griggs</u>, 181 F.3d at 699. Moreover, the contours of the unlawful acts rule are simply too unclear to say that because of this rule, Plaintiffs have no possibility of recovery from Flores and Trevino. <u>See Smallwood</u>, 385 F.3d at 573.

**E.    Unlawful Acts Rule Applied to Plaintiffs' Claims Against Union Pacific**

The same ambiguities that complicate the application of the unlawful acts rule to Plaintiffs' claims against Flores and

Trevino also make uncertain the rule's application to Plaintiffs'
claims against Union Pacific.

Under the this court's holding in <u>Smallwood</u>, this case must
be sent back to state court if the same principal that bars
Plaintiffs' claims against Flores and Trevino also bars
Plaintiffs' claims against the diverse defendants. 385 F.3d at
571. To the extent that Union Pacific's liability rests on a
theory of respondeat superior or negligent
hiring/training/supervision, it appears that Union Pacific cannot
be liable where the claims against Flores and Trevino are barred.
Relying on the supposed trespass exception to the unlawful acts
rule, however, the district court concluded that the Plaintiffs'
premises liability claims against Union Pacific were not barred.
The court reasoned that the Plaintiffs would need to prove their
trespass, but not any other illegal acts, to make out their
premises liability claim against Union Pacific.

It is not clear, however, that a Texas court would use this
mode of analysis. Relying on the causation language from <u>Johnson</u>
and <u>Dover</u>, the Texas court might reason that the decedents'
attempt to enter this country unlawfully most certainly
contributed to, and indeed was "inextricably intertwined with,"
the injuries they ultimately suffered. Following this logic, the
Plaintiffs' claims against both in-state and out-of-state
defendants would be barred, and remand to state court would be

required under <u>Smallwood</u>. This additional layer of uncertainty supports our conclusion that the district court erred by resolving the ambiguities of Texas's unlawful acts rule against Plaintiffs.

### V.   CONCLUSION

While the district court's interpretations of the Texas unlawful acts rule are not unreasonable, there are alternative reasonable interpretations that a Texas court might reach. Our precedent concerning improper joinder counsels that if there is ambiguity in the state law, this ambiguity must be resolved in favor of the plaintiff. After thus resolving the ambiguity, a court may find that there is improper joinder only when there is "no reasonable basis . . . to predict that the plaintiff might be able to recover against an in-state defendant." <u>Smallwood</u>, 385 F.3d at 573. This case does not meet that high standard.

REVERSED and REMANDED for proceedings consistent with this opinion.

RHESA HAWKINS BARKSDALE, Circuit Judge, concurring in part and dissenting in part:

For this 28 U.S.C. § 1292(b) interlocutory appeal from a remand-denial because of improper joinder, I concur in part IV.A of the majority opinion (holding the absence of consent by in-state defendants Flores and Trevino did *not* render Union Pacific's removal invalid). In parts IV.B and C, the majority does *not* decide: whether the failure of the in-state defendants to plead the unlawful-acts rule bars Union Pacific from relying on it; and whether the unlawful-acts rule is preempted by TEX. CIV. PRAC. & REM. CODE § 93.001(a)(1). Although I would answer both questions in the negative, my dissent is limited to the issues decided by the majority in parts IV.D (interpreting and applying Texas' unlawful-acts rule to claims against Flores and Trevino) and E (applying that rule for claims against Union Pacific). Because I disagree with the majority's improper-joinder analysis, I must respectfully dissent from those two parts.

Despite, or perhaps because of, its exhaustive analysis of Texas caselaw, the majority's improper-joinder analysis loses sight of the proverbial forest for its trees. Its in-depth discussion of Texas' unlawful-acts rule fails, *inter alia*, to give effect to the very sound public policy underlying it. Along that line, the majority's application of our court's controlling improper-joinder test, stated by our en-banc court in ***Smallwood***

*v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004),
is overly, and erroneously, restrictive.  Therefore, essentially
for the reasons stated by the district court, I would affirm:
(1) its dismissal of Flores and Trevino on improper-joinder
grounds; and (2) its denial of plaintiffs' motion to remand to
state court.  *Rico v. Flores*, 405 F. Supp. 2d 746 (S.D. Tex.
2005).

I.

Although the district court, by a 6 May 2005 order, allowed
the parties to begin discovery, it does not appear it was
commenced.  Accordingly, the relevant facts come from the
operative complaint.

This wrongful-death action arises out of the deaths of ten
illegal aliens (decedents) who entered into an illegal agreement
to pass undetected through the Sarita, Texas, border-patrol
checkpoint, in violation of United States immigration laws.
Plaintiffs' complaint states, *inter alia*:  co-conspirator Flores,
a Union Pacific employee, helped the decedents cross into the
United States and hid them from the authorities; Flores accepted
a monetary fee from the decedents in exchange for his allowing
them to stow away on a Union Pacific railcar; and Flores and co-
conspirator Trevino (in-state defendants) loaded the decedents
onto that railcar, promising them safe passage beyond the border.

II.

Union Pacific, the diverse defendant, removed this action to federal court on the basis that the in-state defendants were joined improperly to prevent such removal. *See* 28 U.S.C. § 1441(b) (an action for which there is diversity jurisdiction, as in the action at hand, "shall be removable only if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought" (emphasis added)). **Smallwood** adopted the following for the applicable improper-joinder inquiry for such a situation, explicitly rejecting all others:

> [W]hether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, *which stated differently means* that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

385 F.3d at 573 (emphasis added). "In making this legal determination, we are obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [plaintiffs'] favor." **Griggs v. State Farm Lloyds**, 181 F.3d 694, 699 (5th Cir. 1999). As repeated in **Smallwood**, however, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder". **Id.** at 573 n.9 (quoting **Badon v. RJR Nabisco, Inc.,**

-24-

236 F.3d 282, 286 n.4 (5th Cir. 2000)).  Further, **Smallwood**
adopted a second step for improper-joinder inquiries:

> When a nonresident defendant's showing that
> there is no reasonable basis for predicting
> that state law would allow recovery *equally*
> *disposes of all defendants*, there is no
> improper joinder of the in-state defendant.
> In such a situation, the entire suit must be
> remanded to state court.

*Id.* at 571 (emphasis added).  These two steps are addressed in
turn.

A.

For the first step, the unlawful-acts rule applies in this
wrongful-death action and results in there being "no reasonable
basis ... to predict ... plaintiff[s] might be able to recover
against [the] in-state defendant[s]".  *Id.* at 573.  Accordingly,
I would affirm Flores and Trevino's dismissal on improper-joinder
grounds.

1.

The decedents engaged willingly in criminal conduct that,
tragically, lead to their deaths.  Along that line, Flores
pleaded guilty to conspiring to transport illegal aliens, in
violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(v)(I).  **United**
**States v. Flores**, No. CR M-03-661 (S.D. Tex. 1 August 2003).  The
district court took judicial notice that Trevino pleaded guilty
to a similar § 1324 offense.  *Rico*, 405 F. Supp. 2d at 752.
Despite acknowledging decedents' criminal conduct, the majority,

-25-

resting heavily on several perceived "exceptions" to the unlawful-acts rule, "cannot say with any certainty that the Texas courts would apply the unlawful acts rule to a wrongful death claim". *Maj. Opn.* at 16.  This conclusion is flawed in several respects.

First, it ignores well-settled Texas law regarding wrongful-death claims.  Texas' wrongful-death act "applies only if the individual injured would have been entitled to bring an action for the injury if he had lived".  TEX. CIV. PRAC. & REM. CODE § 71.003(a).  Accordingly, any defense which would have defeated the decedent's claim likewise defeats that of his wrongful-death beneficiary.  *E.g.*, *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 173 (5th Cir. 1991) ("Plaintiffs in a [Texas] wrongful death action are in the procedural shoes of the decedent, and defenses to the decedent's personal injury action are defenses to the wrongful death plaintiffs' claim."); *Diaz v. Westphal*, 941 S.W.2d 96, 98 (Tex. 1997) ("The right to maintain such actions 'is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent's action would have been subject.'" (quoting *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992))).

Moreover, as the majority acknowledges, "[t]here are several cases in which a Texas court declared enforcement of the unlawful

acts rule to be a matter of public policy". **Maj. Opn.** at 10 n.3.
Nevertheless, the majority's erroneous conclusion about the
rule's application in a wrongful-death action contravenes the
reasonable and oft-stated rationale for that rule: "[P]ublic
policy bars recovery for injuries arising from a knowing and
willful crime". **Saks v. Sawtelle, Goode, Davidson & Troilo**, 880
S.W.2d 466, 470 (Tex. App. — San Antonio 1994, writ denied). *See
also* **Ward v. Emmett**, 37 S.W.3d 500, 502 (Tex. App. — San Antonio
2001, no pet.) ("Courts ... have used this rule, along with
public policy principles, to prevent a plaintiff from recovering
damages that arose out of his or her own illegal conduct.");
**Dover v. Baker, Brown, Sharman & Parker,** 859 S.W.2d 441, 451
(Tex. App. — Houston [1st Dist.] 1993, no writ) ("[W]here
[plaintiff] was a knowing and wilful party to the illegal acts
which contributed to his injury, public policy clearly bars him
from bringing suit to recover damages resulting from those
acts."); **Houston Ice & Brewing Co. v. Sneed**, 132 S.W. 386, 388
(Tex. Civ. App. 1910, writ denied) ("it is against public policy
to allow redress for any agreement or act in violation of law").

    In the light of the rule's compelling public-policy
rationale, it is not surprising that it has been stated broadly.
*See, e.g.*, **Stevens v. Hallmark**, 109 S.W.2d 1106 (Tex. Civ. App. —
Austin 1937, no writ) (*"no legal right, which will form the basis
of a cause of action, arises out of an unlawful act; and ... no*

such alleged right can be asserted in the courts, the foundation
of which must be predicated upon the admittedly unlawful act of
the party asserting it" (emphasis added)).  Most importantly, it
is not surprising that the rule, which has been applied in
actions sounding in both contract and tort, appears to apply
regardless of the type claim raised.  As the Texas Court of Civil
Appeals stated in **Houston Ice:**

> To refuse such ... damages on a contract of
> indemnity because against public policy, and
> to allow the recovery of such ... damages
> because founded on deceit, is merely to
> change the form of the action, and by such
> indirection to nullify the principle.  If it
> is against public policy and void in one form
> of action, no good reason exists why it
> should not be equally so in the other, as
> having in each suit the tendency to interfere
> with the due administration of the law.

132 S.W. at 388.

   In sum, particularly given the sound public policy
underlying the unlawful-acts rule, there is "no reasonable basis"
to predict a Texas court would *not* apply it in this action.

                              2.

   Because the unlawful-acts rule is applicable to this
wrongful-death action, the above-stated controlling inquiry for
improper joinder in this action is "whether ... there is *no*
*reasonable basis* for the district court to predict ...
plaintiff[s] might be able to recover against [Flores and
Trevino]".  **Smallwood,** 385 F.3d at 573 (emphasis added).  If such

                             -28-

reasonable basis is lacking, there is improper joinder.

The majority, relying on perceived "ambiguities" surrounding the unlawful-acts rule, concludes it cannot "say ... [p]laintiffs have no possibility of recovery from Flores and Trevino". *Maj. Opn.* at 19. This conclusion, however, ignores the alternative in our controlling test. As discussed, *Smallwood* equates "no possibility of recovery" with "no reasonable basis". The majority, however, seemingly substitutes an "*absolutely* no basis" requirement for the "no *reasonable* basis" requirement. In any event, even assuming *arguendo* the existence of such "ambiguities", to be resolved in plaintiffs' favor, they establish, at most, the above-discussed "mere theoretical possibility of recovery under local law [, which] will *not* preclude a finding of improper joinder". *Smallwood*, 385 F.3d at 573 n.9 (quotation omitted) (emphasis added).

In stating the unlawful-acts rule, Texas courts have *not* always used precisely the same language. Nonetheless, it is clear that, "if the illegal act is inextricably intertwined with the claim and the alleged [injuries] would *not* have occurred but for the illegal act, the plaintiff is *not* entitled to recover". *Sharpe v. Turley*, 191 S.W.3d 362, 366 (Tex. App. — Dallas 2006) (emphasis added). As alleged in the complaint, plaintiffs' claims against Flores and Trevino are based on their:  loading the decedents into a railcar from which they would be unable to

escape; locking it from the outside; failing to warn the decedents of their inability to unlock it; failing to timely release them; and failing to inform others that the decedents were locked in it.  It cannot reasonably be suggested that the decedents' illegal agreement to violate United States immigration laws – the *sole* reason for their presence in the railcar – was *not* "inextricably intertwined" with their tragic deaths; rather, plaintiffs' claims arise directly out of that illegal agreement.

As discussed, "[Texas] public policy bars recovery for injuries arising from a knowing and willful crime".  ***Saks***, 880 S.W.2d at 470.  In the light of that public policy, and regardless of the specific formulation of the unlawful-acts rule, there is "no reasonable basis" to predict plaintiffs might be able to recover against Flores and Trevino.

B.

Because there is "no reasonable basis" of recovery against the in-state defendants, resulting in their joinder being improper, ***Smallwood***'s earlier-quoted second step must be addressed:  whether the unlawful-acts rule "equally disposes of *all* defendants".  385 F.3d at 571 (emphasis added).  If so, notwithstanding the improper joinder, the action must be remanded to state court.  *Id.*  Although the majority does *not* explicitly make this determination, its opinion indicates that, because the unlawful-acts rule does *not* dispose of *all* of plaintiffs' claims

-30-

against Union Pacific, remand to state court would *not* be required under this second step.

As analyzed by the majority opinion at 3, plaintiffs presented claims against Union Pacific for, *inter alia*, premises liability. Along that line, and as the majority acknowledges, "Texas courts have repeatedly held that a landowner owes a duty to a trespasser 'to refrain from injuring the trespasser willfully, wantonly, or through gross negligence'". **Maj. Opn.** at 16 (quoting **State v. Shumake**, 199 S.W.3d 279, 285 (Tex. 2006)). Because Texas courts have done so without mention of the unlawful-acts rule, this landowner's duty appears to exist independently of any illegal act by the trespasser (other than the trespass itself). Accordingly, the unlawful-acts rule would arguably *not* bar plaintiffs' premises-liability claim, regardless of the decedents' illegal agreement. *See* **Macias v. Moreno**, 30 S.W.3d 25, 29 (Tex. App. — El Paso 2000, pet. denied) ("if a party can show a complete cause of action without [having] to prove their own illegal act, although the illegal act may appear incidentally ..., they may recover").

Consistent with the district court's ruling, the majority acknowledges: "[I]t appears that the unlawful acts rule does *not* apply to cases where the unlawful act in question was trespass". **Maj. Opn.** at 16 (emphasis added). A Texas court *might* find the decedents' illegal acts "inextricably intertwined" with their

-31-

premises-liability claim and thus apply the unlawful-acts rule to bar recovery on it. *See* **Maj. Opn.** at 20-21. This, however, is the same type of "mere theoretical possibility", discussed *supra*, that does *not* require remand under this second step for improper-joinder analysis.

### III.

Pursuant to **Smallwood**'s two-step test, primarily at issue in this interlocutory appeal is: (1) whether there is "no reasonable basis for the district court to predict ... plaintiff[s] might be able to recover against [the] in-state defendant[s]", 385 F.3d at 573; and (2) if "no reasonable basis" exists, whether that showing disposes of the claims against *all* defendants, *id.* at 571. Because there is "no reasonable basis" and that showing does *not* dispose of all claims against Union Pacific, I would affirm both the district court's dismissal of Flores and Trevino and its denial of remand to state court.

As instructed by **Smallwood**, "[t]he doctrine of improper joinder implements our *duty to not allow manipulation* of our jurisdiction". **Id.** at 576 (emphasis added). In the light of the sound public policy for the unlawful-acts rule, it is obvious plaintiffs engaged in such proscribed manipulation. It is our duty to prevent it. Accordingly, I respectfully dissent.